LYDIA DIANE BROCK and ROY BROCK,

     Plaintiffs,

v.

BASF CORPORATION, Individually, and as
Successor In Interest to Takeda Vitamin
& Food USA, Inc. f/k/a Takeda Chemical
Products USA, Inc. f/k/a Wiltak, Inc.;
TAKEDA AMERICA HOLDINGS, INC.
f/k/a Takeda America, Inc.; TAKEDA
PHARMACEUTICALS USA, INC. f/k/a
Takeda Pharmaceuticals North America,
Inc. f/k/a Takeda Pharmaceuticals America,
Inc.; TAKEDA CHEMICAL INDUSTRIES,
LTD.; and TAKEDA EUROPE GMBH;
ALDRICH CHEMICAL CO. INC.; FISHER
SCIENTIFIC COMPANY L.L.C.; SHELL USA,
INC. f/k/a SHELL OIL COMPANY; SUNOCO
INC. f/k/a Sun Refining and Marketing
Company and f/k/a Sunoco (R&M); TENNECO
OIL COMPANY; TEXACO INC.; and
UNOCAL CORPORATION; and JOHN
DOES 1-40,

     Defendants.

**PLAINTIFFS' RESPONSE TO "DEFENDANT FISHER SCIENTIFIC COMPANY
L.L.C.'S PARTIALLY OPPOSED MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)"**

Plaintiffs respectfully submit this Response to Fisher Scientific Company, LLC's partially

opposed Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

(Doc. 63, memorandum at Doc. 64). The motion should be denied in part. The First Amended

Complaint ("FAC") alleges claims for (i) negligence (Count I); (ii) breach of warranty (Count II);

(iii) failure to warn and defective design (Count III); (iv) intentional tort – battery & fraud (Count

IV); and (v) loss of consortium (Count V). Defendant Fisher Scientific has moved to dismiss all claims. Plaintiffs agree to withdraw their claims for breach of warranty and fraud. However, Plaintiffs have plausibly stated claims for negligence, failure to warn and defective design, battery and loss of consortium. Accordingly, Defendant's motion should be denied in pertinent part as to those relevant claims alleged in the FAC.

## FACTUAL BACKGROUND

Plaintiff Lydia Brock alleges occupational exposure to benzene at a chemical plant located on US Highway 421, on the border of New Hanover and Pender counties, near Wilmington, NC which manufactured Vitamin C (the "Wilmington Plant"), which caused her to contract the cancer, Acute Myeloid Leukemia ("AML"). *See* FAC, Doc. 31, ¶¶ 1, 41-42, 47-51. Ms. Brock was working on the premises of the Wilmington Plant as an employee of Fluor Daniel, which operated as an independent contractor at the Wilmington Plant. *Id.* at ¶ 41. Fluor Daniel's records state that Ms. Brock was employed from March 15, 1993, to November 16, 2001. *Id.* at ¶ 42. Plaintiffs allege that the Wilmington Plant used benzene to manufacture Vitamin C. *Id.* at ¶¶ 31-32.

The FAC alleges that Fisher Scientific manufactured, refined, distributed and/or sold benzene and benzene-containing products that were sold to the Wilmington Plant for use in the manufacturing of Vitamin C and other products. *Id.* at ¶ 14. Plaintiffs allege that Fisher Scientific was a supplier of benzene to the Wilmington Plant during the relevant time period. FAC ¶ 13. In the process of making Vitamin C, benzene was released into the air of the Wilmington Plant, which in turn is alleged to have caused Mrs. Brock's benzene exposures. *Id.* at ¶ 49.

The FAC proceeds to allege that despite having full knowledge that there were safer alternative products, Defendant continued to manufacture and sell benzene and products containing benzene. FAC ¶ 75(a). Plaintiffs allege Defendants continued to manufacture and sell

2

benzene and benzene-containing solvents despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene and benzene-containing solvents and which were equally effective. *Id.* at ¶ 83(r).

