# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| LYDIA DIANE BROCK AND ROY BROCK, | ) ) ) | CASE NO: 7:25-cv-01540-M-BM |
| PLAINTIFFS, | ) ) | |
| v. | ) ) | **MEMORANDUM IN SUPPORT OF** |
| BASF CORPORATION, INDIVIDUALLY, AND AS SUCCESSOR IN INTEREST TO TAKEDA VITAMIN &FOOD USA, INC. F/K/A TAKEDA CHEMICAL PRODUCTS USA, INC. F/K/A WILTAK, INC.; TAKEDA AMERICA HOLDINGS, INC. F/K/A TAKEDA AMERICA, INC.; TAKEDA PHARMACEUTICALS USA, INC. F/K/A TAKEDA PHARMACEUTICALS NORTH AMERICA, INC. F/K/A TAKEDA PHARMACEUTICALS AMERICA, INC.; TAKEDA CHEMICAL INDUSTRIES, LTD.; AND TAKEDA EUROPE GMBH; ALDRICH CHEMICAL CO. INC.; FISHER SCIENTIFIC COMPANY L.L.C.; SHELL USA, INC. F/K/A SHELL OIL COMPANY; SUNOCO, INC. F/K/A SUN REFINING AND MARKETING COMPANY AND F/K/A SUNOCO (R&M); TENNECO OIL COMPANY; TEXACO INC.; AND UNOCAL CORPORATION; AND JOHN DOES 1-40, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **DEFENDANT SHELL USA, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| DEFENDANTS. | ) | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................... 8

BACKGROUND AND PROCEDURAL HISTORY ................................................. 10

ARGUMENT ...............................................................................................................11

    I.      Plaintiffs' Claims Should Be Dismissed For Failure To File This Action Within The Applicable Statute Of Limitations. .................................................... 12

    II.     Count I Of Plaintiffs' Complaint Should Be Dismissed To The Extent It Relies On Negligence Per Se Principles. .......................................................... 16

    III.    The Court Should Dismiss Plaintiffs' Cause Of Action For Breach Of Warranty (Count II) Because Plaintiffs Cannot Establish Privity And Have Not Pled An Express Warranty.................................................................. 19

        A.      Plaintiffs are not Buyers in Privity with Shell, and no Exception Applies. .................................................................... 19

        B.      Plaintiffs Fail to Plead the Existence of an Express Warranty. ................. 20

    IV.    The Court Should Dismiss Count III Of Plaintiffs' Complaint Because The Plaintiffs Failed To Properly Plead Failure To Warn And Defective Design........ 21

        A.      Plaintiffs' failure to warn claim fails as a matter of law. .......................... 21

        B.      Plaintiffs' Defective Design Claim Fails As A Matter Of Law. ................. 23

    V.     This Court Should Dismiss Plaintiffs' Cause Of Action For "Intentional Tort— Battery & Fraud" (Count IV). ................................................................... 24

        A.      The Court Should Dismiss Plaintiffs' Battery Claim.............................. 25

        B.      The Court Should Dismiss Plaintiffs' Common Law Fraud Claim. ......... 28

    VI.    Count V Of Plaintiffs' Complaint Must Be Dismissed Because It Is Derivative.................................................................................. 30

CONCLUSION............................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy v. Consolidated Freightways Corp. of Del.*,
321 N.C. 236, 362 S.E.2d 559 (1987)....................................................................................27

*Andrews v. Peters*,
75 N.C. App. 252, 330 S.E.2d 638 (1985)..............................................................................25

*Asby v. Medtronic, Inc.*,
673 F. Supp. 3d 787 (E.D.N.C. 2023)...............................................................................21, 24

*Ascot Corp., LLC v. I&R Waterproofing, Inc.*,
286 N.C. App. 470, 881 S.E.2d 353 (2022)............................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................11, 12

*Baldwin v. GTE S., Inc.*,
335 N.C. 544, 439 S.E.2d 108 (1994)...............................................................................17, 18

*Barrett v. Bd. of Educ. of Johnston Cnty., N.C.*,
590 F. App'x 208 (4th Cir. 2014) ...........................................................................................27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................11, 22

*Bethea v. Equifax Info. Servs., LLC*,
No. 3:25-CV-00684-KDB-SCR, 2025 WL 3704402 (W.D.N.C. Dec. 22,
2025) .......................................................................................................................................22

*Blackman v. Bos. Whaler, Inc.*,
649 F. Supp. 3d 142 (E.D.N.C. 2023)......................................................................................20

*Boykin Anchor Co. v. AT&T Corp.*,
No. 5:10-CV-591-FL, 2011 WL 1456388 (E.D.N.C. Apr. 14, 2011) .....................................27

*Britt v. Hayes*,
142 N.C. App. 190, 541 S.E.2d 761 (2001)............................................................................28

*Carr v. United States*,
No. 4:17-CV-167-D, 2018 WL 5074671 (E.D.N.C. Oct. 17, 2018).......................................18

*Cohanzad as Tr. of Benjamin Cohanzad Tr. v. Johnson*,
759 F. Supp. 3d 675 (E.D.N.C. 2024)......................................................................................29

Case 7:25-cv-01540-M-BM    Document 92    Filed 04/14/26    Page 3 of 32

*Cowan v. Laughridge Constr. Co.*,
  57 N.C. App. 321, 291 S.E.2d 287 (1982)................................................................................18

*Cruise v. Smith & Nephew, Inc.*,
  621 F. Supp. 3d 584 (W.D.N.C. 2022) ...................................................................................19

*CTS Corp. v. Waldburger*,
  573 U.S. 1 (2014).................................................................................................................12, 13

*DeWitt v. Eveready Battery Co.*,
  144 N.C. App. 143, 550 S.E.2d 511 (2001)............................................................................24

*Dickerson v. CRC Industries*,
  No. 2:25-CV-4-FL, 2025 WL 1981434 ........................................................................12, 13, 15

*Driver v. Burlington Aviation, Inc.*,
  110 N.C. App. 519, 430 S.E.2d 476 (1993)............................................................................19

*Dunn v. Pac. Emps. Ins. Co.*,
  332 N.C. 129, 418 S.E.2d 645 (1992)....................................................................................15

*Forbis v. Neal*,
  361 N.C. 519, 649 S.E.2d 382 (2007)................................................................................28, 29

*Fresenius Medical Car Holdings, Inc. v. Town of Lillington*,
  339 F. Supp. 3d 557 (2018) ...................................................................................................12

*Goodman v. Praxair, Inc.*,
  494 F.3d 458 (4th Cir. 2007) .................................................................................................12

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) .............................................................................................29, 30

*Hart v. Ivey*,
  332 N.C. 299, 420 S.E.2d 174 (1992).....................................................................................17