The FAC alleges that benzene, including the cumulative effects of benzene exposure, is known to cause genetic damage, blood and bone marrow diseases and cancers including AML, MDS, non-Hodgkin's lymphoma, Multiple Myeloma, Chronic Lymphocytic Leukemia, Acute Lymphocytic Leukemia and Aplastic Anemia. *Id.* at ¶ 83(s). The medical and scientific community recommended that safer solvents be used in place of benzene since as early as the 1920s and the federal government has declared that there is no safe level of exposure to benzene, that products containing benzene are unreasonably dangerous and that no warnings are adequate to protect against the hazards of benzene in consumer products. *Id.* at ¶ 83(t).

As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted and suffers from AML, and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which cause her pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection. FAC ¶ 85.

Plaintiffs allege that benzene is a known human carcinogen and causes multiple forms of cancer, including the AML that Mrs. Brock was caused to contract. *Id.* at ¶ 46. Plaintiffs allege that exposure to benzene at the Wilmington Plant caused Mrs. Brock's AML. Doc. 31, FAC ¶¶ 47-50. Plaintiffs further allege that Defendants knew or should have known that exposure to benzene was carcinogenic, leukemogenic, dangerous, poisonous and otherwise highly harmful to the body and health of Plaintiff Mrs. Brock and persons similarly situated. *Id.* at ¶ 62. As a direct

3

and proximate result of her exposure to benzene at the Wilmington Plant, Mrs. Brock was caused to contract AML. *Id*. at ¶¶ 47-50.

ARGUMENT

**A. The Legal Standard.**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading stating a claim for relief "must contain… a short and plain statement of the claim showing that the pleader is entitled to relief…." The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted).

To survive a motion to dismiss, a complaint must "state[] a plausible claim for relief…." *Iqbal, supra*, 556 U.S at 679 (citation omitted). Determining this will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling the plaintiff to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint's factual allegations must produce an

4

inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" *Id.* at 1952 (quoting *Twombly*, 550 U.S. at 570).

Satisfying this "context-specific" test does not require "detailed factual allegations." *Id.* at 1949-50 (quotations omitted). The complaint must plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Id.* at 1950. Without such "heft," *id.* at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," *id.* at 1949, fail to nudge claims across the line from conceivable to plausible. Id. at 1951 (quotations omitted). *Accord, Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255-56 (4th Cir. 2009). Facial plausibility is established once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Nemet Chevrolet, Ltd.*, 591 F.3d at 256. Further, "[a]t the motion to dismiss stage, [a plaintiff] need not support his allegations with evidence." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citations omitted).

### B. Plaintiffs Withdraw Their Claim of Negligence under Premises Liability Against Fisher Scientific Only.

Plaintiffs respectfully withdraw their premises liability-based negligence claim as to Defendant Fisher Scientific. *See* Defendant's brief at page 9.

### C. Plaintiffs Withdraw Their Claim under Negligence Per Se Against Fisher Scientific Only.

Plaintiffs respectfully withdraw their negligence per se claim as to Defendant Fisher Scientific. *See* Defendant's brief at pages 9 to 12.

### D. Plaintiffs Have Plausibly Stated a Claim for Negligence.

Under North Carolina law, a negligence claim must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and actual injury or loss sustained by the plaintiff. *Fussell v. North Carolina Farm Bureau,* 198 N.C. App. 560, 562, 680 S.E.2d 229 (2009). When a plaintiff asserts a product liability claim based on negligence, "the plaintiff must prove duty, breach, causation, and damages." *Sparks v. Oxy-Health, LLC,* 134 F. Supp. 3d 961, 986 (E.D.N.C. 2015) (citing *Bryant v. Adams*, 116 N.C. App. 448, 448 S.E.2d 832 (N.C. Ct. App. 1994)). Those elements are satisfied as to a design or manufacturing defect if the plaintiff demonstrates "(1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc*., 138 N.C. App. 70, 530 S.E.2d 321, 326 (N.C. Ct. App. 2000); *see also City of High Point, N. Carolina v. Suez Treatment Sols. Inc.,* 485 F. Supp. 3d 608, 630 (M.D.N.C. 2020). North Carolina courts have consistently recognized a common law rule that "imposes on every person engaged in the prosecution of any undertaking [a duty] to use due care, or to so govern his actions as not to endanger the person or property of others." *McCants v. Nat'l Collegiate Athletic Ass'n,* 201 F. Supp. 3d 732, 738-39 (M.D.N.C. 2016) (quoting *Pinnix v. Toomey,* 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955)).