*Hillson Partners L.P. v. Adage, Inc.*,
  42 F.3d 204 (4th Cir. 1994) ...................................................................................................29

*Hyer v. Pittsburgh Corning Corp.*,
  790 F.2d 30 (4th Cir. 1986) ...............................................................................................13, 14

*Jenkins v. N. Carolina Dep't of Motor Vehicles*,
  244 N.C. 560, 94 S.E.2d 577 (1956).......................................................................................25

*Langford v. Joyner*,
  62 F.4th 122 (4th Cir. 2023) ..................................................................................................27

4

*Lohrenz v. Bragg Cmtys., LLC*,
 No. 5:22-CV-44-M, 2023 WL 3012006 (E.D.N.C. Mar. 31, 2023), *report and
 recommendation adopted*, 2023 WL 3011982 (E.D.N.C. Apr. 19, 2023)...............................26

*Lynn v. Burnette*,
 138 N.C. App. 435, 531 S.E.2d 275 (2000)..............................................................25, 28

*Mast v. Sapp*,
 140 N.C. 533, 53 S.E. 350 (1906)......................................................................14

*McCleary-Evans v. Maryland Dep't of Transp.*,
 780 F.3d 582 (4th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016).........................................27

*McLaurin v. E. Jordan Iron Works, Inc.*,
 666 F. Supp. 2d 590 (E.D.N.C. 2009)...................................................................20

*Nix v. Chemours Co. FC, LLC*,
 456 F. Supp. 3d 748 (E.D.N.C. 2019)...................................................................19

*Papasan v. Allain*,
 478 U.S. 265 (1986)......................................................................................12

*Parker v. Colson*,
 266 N.C. App. 182, 831 S.E.2d 102 (2019)..............................................................17

*Parker v. Town of Erwin*,
 243 N.C. App. 84, 776 S.E.2d 710 (2015)...............................................................16

*Pembee Mfg. Corp. v. Cape Fear Const. Co., Inc.*,
 69 N.C. App. 505, 317 S.E.2d 41 (1984)................................................................15

*Plasman v. Decca Furniture (USA), Inc.*,
 12 CVS 2832, 2016 WL 6208639 (N.C. Super. Oct. 21, 2016) ............................................22

*Pleasant v. Johnson*,
 312 N.C. 710, 325 S.E.2d 244 (1985).................................................................25, 26

*Priselac v. Chemours Co.*,
 No. 7:20-CV-190-D, 2022 WL 909406 (E.D.N.C. Mar. 28, 2022).......................................26

*Ragsdale v. Kennedy*,
 286 N.C. 130, 209 S.E.2d 494 (1974)...................................................................28

*Robertson v. City of High Point*,
 129 N.C. App. 88, 497 S.E.2d 300 (1998)...............................................................14

*Rudd v. Electrolux Corp.*,
 982 F. Supp. 355 (M.D.N.C. 1997) .................................................................17, 19

5

*Sargent v. Edwards*,
  257 N.C. App. 540, 808 S.E.2d 927 (2018)........................................................................30

*Sasso v. Tesla, Inc.*,
  584 F. Supp. 3d 60 (E.D.N.C. 2022)...................................................................................21

*Schenk v. HNA Holdings, Inc.*,
  170 N.C. App. 555, 613 S.E.2d 503 (2005)..................................................................18, 19

*Siders v. Gibbs*,
  39 N.C. App. 183, 249 S.E.2d 858 (1978)..........................................................................28

*Silver v. Johns Manville Corp.*,
  789 F.2d 1078 (4th Cir. 1986) ...........................................................................................13

*Simmons v. Wiles*,
  271 N.C. App. 665, 845 S.E.2d 112 (2020)........................................................................25

*Smith v. American Radiator & Standard Sanitary Corp.*,
  38 N.C. App. 457 (1978) ....................................................................................................16

*Stein v. Asheville City Bd. of Educ.*,
  360 N.C. 321, 626 S.E.2d 263 (2006).................................................................................17

*Talley v. Pride Mobility Prods. Corp.*,
  259 N.C. App. 734, 816 S.E.2d 533 (2018)........................................................................24

*Wilder v. Amatex*,
  314 N.C. 550, 336 S.E.2d 66 (1985).......................................................................13, 14, 15

**Statutes**

42 U.S.C. § 7412................................................................................................................17

N.C. Gen. Stat. § 1-15(b) ..................................................................................................13

N.C. Gen. Stat. § 1-50(6) ..................................................................................................13

N.C. Gen. Stat. § 1-50(a)(6)..........................................................................................12, 13

N.C. Gen. Stat. § 1-52(16) ....................................................................................12, 13, 14, 16

N.C. Gen. Stat. § 25-2-313(1).............................................................................................20

N.C. Gen. Stat. § 99B-2(b) ................................................................................................20

N.C. Gen. Stat. § 99B-5 .....................................................................................................22

N.C. Gen. Stat. § 99B-6 .....................................................................................................23

N.C. Gen. Stat. § 99B-6(c)......................................................................................................24

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................................21

Fed. R. Civ. P. 9(b) ...............................................................................................25, 28, 29, 30

Fed. R. Civ. P. 12(b)(6)....................................................................................................8, 11

N.C. R. Civ. P. 8 .............................................................................................................21, 22

Case 7:25-cv-01540-M-BM    Document 92    Filed 04/14/26    Page 7 of 32

Defendant Shell USA, Inc., f/k/a Shell Oil Company ("Shell"), respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' First Amended Complaint (ECF No. 31) (the "Complaint" or "Compl."), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs assert liability on Shell for injuries allegedly caused by Plaintiff Lydia Diane Brock's occupational exposure to benzene. The Complaint is fundamentally deficient in numerous ways and as to every individual claim made. Plaintiffs filed suit against Shell outside of the statute of limitations, and therefore the claims against Shell should be dismissed in their entirety.

Notwithstanding that Plaintiffs' claims are barred by the statute of limitations, Plaintiffs claims are insufficiently pled and thus fail. Plaintiffs' negligence claim fails because the Complaint attempts to impose liability on Shell under theories that do not apply to the allegations presented. Plaintiffs rely on negligence per se principles, yet the pleadings do not identify any statute or regulation that can properly support such a theory or explain how Shell could be liable under those frameworks. The Complaint also fails to demonstrate that Shell owed or breached any duty to Plaintiffs. As a result, the negligence claim cannot be maintained against Shell.

Plaintiffs' breach of warranty claim likewise fails because the Complaint does not establish the existence of any warranty relationship between Plaintiffs and Shell. Aside from boilerplate, conclusory allegations, there are no specific factual allegations showing that Plaintiffs or their employer purchased any product from Shell, that Shell made any warranty directly to Plaintiffs, or that Plaintiffs relied on any representation attributable to Shell. Without sufficient allegations establishing privity or identifying any specific warranty, the breach of warranty claim cannot proceed.