Here, Plaintiffs allege that Defendant Fisher Scientific manufactured, refined, distributed and/or sold benzene-containing products that were sold to the Wilmington Plant. FAC ¶ 13. In doing so they owed Plaintiff Mrs. Brock and other foreseeable users and persons exposed to those products a duty to exercise reasonable care in the design, manufacture, testing, inspection, marketing and sale of those products, including a duty to warn of known or reasonable

6

knowledgeable dangers associated with benzene exposure. The FAC alleges that Fisher Scientific "knew, or in the exercise of reasonable care, could and/or should have known that persons such as Plaintiff was required to work around and in close proximity to, inhale, dermally absorb, ingest and was otherwise directly and indirectly be exposed to benzene, benzene-containing solvents and/or vapors therefrom on the Wilmington Plant." *Id.* at ¶ 59. The FAC alleges that Defendant knew or should have known of benzene's dangerous properties. *Id.* at ¶¶ 60-62. Defendant however breached its duty by using benzene when alternative chemicals were available, by failing to warn of benzene's dangerous propensities, and by otherwise deviating from their duty of care. *Id.* at ¶ 75.

The FAC alleges that as the direct and proximate result of Fisher Scientific's acts and omissions, Plaintiff Mrs. Brock contracted and suffers from AML, and multiple side effects, conditions, illness and symptoms caused by AML and the medical treatments necessitated thereby which caused her pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation and increased susceptibility to infection. FAC ¶¶ 76-79. These factual allegations adequately ground a negligence claim.

### E. Plaintiff Mrs. Brock Has Established That Fisher Scientific's Conduct Was a Proximate Cause of Her Injuries.

Defendant argues that because Plaintiff makes allegations as to the specific negligence of co-Defendants BASF and TVFU, Defendant cannot be liable: "Because the FAC affirmatively alleges that BASF and TVFU controlled Mrs. Brock's exposure levels to benzene, Fisher Scientific did not proximately cause Mrs. Brock's alleged injuries." Doc. 64, p. 12. However, parties may be jointly and severally liable for their respective involvement in a negligence claim. Because Plaintiff adequately alleges proximate cause against Defendant, the claim is well-pled. Causation in toxic-tort and product-liability cases is ordinarily fact-intensive and rarely appropriate for

7

resolution on a Rule 12(b)(6) motion. "Proximate cause is a cause which in natural and continuous sequence, unbroken by any new or independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed." *Johnson v. Skinner,* 99 N.C. App. 1, 7-8, 392 S.E.2d 634, 637 (1990) (internal citations omitted). Proximate cause requires foreseeability. *See id.*, 392 S.E.2d at 637. Generally, questions of proximate cause and foreseeability are questions of fact to be decided by the jury. "Thus, since proximate cause is a factual question, not a legal one, it is typically not appropriate to discuss in a motion to dismiss." *Estate of Long ex rel. Long v. Fowler,* 270 N.C. App. 241, 252, 841 S.E.2d 290, 299 (2020), *aff'd*, 378 N.C. 138, 861 S.E.2d 686 (2021); *Newman v Stepp,* 376 N.C. 300, 306, 852 S.E.2d 104, 109 (2020); *Acosta v. Byrum,* 180 N.C. App. 562, 568-69, 638 S.E.2d 246, 251 (2006). "It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not. But that is rarely the case." *Conley v. Pearce-Young-Angel Co.*, 224 N.C. 211, 214, 29 S.E.2d 740, 742 (1944). *See also Derose v. Doordash, Inc.,* 675 F. Supp. 3d 591, 603 (E.D.N.C. 2023) (stating same).