The failure-to-warn and defective design claims asserted in Count III of the Complaint are similarly deficient. Plaintiffs attempt to assert both failure-to-warn and defective design theories, but the Complaint does not support either claim. With respect to failure to warn, Plaintiffs rely on generalized allegations directed at "Defendants" collectively rather than identifying any conduct attributable to Shell. The Complaint does not identify any warning issued by Shell, what warning was allegedly inadequate, or how any alleged deficiency caused Plaintiffs' injuries. Plaintiffs also fail to show that Shell supplied the product at issue or that Shell had any role in providing warnings to Plaintiffs.

Plaintiffs' defective design theory fares no better. The Complaint asserts that benzene is dangerous but does not identify any specific defect in the product itself. Nor does the pleading describe how the product could have been designed differently or propose a feasible alternative design that would have reduced the alleged risk without altering the nature of the product. Absent factual allegations describing a particular defect or an alternative design, Plaintiffs' design defect claim cannot survive.

The same is true for Plaintiffs' intentional tort claims in Count IV of the Complaint. The battery claim fails because the Complaint does not demonstrate that Shell intentionally caused harmful or offensive contact with either Plaintiff. Instead, Plaintiffs again rely on conclusory allegations suggesting that Defendants were aware of potential risks associated with benzene exposure. Such allegations do not plausibly establish the intent required to support a claim for battery. The fraud claim is deficient because the Complaint does not allege the circumstances of the alleged fraud with the required specificity. Plaintiffs rely on a generalized assertion that Defendants withheld unspecified information about benzene hazards but do not identify any particular misrepresentation, who made it, when it was made, or how Plaintiffs relied upon it.

Without factual allegations describing the alleged fraudulent conduct in detail, the fraud claim cannot proceed.

Finally, Plaintiff Roy Brock's loss of consortium claim cannot stand because it is entirely dependent on the viability of the underlying claims asserted by Mrs. Brock. Because Plaintiffs have failed to adequately plead any viable substantive cause of action against Shell, the derivative loss of consortium claim necessarily fails as well.

For these reasons, and as explained more fully below, each of Plaintiffs' claims against Shell should be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises from Plaintiff, Lydia Diane Brock's, alleged occupational exposure to benzene and benzene-containing solvents while working at a chemical plant located near Wilmington, North Carolina (the "Wilmington Plant"), which manufactured Vitamin C. (Compl. ¶ 1). According to the Complaint, Mrs. Brock was employed by Fluor Daniel, an independent contractor performing work at the facility, from March 15, 1993 through November 16, 2001. (Compl. ¶¶ 41–42). Plaintiffs further allege that Mrs. Brock's purported exposure to benzene during her work at the facility caused her to develop significant medical conditions years later, including cancer diagnosed on October 2, 2022. (Compl. ¶¶ 46, 50, 58.) Based on these allegations, Plaintiffs seek recovery for personal injuries, medical costs, alleged economic damages, and loss of consortium. (Compl. ¶¶ 88–89, 113–114.)

Plaintiffs first filed claims arising out of Mrs. Brock's alleged benzene exposures in August 2023, in Middlesex County in the State of New Jersey (Superior Court of New Jersey, Middlesex County, Law Division, No. MID-L-4607-2.3). That Complaint lacked any allegations against Shell. That case was ultimately dismissed in September 2025. Plaintiffs then refiled their claims

in this Court in October 2025. At that time, Plaintiffs still made no claims against Shell. On January 2, 2026, Plaintiffs filed their operative Amended Complaint, the first filed Pleading in this or the predecessor case which asserts any claim whatsoever against Shell. (See generally Compl.)

More than two years after their initial complaint, Plaintiffs now contend that Shell was involved in the supply, distribution, or sale of benzene allegedly used at the Wilmington Plant. (Compl. ¶ 34.) On that basis, Plaintiffs attempt to assert a variety of claims against Shell, including negligence, breach of warranty, failure to warn, defective design, battery, fraud, and a derivative claim for loss of consortium.

## ARGUMENT

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Although the plausibility standard is not a probability requirement, it demands more than a sheer possibility that a defendant has acted unlawfully. *Id*.

In evaluating a Rule 12(b)(6) motion, courts must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor, but they are not bound to accept as true legal conclusions couched as factual allegations or "naked assertions" devoid of further factual enhancement. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555–57. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. Where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief. *Id*. at 679; see also *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts are "not bound to accept as true a legal conclusion couched as a factual allegation").

## I. Plaintiffs' Claims Should Be Dismissed For Failure To File This Action Within The Applicable Statute Of Limitations.

"In the ordinary course, a statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued." *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014). Generally, "a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, because a 12(b)(6) motion tests the sufficiency of the complaint, it "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id*. However, "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id*. "A statute of limitations affirmative defense may be properly raised under Rule 12(b)(6) if the time bar is apparent on the face of the complaint." *Fresenius Medical Car Holdings, Inc. v. Town of Lillington*, 339 F. Supp. 3d 557, 559 (2018) (internal citations omitted). Such is the case here.

The Court should examine the statute of limitations at issue in the same way this Court previously examined this issue in *Dickerson v. CRC Industries* just months ago. *See Dickerson v. CRC Industries*, No. 2:25-CV-4-FL, 2025 WL 1981434, Order Denying Defendant Exxon's Motion to Dismiss entered July 16, 2025. Before the Court in *Dickerson*, which also involved alleged benzene exposures, was a question of whether N.C. Gen. Stat. § 1-52(16), North Carolina's applicable statute of limitations, or N.C. Gen. Stat. § 1-50(a)(6), North Carolina's applicable statute of repose, should apply. In contrast to a statute of limitations, a statute of repose "puts an outer

limit on the right to bring a civil action . . . measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." CTS Corp., 573 U.S. at 8. In *Dickerson*, Defendant Exxon asserted that the statute of repose for product liability claims, N.C. Gen. Stat. § 1-50(a)(6), barred plaintiff's claims, with its language: "no action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." *See Dickerson*, 2025 WL 1981434, at *5-6. Exxon asserted that although there are exceptions to North Carolina's three-year statute of limitations for latent personal injury claims, "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." N.C. Gen. Stat. § 1-52(16). *Id*. Exxon argued the application of N.C. Gen. Stat. § 1-52(16) would essentially time-bar the plaintiff's claims. *Id*.