Here, Plaintiffs' FAC pleads that Fisher supplied benzene and benzene-containing solvents into the stream of commerce for use at the Wilmington plant. The FAC alleges that Fisher knew or should have known benzene can cause leukemia and other serious diseases, and that workers like Mrs. Brock were foreseeable users or persons foreseeably exposed. Plaintiffs allege that the product lacked adequate warnings, instructions, training and safer design or formulation and those failures caused or induced Mrs. Brocks's continuing exposure and resulted in AML.

The FAC alleges that benzene is a known human carcinogen and that benzene exposure causes AML. FAC ¶ 26. It alleges that Mrs. Brock was directly and indirectly exposed to benzene at the Wilmington Plant "on a regular, frequent and proximate basis." FAC ¶ 27. It further alleges that as a direct and proximate result of her exposure to benzene at the Wilmington Plant, Mrs. Brock contracted AML. FAC ¶ 30.

Because the FAC adequately recites the elements of causation, plaintiff has made a sufficient pleading of causation under Rule12(b)(6).

### F. Plaintiff Has Stated a Product Liability Claim Based on Failure to Warn Under Section 99B-5 of the N.C. Products Liability Act.

Section 99B-5(a) provides that a manufacturer or seller is not liable on a failure to warn claim unless the manufacturer or seller acted unreasonably in failing to provide the warning or instruction; the failure to provide an adequate warning or instruction was a proximate cause of the harm; and one of the two additional conditions: a) at the time the product left the manufacturers or sellers control, the product without an adequate warning created an unreasonably dangerous condition that the manufacturer or seller knew, or should have known, posed a substantial risk of harm to a reasonably foreseeable claimant; or b) after the product left their control, the manufacturer or seller became aware, or should have become aware that the product posed a substantial risk of harm and failed to take reasonable steps to give adequate warning or take other reasonable action. N.C.G.S. § 99B-5(a). *See also Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017) (describing that failure to warn claim requires the plaintiff to prove that the defendant unreasonably failed to provide an adequate warning, proximate cause, and that the product posed a substantial risk of harm' without an adequate warning either at the time of or after leaving the manufacturer's control).

Here, the FAC plausibly alleges that Defendant failed to provide adequate warnings regarding the dangers of benzene exposure, failed to provide sufficient instructions for safe use and handling, and placed into the stream of commerce a product whose risks outweighed its utility or could have been reduced through a safer alternative design, formulation, packaging, or warning system. *See* FAC ¶ 93. At the pleading stage in a products liability case, a plaintiff need not identify every alternative design with engineering detail. It is enough that, as here, the complaint alleges the product was unreasonably dangerous and defective when it left Defendant's control, and that the defect was a cause of Plaintiffs' injuries. *See Patterson v. 3M Co.*, 2022 U.S. Dist. LEXIS 231462, *13-14 (M.D.N.C. Sept. 8, 2022) (denying motion to dismiss, finding that plaintiff adequately alleged a failure to warn claim).

The factual allegations put Defendant on notice that Plaintiffs are asserting warning-based and design-defect theories under North Carolina products liability law. Fisher Scientific manufactured, refined, distributed and/or sold benzene and benzene containing products that were sold to the Wilmington Plant for use in the manufacturing of Vitamin C and other products. FAC ¶ 14. BASF confirmed that Fisher Scientific Company, LLC was a supplier of benzene to the Wilmington Plant during the relevant time period. *Id.* at ¶ 13. In the process of making Vitamin C, benzene was released into the air of the Wilmington Plant, which in turn caused Mrs. Brock's benzene exposures. The FAC alleges that Defendant knew or should have known that their benzene and benzene-containing solvents were inherently defective, dangerous, deleterious, poisonous, carcinogenic, unfit for use, not property merchantable and not safe, as marked, for their foreseeable purpose, in that they contained benzene and caused lymphohematopoietic diseases, including AML. Plaintiffs allege that the products were defectively designed and lacked warnings, instructions and training, and that Defendants failed to warn, train and advise, or adequately train

10

and advise, the Plaintiff Mrs. Brock and her employers as to how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene and benzene-containing solvents. Plaintiffs further allege that Defendants' benzene and benzene-containing solvents contained directions for use that increased the risk for exposure to benzene and increased the amount of benzene exposure. FAC ¶ 83(p).