However, in dealing with injuries of disease, the *Dickerson* Court found the ruling in *Wilder v. Amatex* instructive. See *Wilder*, 314 N.C. 550, 336 S.E.2d 66 (1985). In *Wilder*, the Supreme Court of North Carolina held that N.C. Gen. Stat. § 1-15(b), the precursor to § 1-52(16), "was never intended by the legislature to apply to claims arising out of a disease." *Id*. at 554, 336 S.E.2d at 69. Accordingly, the plaintiff's claims relating to asbestosis were not barred even though the defendants ceased selling asbestos-containing products more than ten years before the suit was filed. *Id*. at 562, 336 S.E.2d at 73. Further, the United States Court of Appeals for the Fourth Circuit applied the reasoning from *Wilder* in concluding that N.C. Gen. Stat. § 1-50(6), the precursor to § 1-50(a)(6), did not bar a claim for damages from asbestosis when the plaintiff sued within three years of his first diagnosis. *Hyer v. Pittsburgh Corning Corp.*, 790 F.2d 30, 34 (4th Cir. 1986); *see also Silver v. Johns Manville Corp.*, 789 F.2d 1078, 1080 (4th Cir. 1986) ("§ 1-50(6), insofar as it

constitutes a statute of repose, has no application to claims arising out of a disease."). This is because a "disease presents an intrinsically different kind of claim" than a latent injury. *Hyer*, 790 F.2d at 33 (quoting *Wilder*, 314 N.C. at 557, 336 S.E.2d at 70)). The decision in *Wilder* "makes it plain that the State Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." *Id*. at 34.

As such, this Court, in *Dickerson*, has clearly contemplated the appropriate time limit for filing claims where the condition at issue is a disease, favoring North Carolina's statute of limitations over North Carolina's statute of repose. In North Carolina, a personal injury claim must be brought within three years of accrual, and such claims "shall not accrue until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant, whichever event occurs first." N.C. Gen. Stat. § 1-52(16). Courts have even held that the primary purpose of the discovery rule set forth in N.C. Gen. Stat. § 1–52(16) "is that it is intended to apply to plaintiffs with latent injuries." *See Robertson v. City of High Point*, 129 N.C. App. 88, 91, 497 S.E.2d 300, 302 (1998). Given the "discovery rule" language, which provides that this three-year period shall not accrue until bodily harm to the claimant becomes apparent or ought reasonably to have become apparent, N.C. Gen. Stat. § 1-52(16) is less harsh than the rigid 10-year limit established by N.C. Gen. Stat. § 1-52(16). However, Plaintiffs fail to clear even this lower bar.

To apply the discovery rule, the Court must determine when a plaintiff knew or should have known a cause of action accrued. Under common law, "[w]hen the right of the party is once violated, even in ever so small a degree, the injury, in the technical acceptation of that term, at once springs into existence and the cause of action is complete." *Mast v. Sapp*, 140 N.C. 533, 540, 53 S.E. 350, 352 (1906). "N.C. Gen. Stat. § 1–52(16) modifies [the common law] rule in the case

of latent damage only to the extent that it requires discovery of physical damage before a cause of action can accrue." *Pembee Mfg. Corp. v. Cape Fear Const. Co., Inc.*, 69 N.C. App. 505, 509, 317 S.E.2d 41, 43 (1984). However, "[i]t does not change the fact that once some physical damage has been discovered, the [damage or] the injury springs into existence and completes the cause of action." *Id.*

A disease presents an intrinsically different kind of claim than an ordinary personal injury matter. *Wilder*, 314 N.C. at 557, 336 S.E.2d at 70. As diseases develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents, it is impossible to identify any particular exposure as the "first injury." *Id.* Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. *Id.* The first *identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent. *Id.* (Emphasis added.) Specifically, "[i]n occupational disease cases . . . a cause of action grounded in negligence accrues when the disease is diagnosed." *Dunn v. Pac. Emps. Ins. Co.*, 332 N.C. 129, 132, 418 S.E.2d 645, 647 (1992). Courts have consistently applied the date of diagnosis as the date of accrual in disease cases. See *Wilder*, 314 N.C. at 562, 336 S.E.2d at 73 (finding "plaintiff's claim accrued on the date he was diagnosed as having the disease asbestosis" and had three years from that date); *Pac. Emps. Ins. Co.*, 332 N.C. at 132, 418 S.E.2d at 647 (finding that because decedent died within three years from the diagnosis of his liver cancer allegedly caused by chemical exposures, plaintiff's subsequent filing of a wrongful death claim was not barred); *Dickerson*, No. 2:25-CV-4-FL, 2025 WL 1981434, at *2 (finding plaintiff's claim was within the statute of limitations as decedent's diagnosis of myelodysplastic syndrome was with three years of filing against defendant).

The instant case is also akin to the statute of limitation determination in *Smith v. American Radiator & Standard Sanitary Corp.*, wherein the Court held that a plaintiff's claims against a contractor, which were commenced more than three years after his cause of action accrued, were time-barred. *Smith*, 38 N.C. App. 457, 464 (1978). In that case, the plaintiff instituted the action on November 10, 1975 for personal injuries sustained on November 11, 1972. *Id*. at 457. Plaintiff initially only brought claims against two other defendants – not the contractor. *Id*. at 458. On September 1, 1976, after receiving answers to interrogatories, the plaintiff amended his complaint to bring in the contractor as an additional defendant. *Id*. In response, the contractor moved to dismiss the complaint for insufficiency of service of process and pled the three-year statute of limitations. *Id*. Ultimately, it was determined that plaintiff's claims against the contractor were time barred by the three-year statute of limitations. *Id*. at 464.

In the instant matter, Plaintiffs' Amended Complaint clearly demonstrate that their claims against Shell are time-barred. Mrs. Brock was diagnosed with acute myeloid leukemia ("AML") on October 2, 2022. Plaintiffs' First Amended Complaint, which includes Plaintiffs' first mention of any claims against Shell, was filed on January 2, 2026, more than three-years after Mrs. Brock's diagnosis. Much like the facts in *Smith*, Plaintiffs' First Amended Complaint, insofar as it makes claims against Shell, was not filed within the applicable statute of limitations set forth in N.C. Gen. Stat. § 1-52(16), and this Court must dismiss all claims directed at Shell.

**II.     Count I Of Plaintiffs' Complaint Should Be Dismissed To The Extent It Relies On Negligence Per Se Principles.**

To establish a prima facie case of negligence under North Carolina law, a plaintiff must show: (1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury. *See Parker v. Town of Erwin*, 243 N.C. App. 84, 110, 776 S.E.2d 710,

729–30 (2015). Plaintiffs' negligence claim against Shell is based on the theory of negligence per se. Because Plaintiffs' allegations are insufficient to sustain a negligence claim under this theory, their negligence cause of action (Count I) against Shell should be dismissed.