Defendant cites the case of *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017) (quoting N.C.G.S. § 99B-5(a)(1)). In that case, the court noted that "[p]roof of proximate cause requires evidence that Appellant or her treating physician relied on" the warning in question." *Id.* at 324, citing *Holley v. Burroughs Wellcome Co.,* 74 N.C. App. 736, 330 S.E.2d 228, 233 (N.C. App. 1985). However, the case was reviewing a summary judgment motion. For purposes of a motion to dismiss, Plaintiffs have adequately alleged proximate cause and reliance. Plaintiffs have alleged: "Plaintiff relied upon the Defendants for information and warnings regarding the health hazards and cancer risk of the benzene and benzene-containing solvents and Wilmington Plant and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety." FAC ¶ 125(s). These allegations are sufficient to support the Plaintiffs' failure to warn claim against Fisher Scientific.

> **G. Plaintiff has Properly Pled a Design Defect Claim Under Section 99B-6 of the N.C. Products Liability Act.**

Defendant Fisher Scientific further contends that the FAC does not adequately plead a claim for defective design under N.C.G.S. § 99B-6, because the FAC fails to plead how the "design" of benzene was inadequate or propose a safer alternative. However, Count III is certainly adequately pled. FAC ¶ 100 alleges that under N.C.G.S. § 99B-6, Defendant acted unreasonably in designing or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought, and in addition a) "At the time the product left the control of the

manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product;" or b) "At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design." FAC ¶ 100. Further, Plaintiffs allege that as a direct and proximate result of Defendants' negligent design, and related acts and omissions, Plaintiff Mrs. Brock contracted and suffers from AML. FAC ¶ 101. Plaintiffs further allege that "Defendants breached their duty and were negligent and grossly negligent because … they: … [u]sed benzene when safer alternative chemicals and manufacturing processes were available…." FAC ¶ 75(a).

These allegations track the relevant statute and are sufficient for the defective design claim. The FAC expressly alleges as part of Count I that Defendants, including Fisher Scientific, "Failed to post signs warning of the presence of benzene, that there was a cancer hazard and that respiratory protection was required;" "Failed to warn and train workers about the hazards of benzene exposure and how to prevent exposures, and failed to assure that workers were properly trained and warned;" and "Plaintiffs also alleged as to reliance, that "Plaintiff … relied upon the Defendants for information and warnings regarding the health hazards and cancer risk of the benzene and benzene containing solvents and Wilmington Plant and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety." FAC ¶ 125(s). These allegations are sufficient to support the Plaintiffs' negligent failure to warn and negligent design claim against Fisher Scientific and Defendant's contention that Plaintiffs' FAC fails to plausibly

12

allege that the defective design (or the failure to warn) proximately caused Mrs. Brock's injury should be rejected.