The "general rule in North Carolina is that the violation of a [public safety statute] constitutes negligence per se." *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 326, 626 S.E.2d 263, 266 (2006) (citations omitted). Even when a defendant is alleged to have violated a public safety statute, however, the plaintiff is "not entitled to damages" pursuant to a negligence per se theory "unless the plaintiff 'belongs to the class of persons intended to be protected by the statute,' and the statutory violation is 'a proximate cause of the plaintiff's injury.'" *Id.* (quoting *Baldwin v. GTE S., Inc.*, 335 N.C. 544, 546, 439 S.E.2d 108, 109 (1994); *Hart v. Ivey*, 332 N.C. 299, 303, 420 S.E.2d 174, 177 (1992)).

Here, Plaintiffs attempt to plead a negligence per se claim based on alleged violations of OSHA, U.S. EPA regulations (including the National Emissions Standards for Hazardous Air Pollutants ("NESHAP")), and unspecified "North Carolina environmental regulations intended to prevent the release of benzene[.]" Compl. ¶¶ 67–68, 72, 74, 75(n), 75(s), 75(dd). This theory is untenable for multiple reasons, and thus Plaintiffs fail to state a negligence per se claim.

First, Plaintiffs cannot base a negligence per se claim on NESHAP because those regulations impose strict liability. See 42 U.S.C. § 7412, et seq. North Carolina courts have consistently rejected negligence per se theories based on strict liability statutes because such statutes "contain no standard whatsoever as to what constitutes 'reasonable care.'" *Rudd v. Electrolux Corp.*, 982 F. Supp. 355, 366 (M.D.N.C. 1997); see also *Parker v. Colson*, 266 N.C. App. 182, 190, 831 S.E.2d 102, 108 (2019).

Second, Plaintiffs' vague reference to unspecified "North Carolina environmental regulations" also fails to meet their pleading burden. A plaintiff must identify the specific statute allegedly violated to demonstrate that they belong to the class of persons the statute was intended to protect and that the violation proximately caused their injury. See *Baldwin*, 335 N.C. at 546–47, 439 S.E.2d at 109. Here, Plaintiffs did not do so.

Third, Plaintiffs' reliance on alleged OSHA violations is similarly misplaced because North Carolina courts have unequivocally held that OSHA violations cannot serve as a basis for negligence per se claims. See *Schenk v. HNA Holdings, Inc.*, 170 N.C. App. 555, 561, 613 S.E.2d 503, 508 (2005); *Cowan v. Laughridge Constr. Co.*, 57 N.C. App. 321, 324–25, 291 S.E.2d 287, 289–90 (1982). This conclusion makes logical sense considering the standard established by the North Carolina Supreme Court in *Baldwin*, 335 N.C. at 546–47, 439 S.E.2d at 109, and its progeny. The primary purpose of OSHA and other similar worker safety statutes is not to create a duty to support a private cause of action, but instead to promulgate baseline workplace safety standards. See *Carr v. United States*, No. 4:17-CV-167-D, 2018 WL 5074671, at *4 (E.D.N.C. Oct. 17, 2018) ("In enacting OSHA, Congress intentionally declined to provide for a private right of action and instead vested the Department of Labor with the power to vindicate the rights of employees terminated in retaliation for reporting safety concerns"). Rather than serving as bases for negligence per se claims, allegations of OSHA violations may only provide "evidence of custom [which] can be used to establish the standard of care required in the industry." *Schenk*, 170 N.C. App. at 561, 613 S.E.2d at 508. To that effect, assuming that a "defendant violated OSHA standards, this evidence goes only to the issue of defendant's negligence," and does not, by itself, suffice for an affirmative finding that a duty of care has been breached vis-à-vis a particular

plaintiff. *Id*. Accordingly, even if Plaintiffs could prove an OSHA violation, would still need to plead that Shell breached a duty of care owed directly to them, which they have failed to do.

Finally, Plaintiffs' negligence per se theory also fails to the extent it relies on other EPA and North Carolina environmental regulations. Courts have rejected this approach, reasoning that such regulations are intended for broad public protection and do not establish a specific duty of care to an individual plaintiff, which is a prerequisite for a negligence per se claim. See *Nix v. Chemours Co. FC, LLC*, 456 F. Supp. 3d 748, 761 (E.D.N.C. 2019) (holding that North Carolina's environmental regulations do not create a standard for reasonable care and thus cannot support a negligence per se claim); *Rudd*, 982 F. Supp. at 365–66 (rejecting theory that EPA and North Carolina state regulations create a basis for a negligence per se claim). Therefore, this Court should dismiss Plaintiffs' negligence claim to the extent it is premised on alleged violations of OSHA, EPA regulations, or any other statute.

**III.   The Court Should Dismiss Plaintiffs' Cause Of Action For Breach Of Warranty (Count II) Because Plaintiffs Cannot Establish Privity And Have Not Pled An Express Warranty.**

Count II of Plaintiffs' Complaint, which asserts a breach of warranty cause of action, fails for two independent reasons. First, Plaintiffs are not buyers in privity with Shell and do not fall within the narrow statutory exception to privity. Second, the Complaint does not plausibly allege any specific express warranty, nor any reliance upon or breach of any such warranty.

**A.      Plaintiffs are not Buyers in Privity with Shell, and no Exception Applies.**

North Carolina generally requires contractual privity to maintain a claim for breach of warranty. See *Cruise v. Smith & Nephew, Inc.*, 621 F. Supp. 3d 584, 589 (W.D.N.C. 2022); *Driver v. Burlington Aviation, Inc.*, 110 N.C. App. 519, 529, 430 S.E.2d 476, 483 (1993) ("Ordinarily, only the purchaser of a product may institute a claim for liability based upon a breach of an express

19

or implied warranty"); *Blackman v. Bos. Whaler, Inc.*, 649 F. Supp. 3d 142, 149–50 (E.D.N.C. 2023). Although a limited statutory exception permits a "buyer"—including an employee of the buyer—to sue, the exception applies only where the plaintiff (or the plaintiff's employer) is the actual purchaser of the product at issue. *See* N.C. Gen. Stat. § 99B-2(b); *McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 597–98 (E.D.N.C. 2009).

Here, the Complaint alleges no transaction between Shell and Plaintiffs, identifies no Shell product sold to them, and points to no label, statement, or contract creating privity. Instead, it alleges that Shell "refined, marketed, distributed, and/or sold benzene or benzene-containing products which were shipped to and used at the Wilmington Plant for the manufacture of Vitamin C." (Compl. ¶ 35.) These allegations do not plausibly place Plaintiffs within the statutory exception because the Complaint does not allege that either Mrs. Brock or her employer were the buyer of any Shell product. Because Plaintiffs lack privity and do not fall within the limited statutory exception, Count II fails as a matter of law.