### H. Plaintiffs Have Properly Pleaded Facts to Support a Battery Claim.

Fisher Scientific contends that negligence and intentional torts are mutually exclusive theories of liability. As shown below, negligence is better described as a lesser included offense to battery, as opposed to an inconsistent claim. Regardless, at the Rule 12 stage, a plaintiff is allowed to plead in the alternative. A plaintiff may plead inconsistent theories such as intentional tort and negligence in the alternative at the pleading stage. As Federal Rule 8(d)(2) provides: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically." Further, as per Rule 8(d)(3), "A party may state as many separate claims or defenses as it has, regardless of consistency." *See generally United States v. Continental Illinois National Bank & Trust Co.*, 889 F.2d 1248, 1253 (7th Cir. 1989) (recognizing the permissibility of pleading inconsistent legal theories, noting that modern pleading rules allow parties to assert alternative claims even if the theories are inconsistent); *Estate Construction Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 218 (4th Cir. 1994) (stating that Rule 8 allows parties to plead alternative and inconsistent claims, and dismissal is improper merely because claims appear inconsistent); *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 344 (4th Cir. 1998) (noting that plaintiffs may assert alternative theories of liability under modern pleading rules).

Under North Carolina law, a cause of action for common law battery requires allegations that "(1) the defendant intentionally cause[d] bodily contact with the plaintiff; (2) the bodily contact caused physical pain or injury; and (3) the bodily contact occurred without the plaintiff's consent." *Simmons v. Wiles*, 271 N.C. App. 665, 668, 845 S.E.2d 112, 116 (2020) (citing *Andrews v. Peters,* 75 N.C. App. 252, 256, 330 S.E.2d 638, 640-41 (1985)). Here, the FAC alleges that

"Defendants committed the intentional tort of battery by causing the Plaintiff's exposure to benzene knowing that those exposures would cause harm to the Plaintiff." FAC ¶ 107. "Defendants' acts and omissions demonstrated a conscious indifference to their consequences, namely causing the Plaintiff to contract AML and other injuries identified herein." *Id.* at ¶ 127. "Defendants intended to cause harmful conduct to the Plaintiff through causing benzene exposure, and did so with the knowledge, belief and intent that such exposure could cause the Plaintiff to contract leukemia." *Id.* at ¶ 128. "Defendants' intentional conduct in causing the Plaintiff to be exposed to benzene, did in fact cause physical harm to the Plaintiff…." *Id.* at ¶ 129. These allegations are adequate to satisfy the requirement of a short plain statement of relief on a common law civil claim for battery.

Defendant cites *Lynn v. Burnette,* 138 N.C. App. 435, 440, 531 S.E.2d 275, 279 (2000). The case is not applicable. It did not consider the fact that at the outset of a case, a plaintiff may plead in the alternative and plead mutually inconsistent claims. Rather, *Lynn* drew a distinction between negligence and an intentional tort claim for purposes of a statute of limitations analysis. In *Lynn*, the appellate court found that the trial court erred by granting summary judgment in favor of defendant Burnette in an action which arose when defendant intended to shoot at plaintiff's tire but shot him in the neck and plaintiff filed a civil action for negligence rather than the intentional tort of battery. The court held that the plaintiff could sue in negligence and therefore rely upon the three-year statute of limitations for personal injury rather than the one-year period for battery. The present case is factually dissimilar and in a dissimilar procedural posture – *i.e.,* a Rule 12(b)(6) dismissal here versus summary judgment there.

Courts have found there is no *per se* bar against a battery claim in the factual context of toxic or chemical exposures. *See In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.,*

14

379 Supp. 2d 348, 434-35 (S.D.N.Y. 2005) (court explained that intentional contamination of property or persons with toxic chemicals can support a battery claim, where the defendant knew the contact would occur); *Baker v. Monsanto Co*., 962 S.W.2d 354 (S.D. Ind. 1997) (court allowed a battery claim based on intentional exposure to hazardous chemicals, finding that intentional contact with toxic substances can satisfy the elements of battery).

The case of *Priselac v. Chemours Co.,* No. 7:20-CV-190-D, 2022 U.S. Dist. LEXIS 54845, 2022 WL 909406 (E.D.N.C. Mar. 28, 2022) is likewise distinguishable. There, the plaintiff alleged that the defendants released PFCs and PFAs into the Cape Fear River and surrounding air, soil, and groundwater through their operations at the Fayetteville Works Site, thereby contaminating her property and drinking water in Wilmington, North Carolina. She drank water supplied by the Cape Fear Public Utility Authority, which drew water for its customers from the Cape Fear River. 2022 U.S. Dist. LEXIS 54845, *4. The court found that the battery claim should be dismissed because "[a]lthough Priselac plausibly alleges that defendants knew the PFCs would enter the general public's drinking water… that knowledge does not plausibly allege that defendants were directing their conduct at Priselac and the class members." *Id.* at *26-27.