**B.      Plaintiffs Fail to Plead the Existence of an Express Warranty.**

Under North Carolina law, an express warranty requires an affirmation of fact or promise by the seller to the buyer relating to the goods that becomes part of the basis of the bargain. *See* N.C. Gen. Stat. § 25-2-313(1). To state a claim for breach of express warranty, a plaintiff must allege (1) that an express warranty was made as to a fact or promise relating to the goods, (2) that the warranty was relied upon by the plaintiff in making his decision to purchase, and (3) that this express warranty was breached by the defendant. *Ascot Corp., LLC v. I&R Waterproofing, Inc.*, 286 N.C. App. 470, 475, 881 S.E.2d 353, 359 (2022). Where a plaintiff fails "to identify any specific words, promises, affirmations, or statements . . . that would create an express warranty,"

dismissal is warranted as a matter of law. *Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 74 (E.D.N.C. 2022); *see also Asby v. Medtronic, Inc.*, 673 F. Supp. 3d 787, 797 (E.D.N.C. 2023).

The Complaint does not identify any particular statement, representation, label, or promise by Shell that could plausibly constitute an express warranty. Nor does it allege that Plaintiffs, or any purchaser, relied on a representation from Shell when acquiring benzene. The pleading likewise fails to describe any sale or distribution chain connecting a Shell product or statement to Mrs. Brock. Without allegations identifying the specific affirmation or promise that supposedly created an express warranty, Plaintiffs cannot sustain such a claim. Courts routinely dismiss express warranty claims where the complaint does not specify the language or representation giving rise to the alleged warranty.

**IV.      The Court Should Dismiss Count III Of Plaintiffs' Complaint Because The Plaintiffs Failed To Properly Plead Failure To Warn And Defective Design.**

**A.      Plaintiffs' failure to warn claim fails as a matter of law.**

Plaintiffs' failure-to-warn claim should be dismissed because the Complaint relies on impermissible "group pleading" and does not allege facts specific to Shell. Moreover, the Complaint spews boilerplate language to track statutory text rather than identifying any warning issued by Shell, any product supplied by Shell, or any conduct attributable to Shell. Such undifferentiated and conclusory allegations are insufficient to state a plausible claim for relief against any individual defendant.

Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In the case of group pleading or pleadings that are confusing or unfocused, the courts have demonstrated that such pleadings may be subject to dismissal. Similarly, under Rule 8 of the North Carolina Rules of Civil Procedure, Complaints must contain "a short and plain statement of the claim sufficiently particular to give the court and

the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C. R. Civ. P. 8.; *Plasman v. Decca Furniture (USA), Inc.*, 12 CVS 2832, 2016 WL 6208639, at *5 (N.C. Super. Oct. 21, 2016); *Bethea v. Equifax Info. Servs., LLC*, No. 3:25-CV-00684-KDB-SCR, 2025 WL 3704402 (W.D.N.C. Dec. 22, 2025). Plaintiffs must allege facts showing the "grounds" for their "entitlement to relief," and that obligation requires more than mere labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Id*. North Carolina law states:

> (a) No manufacturer or seller of a product shall be held liable in any product liability action for a claim based upon inadequate warning or instruction unless the claimant proves that the manufacturer or seller acted unreasonably in failing to provide such warning or instruction, that the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought, and also proves one of the following:

> (1) At the time the product left the control of the manufacturer or seller, the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

> (2) After the product left the control of the manufacturer or seller, the manufacturer or seller became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances. N.C. Gen. Stat. § 99B-5.

Here, Plaintiffs simply track the statutory language instead of setting forth proper factual allegations. The Complaint asserts, for example, that Defendants "acted unreasonably in failing to provide such warning or instruction" and that the products, "without an adequate warning," created an "unreasonably dangerous condition." (Compl. ¶¶ 92–93.) These assertions amount to nothing

more than legal conclusions. The pleading also improperly attributes the same generalized conduct to all Defendants without identifying the actions of any particular party. Further, the Complaint does not allege what products exposed Mrs. Brock to benzene, what warnings accompanied the products, what specific warning was absent, how any warning was purportedly inadequate, or even what benzene containing "products" are at issue. Instead, Plaintiffs rely on conclusory statements that the products were "defective" and "unreasonably dangerous." Accordingly, Plaintiffs failed to plausibly plead a failure-to-warn claim against Shell, and Count III should be dismissed.

> **B.      Plaintiffs' Defective Design Claim Fails As A Matter Of Law.**

Plaintiffs allege that the Defendants' benzene and benzene-containing solvents were defective. Yet, Plaintiffs do not state how said benzene and benzene-containing solvents were inadequate, nor do they propose a reasonable safer design. For these reasons Plaintiffs' defective design claim fails as a matter of law. North Carolina law states that:

> No manufacturer of a product shall be held liable in any product liability action for the inadequate design or formulation of the product unless the claimant proves that at the time of its manufacture the manufacturer acted unreasonably in designing or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought, and also proves one of the following:
>
> (1) At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.
>
> (2) At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design. N.C. Gen. Stat. § 99B-6.

North Carolina law N.C. Gen. Stat. § 99B-6(c) carves out an exception for products with inherent characteristics that are recognized by the community and cannot be eliminated without compromising the product's usefulness:

> No manufacturer of a product shall be held liable in any product liability action for a claim under this section to the extent that it is based upon an inherent characteristic of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and that is recognized by the ordinary person with the ordinary knowledge common to the community.

Plaintiffs do not state a plausible design-defect claim because the Complaint never explains what aspect of benzene was inadequate or how the substance could have been manufactured in another manner without changing its fundamental nature. The pleading also does not identify any alternative design that would have been safer, workable, and reasonable to adopt. While Plaintiffs allege that benzene poses a danger (Compl. ¶¶ 61–62) and set forth legal conclusions that Defendants' benzene and benzene-containing solvents were defective, they fail to identify any actual defect. Courts in North Carolina consistently dismiss design-defect claims when a complaint fails to describe a specific defect or to offer a proposed alternative design. (*See Asby v. Medtronic, Inc.*, 673 F. Supp. 3d 787 (E.D.N.C. 2023), *DeWitt v. Eveready Battery Co.*, 144 N.C. App. 143, 550 S.E.2d 511, (2001), *Talley v. Pride Mobility Prods. Corp.*, 259 N.C. App. 734, 816 S.E.2d 533 (2018)). Without factual allegations identifying a specific defect or proposing a feasible alternative design, Plaintiffs cannot satisfy the statutory requirements for a design-defect claim. Plaintiffs' Complaint offers only the conclusory assertion that benzene is hazardous. Such allegations are insufficient as a matter of law, and Count III must therefore be dismissed as to Shell.