Here, Plaintiff worked at the Wilmington Plant. The facts are materially distinct from those in the *Priselac* case. The Plaintiff Mrs. Brock plausible alleges that she worked around benzene supplied by Defendants and was exposed to and in contact with the benzene. The motion should be dismissed as to the battery claim.

I.      **Plaintiffs Withdraw Their Claim for Common-Law Fraud as Against Fisher Scientific Only.**

Plaintiffs respectfully withdraw their claim for civil common-law fraud. *See* Defendant's brief at pages 17-18.

**J.     Plaintiffs Withdraw Their Claim for Breach Of Warranty as against Defendant Fisher Scientific only.**

Plaintiffs respectfully withdraw their claim for breach of warranty.  *See* Defendant's brief at pages 12-14.

**K.     Plaintiffs State a Claim for Loss of Consortium.**

Plaintiff Roy Brock asserts a claim for loss of consortium arising from the alleged injuries suffered by his spouse, Mrs. Brock.  FAC ¶¶ 135-38.  A loss of consortium claim is derivative and depends upon there being a viable underlying tort claim by the injured spouse.  Here, because Mrs. Brock states valid claims for relief against Defendant, her spouse's derivative claim for loss of consortium is also properly pled.  In *Nicholson v. Hugh Chatham Mem. Hosp., Inc.*, 300 N.C. 295, 266 S.E.2d 818 (1980), the North Carolina Supreme Court recognized a spouse's right to recover for loss of consortium when the other spouse is injured by a tortfeasor. Because Mrs. Brock states viable underlying claims, Mr. Brock's derivative loss of consortium claim is also properly pled. *See also Nixon v. Majors,* 2007 U.S. Dist. LEXIS 95698, *17 (W.D.N.C. Dec. 28, 2007) ("The undersigned will recommend that Ms. Nixon's claims not be dismissed, and, accordingly, must respectfully recommend that the Defendants' Motions to Dismiss Mr. Nixon's loss of consortium claim also be denied.").

<strong>CONCLUSION</strong>

Plaintiffs have adequately alleged causes of action against Fisher Scientific for negligence, failure to warn and defective design, battery and loss of consortium, and Defendant's motion to dismiss should therefore be denied as to those claims.

16

Respectfully submitted this 8th day of April, 2026.

/s/ Andrew DuPont
Andrew J. DuPont, Esq.*
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone:  (215) 893-0100
adupont@lockslaw.com
*to be admitted pro hac vice
Attorneys for Plaintiffs

/s/ John Hughes
William M. Graham, Esq.
NCSB 17972
Mark Doby, Esq.
NCSB 39637
John Hughes, Esq.
NCSB 22126
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
bgraham@wallacegraham.com
mdoby@wallacegraham.com
jhughes@wallacegraham.com
Local Civil Rule 83.1(d) Attorney for Plaintiffs

17

**CERTIFICATE OF SERVICE**

   I hereby certify that on this date I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court using the Court's CM/ECF system, which caused the foregoing to be served on all counsel of record.

April 8, 2026.

/s/ Andrew DuPont
Andrew J. DuPont, Esq.*
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 893-0100
adupont@lockslaw.com
*to be admitted pro hac vice*
*Attorneys for Plaintiffs*

/s/ John Hughes
William M. Graham, Esq.
NCSB 17972
Mark Doby, Esq.
NCSB 39637
John Hughes, Esq.
NCSB 22126
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
bgraham@wallacegraham.com
mdoby@wallacegraham.com
jhughes@wallacegraham.com
*Local Civil Rule 83.1(d) Attorney for Plaintiffs*