## V.    This Court Should Dismiss Plaintiffs' Cause Of Action For "Intentional Tort— Battery & Fraud" (Count IV).

Plaintiffs' causes of action for battery and fraud fail because they have not pleaded the essential elements for either claim. Even accepting the allegations as stated, the Complaint falls

short of stating a prima facie case for battery or common law fraud. Moreover, Plaintiffs' fraud claim lacks the specificity required by Federal Rule 9(b).

### A. The Court Should Dismiss Plaintiffs' Battery Claim.

Under North Carolina law, a cause of action for common law battery requires allegations that "(1) the defendant intentionally cause[d] bodily contact with the plaintiff; (2) the bodily contact caused physical pain or injury; and (3) the bodily contact occurred without the plaintiff's consent." *Simmons v. Wiles*, 271 N.C. App. 665, 668, 845 S.E.2d 112, 116 (2020) (*citing Andrews v. Peters*, 75 N.C. App. 252, 256, 330 S.E.2d 638, 640–41 (1985)). The tort's hallmark is the "**intent** to bring about a result which will invade the interests of another in a way that the law forbids," *Id*. at 668–69, 845 S.E.2d at 116 (emphasis added), and plaintiff must demonstrate an "intent to act" for liability to attach. *Lynn v. Burnette*, 138 N.C. App. 435, 440, 531 S.E.2d 275, 279 (2000) (*citing Andrews*, 75 N.C. App. at 256, 330 S.E. 2d at 640). The intent must be to cause an invasion of interest, not merely to perform the act.

Negligence and intentional torts are "mutually exclusive theories of liability." *Lynn*, 138 N.C. App. at 440, 531 S.E.2d at 279. A harm cannot result from both negligence and an intentional tort, as Plaintiffs allege. Because there is "no such thing" as a "negligent" assault or battery, an intentional tort is "beyond and outside the realm of negligence." *Id*. at 440–41, 531 S.E.2d at 279 (*quoting Pleasant v. Johnson*, 312 N.C. 710, 714–15, 325 S.E.2d 244, 248 (1985)). North Carolina law distinguishes intentional torts from willful negligence; "[a]n intentional act of violence is not a negligent act." *Id*. (*quoting Jenkins v. N. Carolina Dep't of Motor Vehicles*, 244 N.C. 560, 563, 94 S.E.2d 577, 580 (1956)). Although constructive intent may suffice for an intentional tort, it applies only where the conduct "is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified." *Id*. at 441,

531 S.E.2d at 280 (quoting *Pleasant*, 312 N.C. at 714–15, 325 S.E.2d at 248). That is not the case here.

Plaintiffs' allegations do not establish intentional contact or conduct so reckless as to be deemed intentional. Their battery claim relies on the assertion that Defendants "cause[d] Plaintiff's exposure to benzene **knowing** that those exposures would cause harm to the Plaintiff." Compl. ¶ 107 (emphasis added). This general awareness of potential harm is legally insufficient to plead the requisite intent for a battery claim under North Carolina law. As courts have consistently held, a defendant's mere knowledge that individuals may be exposed to harmful conditions does not constitute the specific intent necessary for the intentional tort of battery. *See Priselac v. Chemours Co.*, No. 7:20-CV-190-D, 2022 WL 909406, at *9 (E.D.N.C. Mar. 28, 2022) (applying North Carolina law) (finding that plausible allegations of defendants' knowledge that harmful chemicals would enter public drinking water did not plausibly allege defendants directed their conduct at the particular plaintiff); *see also Lohrenz v. Bragg Cmtys., LLC*, No. 5:22-CV-44-M, 2023 WL 3012006, at *9 (E.D.N.C. Mar. 31, 2023) (applying North Carolina law), report and recommendation adopted, 2023 WL 3011982 (E.D.N.C. Apr. 19, 2023) (dismissing intentional torts where there was no allegation of "affirmative act[s] aimed at exposing the [particular plaintiffs] to harm," even if an unsafe environment was allowed). Plaintiffs' reliance on this theory, offering only conclusory assertions of intent, has been repeatedly rejected by North Carolina courts, and should be rejected here as well.

Moreover, the Complaint's description of the alleged battery relies exclusively on boilerplate allegations sounding in simple negligence, not an intentional tort. For example, Plaintiffs assert that Defendants failed to warn or train employees, concealed knowledge of benzene hazards, failed to use proper labels, and continued selling benzene products despite safer

alternatives. Compl. ¶¶ 113–116, 117, 123, 125, 125(h), 125(p). These allegations possibly describe simple negligence, if anything, and fall far short of the reckless indifference or intentionality required for a battery claim. As such, Plaintiffs' claims fail. *See Abernathy v. Consolidated Freightways Corp. of Del.*, 321 N.C. 236, 240, 362 S.E.2d 559, 562 (1987) (dismissing intentional torts where alleged actions do not rise to the level of "willfulness and wantonness equivalent in spirit to actual intent"). Furthermore, Plaintiffs' failure to specify which of the named Defendants engaged in this conduct renders their claim implausible. *See Barrett v. Bd. of Educ. of Johnston Cnty.*, N.C., 590 F. App'x 208, 210–11 (4th Cir. 2014) (dismissing claims for failure to identify responsible defendant for intentional act); *Boykin Anchor Co. v. AT&T Corp.*, No. 5:10-CV-591-FL, 2011 WL 1456388, at *4 (E.D.N.C. Apr. 14, 2011) (rejecting allegations against "all defendants"). Therefore, these allegations are insufficient to state a claim for battery.[1]

Plaintiffs' only explicit assertion of intentional conduct is the conclusory allegation that "Defendants intended to cause harmful conduct to the Plaintiff through causing benzene exposure, and did so with the knowledge, belief and intent that such exposure could cause the Plaintiff to contract leukemia." Compl. ¶ 128. This is insufficient to withstand a motion to dismiss. It is not only an impermissible group pleading but also a bald assertion that merely recites the elements of the tort without supporting factual matter. These allegations plainly fail to meet the plausibility standard required to state a claim. *See, e.g., Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) (plaintiff bears the burden of "pleading a facially plausible claim"); *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (citations omitted) (stating a complaint must

---

[1] Indeed, Plaintiffs wrongly rely on group pleading in all of the counts in the Complaint. *See, e.g.*, Compl. ¶¶ 66–67 (Count I (negligence)), ¶¶ 82–83 (Count II (breach of warranty)), ¶¶ 97–99 (Count III (failure to warn and defective design)), ¶¶ 107–108 (Count IV (intentional tort-battery & fraud)), and ¶ 137 (Count V (loss of consortium)).

contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"), *cert. denied*, 577 U.S. 1138 (2016).

Plaintiffs' allegation that Defendants "intended" to cause harm to Mrs. Brock lacks factual support within the Complaint. Instead, Plaintiffs describe conduct sounding in simple negligence—failure to train, failure to warn, ignoring known risks, and failing to take proper precautions—which is "mutually exclusive" from a battery claim. *Lynn*, 138 N.C. App. at 440, 531 S.E.2d at 279. An actual intent to injure cannot be inferred from negligent acts. *Id*. Rather, a plaintiff must explicitly allege that the defendant "acted with an intent to injure the plaintiff"; the mere "intent to cause offensive contact" is insufficient. *Britt v. Hayes*, 142 N.C. App. 190, 192, 541 S.E.2d 761, 762 (2001); *see also Siders v. Gibbs*, 39 N.C. App. 183, 186–87, 249 S.E.2d 858, 860 (1978) (distinguishing a willful purpose not to discharge a duty from a willful purpose to inflict injury). Therefore, the Complaint fails to plausibly and adequately plead that Shell acted with the intent to cause or inflict injury, necessitating dismissal of the battery cause of action against Shell.

**B.      The Court Should Dismiss Plaintiffs' Common Law Fraud Claim.**

Plaintiffs also assert a claim for common law fraud. However, Plaintiffs have failed to plead each essential element of a fraud claim, and the allegations lack the specificity required by Rule 9(b). Accordingly, this Court should dismiss Plaintiffs' fraud claim.

To state a claim for common law fraud under North Carolina law, a plaintiff must allege: (1) a fraudulent representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) with the intent to deceive; (4) which in fact does deceive; and (5) resulting in damages to the injured party. *Forbis v. Neal*, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). Additionally,

allegations of fraud are subject to Fed. R. Civ. P. 9(b), which requires claimants to "plead fraud with particularity." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4 Cir. 1999). The "circumstances" that must "be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby." *Id*. at 784 (citations omitted); *see also Cohanzad as Tr. of Benjamin Cohanzad Tr. v. Johnson*, 759 F. Supp. 3d 675, 679 (E.D.N.C. 2024) (same). By contrast, "[m]ere allegations of 'fraud by hindsight' will not satisfy the requirements of Rule 9(b)." *Harrison*, 176 F.3d at 784 (quoting *Hillson Partners L.P. v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994)).

As a threshold matter, Plaintiffs' fraud claim fails as a matter of law because they have not adequately alleged every necessary element of a fraud claim. The sole allegation attempting to support Plaintiffs' fraud claim is the unsuported statement that Defendants "committed fraud by withholding information of the health hazards of benzene and the benzene exposures on the Wilmington Plant and by making misrepresentations of material fact to Plaintiff, her coworkers and employer." Compl. ¶ 125(r). Critically, this allegation, and the remainder of Plaintiffs' purported fraud-based allegations, merely sound in simple negligence, asserting, for instance, that "Defendants" failed to "warn, or instruct" Mrs. Brock, failed to "affix labels or warnings" upon allegedly hazardous products, and failed to properly "train and advise" Mrs. Brock and her co-workers and employers. Compl. ¶¶ 125(c)–(g), (h)–(j), (n). The Complaint is devoid of any allegation that Shell knowingly withheld information with the explicit intent to deceive Mrs. Brock, which is an essential element of a viable fraud claim. *Forbis*, 361 N.C. at 526–27, 649 S.E.2d at 387. Because Plaintiffs failed to plead this necessary element, this Court should dismiss their fraud claim.

Even assuming Plaintiffs pleaded each element of their fraud claim, it should nevertheless be dismissed for failing to meet the heightened pleading requirements of Rule 9(b). The Complaint is devoid of the specific "circumstances" of the alleged fraud required by the rule. *Harrison*, 176 F.3d at 784. For instance, Plaintiffs fail to identify the time, place, or contents of the allegedly false representations, instead pleading only that "Defendants" withheld vague and undefined "information" concerning benzene's health hazards. Compl. ¶ 125(r). They also fail to identify the person who made the misrepresentation. *Harrison*, 176 F.3d at 784. Given that there are numerous defendants named in the Complaint, simply alleging that "Defendants" made unidentified fraudulent misrepresentations fails to satisfy the heightened pleading standard for fraud. Accordingly, this Court should dismiss Plaintiffs' fraud claim against Shell.

## VI.     Count V Of Plaintiffs' Complaint Must Be Dismissed Because It Is Derivative.

Plaintiff Roy Brock asserts a loss of consortium claim in Count V based on the injuries allegedly sustained by his spouse, Lydia Brock. This claim fails because it is entirely derivative of the underlying causes of action. Loss of consortium is a derivative action. *Sargent v. Edwards*, 257 N.C. App. 540, 808 S.E.2d 927 (2018). A spouse cannot recover for loss of consortium unless the action of the injured plaintiff is successful. *Id*.

Plaintiff Roy Brock's loss of consortium claim is entirely derivative of the allegations and injuries asserted in Mrs. Brock's claims in Counts I–IV. (Compl. ¶¶ 135–38.) Because Plaintiff Lydian Brock has failed to state viable underlying claims for the reasons discussed above, Roy Brock's loss of consortium claim likewise cannot stand and must be dismissed as a matter of law.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as to Shell because Plaintiffs fail to state a claim as to all counts.

**Local Rule 7.2(f)(3) Certification**

I hereby certify that this memorandum complies with the applicable word limit. According to the word count generated by the word processing software, this memorandum contains 7,870 words, excluding table of contents and table of authorities.

Respectfully submitted this the 14th day of April, 2026.

_/S/ Kaitlin R. Myers_
Eric T. Hawkins
NC Bar No. 48578
Kaitlin R. Myers
NC Bar No. 53591
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601
Phone: 919-787-4555
Fax: 919-741-5840
Email: ehawkins@grsm.com
Email: krmyers@grsm.com
Local Civil Rule 83.1(d) Attorneys for Shell USA, Inc. f/k/a Shell Oil Company

-and-

Monique M. Weiner
Connor J. Reinoso
KUCHLER POLK WEINER, LLC
1615 Poydras Street, Suite 1300
New Orleans, Louisiana 70112
Phone: (504) 592-0691
E-Mail: mweiner@kuchlerpolk.com
LA Bar. No. 23233
Attorneys for Shell USA, Inc. f/k/a Shell Oil Company
_Special Appearances Pending_

Case 7:25-cv-01540-M-BM    Document 92    Filed 04/14/26    Page 31 of 32

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be electronically-filed the foregoing document with the Clerk of Court using this Court's Cm/ECF system, which caused it to be served this day on all counsel of record.

Dated: April 14, 2026

/S/ Kaitlin R. Myers
Kaitlin R. Myers