Case No. 7:25-CV-01540-M-BM

| | |
|---|---|
| LYDIA DIANE BROCK and ROY BROCK, Plaintiffs, v. BASF CORPORATION, Individually and as Successor In Interest to Takeda Vitamin & Food USA, Inc. f/k/a Takeda Chemical Products USA, Inc. f/k/a Wiltak, Inc.; TAKEDA AMERICA HOLDINGS, INC. f/k/a Takeda America, Inc.; TAKEDA PHARMACEUTICALS USA, INC. f/k/a Takeda Pharmaceuticals North America, Inc. f/k/a Takeda Pharmaceuticals America, Inc.; TAKEDA CHEMICAL INDUSTRIES, LTD.; TAKEDA EUROPE GMBH; and JOHN DOES 1-40, Defendants. | **REPLY IN SUPPORT OF DEFENDANT FISHER SCIENTIFIC COMPANY L.L.C.'S PARTIALLY OPPOSED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** **(Dkt. 63)** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.   The Remaining Allegations In Count I Do Not Give Rise To A Cause Of Action For Negligence Against Fisher Scientific. ............................................................ 2

    II.  Count III Does Not State A Claim Under The PLA Based On Theories Of Inadequate Warning Or Design. ................................................................................ 3

    III. North Carolina Law Does Not Recognize Plaintiffs' Claim For Battery In Count IV. ....... 6

    IV. Count V Of The FAC Fails Because Mr. Brock's Derivative Loss Of Consortium Claim Is Not Supported By A Valid Tort Action. ................................................. 8

CONCLUSION................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Aqua N. Carolina, Inc. v. Corteva, Inc.,* No. 7:23-CV-16-D, 2024 WL 3367514
(E.D.N.C. July 9, 2024)........................................................................................ 5

*Asby v. Medtronic, Inc.*, 673 F. Supp. 3d 787 (E.D.N.C. 2023) .............................. 3, 4, 5

*Baker v. Monsanto Co.,* 962 F. Supp. 1143 (S.D. Ind. 1997) ........................................ 7

*Carlson v. Boston Sci. Corp.*, 856 F.3d 320 (4th Cir. 2017)........................................... 4

*Carmona v. Union Cnty. Sheriff's Off.*, No. 3:22-cv-00193-MR, 2023 WL 438789
(W.D.N.C. Jan. 25, 2023)..................................................................................... 3

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348
(S.D.N.Y. 2005) .................................................................................................. 6

*Jordan v. City of Charlotte*, No. 3:23-CV-000152-RJC-SCR, 2023 WL 12087284
(W.D.N.C. Dec. 28, 2023)................................................................................... 6, 7

*Nichols v. United States*, No. 5:09-CV-196-BO, 2010 WL 11622662 (E.D.N.C. 2010) ............... 8

*Priselac v. Chemours Co.*, No. 7:20-CV-190-D, 2022 WL 909406
(E.D.N.C. Mar. 28, 2022)..................................................................................... 6, 7

*Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961 (E.D.N.C. 2015) .............................. 3

**Statutes**

N.C. Gen. Stat. § 99B-1(3) ........................................................................................ 3

N.C. Gen. Stat. § 99B-1.1 .......................................................................................... 3

N.C. Gen. Stat. § 99B-5 ............................................................................................. 3

N.C. Gen. Stat. § 99B-6 ............................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................... 1, 4

Fed. R. Civ. P. 8 ....................................................................................................... 3

Defendant Fisher Scientific Company L.L.C. ("Fisher Scientific") respectfully submits this Reply brief in further support of its Partially Opposed Motion to Dismiss the First Amended Complaint ("FAC") filed by Lydia Diane Brock ("Mrs. Brock") and Roy Brock ("Mr. Brock") (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiffs have withdrawn their claims against Fisher Scientific based on premises liability (Count I), negligence *per se* (Count I), breach of implied warranty (Count II), breach of express warranty (Count II), and fraud (Count IV). [Dkt. #90 at pp. 5, 15-16.] Rather than properly correcting their admittedly deficient Complaint, Plaintiffs argue that the Court should permit four claims against Fisher Scientific to remain: (i) a claim for negligence under a product liability theory (that Plaintiffs attempt to shoehorn into Count I); (ii) a products liability claim for failure to warn and inadequate design under North Carolina's Product Liability Act (the "PLA") (Count III); (iii) an intentional tort claim for battery (commingled with the fraud allegations of Count IV); and (iv) Mr. Brock's derivative loss of consortium claim (Count V). But not one of these claims is adequately pleaded.

Count I asserts a premises liability cause of action that is not properly directed at product supplier Fisher Scientific and, even if the premises allegations could state a product liability claim, that claim would be subsumed by the PLA claim asserted in Count III. Count III fails because it merely states the statutory language of the PLA, not facts that could support a claim under the PLA against Fisher Scientific. Count IV fails because the law of North Carolina does not recognize a battery claim where the Complaint does not identify intentional conduct by the specific defendant directed to the specific plaintiff; Plaintiffs' general allegations here do not suffice. Finally, Mr. Brock's loss of consortium claim cannot stand absent a predicate tort by Fisher Scientific. None of Plaintiffs' causes of action state a valid claim against Fisher Scientific. All should be dismissed.

**I.** **The Remaining Allegations In Count I Do Not Give Rise To A Cause Of Action For Negligence Against Fisher Scientific.**

Count I of the FAC purports to assert a negligence claim against all Defendants. [Dkt. #31 at ¶¶ 57-80.] However, the allegations of Count I are substantively unchanged from the original Complaint in which Plaintiffs asserted premises claims against the Premises Defendants.[1] These premises allegations cannot now be contorted into a product liability claim against Fisher Scientific – a claim that would be subsumed by the PLA.

In arguing that Count I states a product liability claim for negligence, Plaintiffs attempt to fit a square peg in a round hole. Plaintiffs argue that their negligence claim against Fisher Scientific arises from the "duty to exercise reasonable care in the design, manufacture, testing, inspection, marketing and sale of those products, including a duty to warn of known or reasonabl[y] knowledgeable dangers associated with benzene exposure." [Dkt. #90 at pp. 6-7.] This argument ignores the actual allegations of the FAC. Count I does not assert any such duty (the words "design," "manufacture," "marketing," and "sale" are not stated in Count I at all) but rather alleges that unspecified "Defendants" owed various premises duties to employees and invitees that they breached. [See Dkt. #31 at ¶¶ 66-74.] Count I asserts no duty owed by a product manufacturer or supplier. It is a premises claim, which Plaintiffs have withdrawn. Count I should be dismissed in its entirety.

Notwithstanding the pleading deficiencies of Count I, Plaintiffs cannot assert an independent negligence claim based on products liability. "[C]auses of action for failure to warn

---

[1] BASF Corporation, individually, and as successor-in-interest to Takeda Vitamin & Food USA, Inc., f/k/a Takeda Chemical Products USA, Inc., f/k/a Wiltak, Inc.; Takeda America Holdings, Inc., f/k/a Takeda America, Inc. ("TA"); Takeda Pharmaceuticals USA, Inc., f/k/a Takeda Pharmaceuticals North America, Inc., f/k/a Takeda Pharmaceuticals America, Inc. ("TUSA"); Takeda Chemical Industries, Ltd. ("TCI"); and Takeda Europe GmbH ("TE").

and defective design claims under [the PLA] subsume independent negligence claims based on similar theories of liability." *Asby v. Medtronic, Inc.*, 673 F. Supp. 3d 787, 795 (E.D.N.C. 2023); *see also* N.C. Gen. Stat. § 99B-1.1 ("[t]here shall be no strict liability in tort in product liability actions."). To the extent that Count I asserts a failure to warn by Fisher Scientific, such claim should be dismissed <u>with prejudice</u> because it is subsumed by the PLA and duplicative of Count III. *See Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 995 (E.D.N.C. 2015) (dismissing independent negligence claims and finding that "all claims brought for or on account of personal injury…caused by or resulting from the manufacture, construction, design, formulation, development of standards…selling, advertising, packaging, or labeling of any product are properly termed product liability actions…") (citing N.C. Gen. Stat. § 99B-1(3)) (quotations omitted); *see also Carmona v. Union Cnty. Sheriff's Off.*, No. 3:22-cv-00193-MR, 2023 WL 438789, at *4 (W.D.N.C. Jan. 25, 2023) ("To the extent that [the plaintiff] is attempting to file duplicative claims, this will not be permitted.").

## II. Count III Does Not State A Claim Under The PLA Based On Theories Of Inadequate Warning Or Design.

Plaintiffs' product liability claim under the PLA fails to meet the requirements of Fed. R. Civ. P. 8 because its allegations merely track the text of N.C. Gen. Stat. § 99B-5 (inadequate warning or instruction) and N.C. Gen. Stat. § 99B-6 (inadequate design or formulation). Plaintiffs argue in essence that this satisfies the federal pleading requirements and that they are not obligated to set forth facts of certain essential elements of failure to warn or inadequate design at this stage [*see* Dkt. #90 at pp. 9-12], but the very citations in the Response refute this argument. The Response cites to "FAC ¶ 93" to argue that "the FAC plausibly alleges that Defendant failed to provide adequate warnings regarding the dangers of benzene exposure, failed to provide sufficient instructions for safe use and handling, and placed into the stream of commerce a product whose

risks outweighed its utility or could have been reduced through a safer alternative design, formulation, packaging, or warning system." [Dkt. #90 at p. 10.]  This argument is as conclusory as the allegations of Paragraph 93, which states:

> 93.  Pursuant to N.C.G.S. § 99B-5, at the time the product left the control of the manufacturer or seller, the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant. In the alternative, after the product left the control of the manufacturer or seller, the Defendants as manufacturers or sellers became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer. However, Defendants failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

[Dkt. #31 at ¶ 93.]

The Complaint is devoid of facts specific to Fisher Scientific, and these rote legal statements do not nudge the claim against Fisher Scientific into the realm of plausible.

The same is true of the failure to warn allegations in the FAC.  Plaintiffs concede that proximate cause under a failure to warn theory requires reliance by the plaintiff on the warning, but seemingly dispute that they are required to make allegations of reliance at the pleadings stage. [Dkt. #90 at p. 11.][2]  To the contrary, dismissal under Fed. R. Civ. P. 12(b)(6) is proper where the complaint fails "to plausibly allege how any such warnings were inadequate" or that the individual receiving the warnings "actually read or relied on the warnings that defendants gave."  *Asby v. Medtronic, Inc.*, 673 F. Supp. 3d at 797.  Plaintiffs alternatively argue that Mrs. Brock's reliance on Fisher Scientific's inadequate warnings is pled based on the allegation contained in Count IV

---

[2] Plaintiffs assert that Fisher Scientific erroneously relies upon *Carlson v. Boston Sci. Corp.*, 856 F.3d 320 (4th Cir. 2017) for the proposition that alleging reliance is required at the pleadings stage. This is incorrect.  *Carlson* was not cited by Fisher Scientific for this proposition, but rather was quoted to recite the elements of a failure to warn claim.  As discussed herein, the holding in *Asby* nonetheless contradicts Plaintiffs' argument regarding pleading requirements.  673 F. Supp. 3d 787 (E.D.N.C. 2023).

that "Plaintiff relied upon the Defendants for information and warnings regarding the health hazards and cancer risk of the benzene and benzene-containing solvents and Wilmington Plant and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety." (*Id*., citing Dkt. #31 at ¶ 125(s).) Once again, no such allegation is contained in or incorporated into Count III. This allegation is pled in support of Plaintiffs' battery and fraud claims, the latter of which now is withdrawn. There are no allegations of what Fisher Scientific's warnings stated, how they were inadequate, or that Mrs. Brock actually relied on the warnings.

Inadequate design is also insufficiently alleged because Count III does not state any facts concerning how Fisher Scientific's product was inadequately designed or formulated or what feasible alternatives existed. The Response argues without citation that "[a]t the pleading stage in a products liability case, a plaintiff need not identify every alternative design with engineering detail." [Dkt. # 90 at p. 10.] While a complaint may not require engineering precision, Plaintiffs' argument is contrary to the law in this jurisdiction. The Eastern District of North Carolina squarely has held that "[a]lleging negligent design requires alleging what was wrong with the design." *Asby*, 673 F. Supp. 3d at 793 ("Not only does the complaint fail to identify how the design is inadequate, but the complaint also fails to cite alternative feasible designs which were safer."); *see also Aqua N. Carolina, Inc. v. Corteva, Inc.,* No. 7:23-CV-16-D, 2024 WL 3367514, at *4 (E.D.N.C. July 9, 2024) (dismissing plaintiff's inadequate design claims because the complaint did not plausibly allege any facts concerning the design or formulation of the purportedly toxic chemical). Without factual allegations with respect to how Fisher Scientific's design or formulation of its alleged products was inadequate, or what alternatives were feasible, Count III fails to plead products liability based on inadequate design.

5

### III. North Carolina Law Does Not Recognize Plaintiffs' Claim For Battery In Count IV.

Mrs. Brock's alleged occupational exposure to chemicals does not constitute a claim for battery under North Carolina law. "To state a battery claim, a plaintiff must plausibly allege (1) intent, (2) harmful or offensive contact, (3) causation, and (4) lack of privilege." *Priselac v. Chemours Co.*, No. 7:20-CV-190-D, 2022 WL 909406, at *8 (E.D.N.C. Mar. 28, 2022). Absent actual intent, a plaintiff may assert a claim for battery based on the defendant's constructive intent, which "exists where conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified." *Id*. The relevant consideration to establish constructive intent is "whether the defendant directed the conduct specifically at the plaintiff." *Id*. A plaintiff accordingly fails to plausibly state a battery claim when the complaint contains "no facts indicating defendants directed their conduct toward her." *Id*. at *9. Additionally, a complaint asserting battery "containing only collective allegations against all Defendants, without identifying how each individual Defendant personally interacted with the plaintiff or was responsible for the alleged harm, fails to state a claim entitling a plaintiff to relief." *Jordan v. City of Charlotte*, No. 3:23-CV-000152-RJC-SCR, 2023 WL 12087284, at *4 (W.D.N.C. Dec. 28, 2023) (internal citation omitted) (quotation omitted).

North Carolina accordingly recognizes the intentional tort of battery where a specific defendant directed conduct at a specific plaintiff. The nature of this case does not reflect those circumstances. Plaintiffs argue that there is no *per se* bar against a battery claim in the factual context of toxic chemical exposures. [Dkt. #90 at p. 14.] Neither of the two cases decided in other jurisdictions which Plaintiffs rely upon support that a claim for battery has been pled here. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005) was a multi-district litigation action where the court considered motions to dismiss filed by various

gasoline producers alleged to have caused contamination to groundwater across multiple states. No claims for battery were discussed or at issue in this opinion. *Baker v. Monsanto Co.,* 962 F. Supp. 1143 (S.D. Ind. 1997)[3] was a chemical exposure case in which summary judgment was granted in favor of the manufacturer because the plaintiff failed to show that the defendant manufacturer acted with intent to expose the specific plaintiff. The *Baker* court was not tasked with evaluating the pleading requirements for battery.

In contrast, this District Court has dismissed battery claims based on chemical exposure similar to the allegations made in Count IV. *See generally Priselac,* 2022 WL 909406. There, the plaintiffs were a class of citizens attempting to assert battery based on their alleged exposure to drinking water contaminated by perfluorinated chemicals ("PFCs") released during the neighboring industrial site's operations. *Id*. at *1. In dismissing the complaint's battery claims, this District Court reasoned "[a]lthough [plaintiff] plausibly alleges that defendants knew the PFCs would enter the general public's drinking water, that knowledge does not plausibly allege that defendants were directing their conduct at [plaintiff] and the class members. Instead, the allegations show defendants' conduct was directed at operating their business and that they had knowledge of the substantial safety risks incidental to the manner in which they did so…" *Id*. at *9. Plaintiffs cursorily argue that *Priselac* is distinguishable because Mrs. Brock "plausibl[y] alleges that she worked around benzene supplied by Defendants and was exposed to and in contact with benzene." [Dkt. #90 at p. 15.] This immaterial distinction does not negate that North Carolina limits battery to circumstances where a specific defendant intentionally interacts with a specific injured individual. *See Jordan*, 2023 WL 12087284, at *4. Here, Plaintiffs have not made factual allegations specific to Fisher Scientific's intentional conduct directed at Mrs. Brock. Mrs. Brock's

---

[3] Cited in Plaintiffs' Response as *Baker v. Monsanto Co*., 962 S.W.2d 354 (S.D. Ind. 1997).

7

status as an employee of an independent contractor of a buyer of Fisher Scientific's alleged products is as remote as the class members were to the defendants in *Priselac*. No claim for battery has been pled, nor could it be given the attenuated alleged connection between Fisher Scientific and Mrs. Brock.

**IV.     Count V Of The FAC Fails Because Mr. Brock's Derivative Loss Of Consortium Claim Is Not Supported By A Valid Tort Action.**

Plaintiffs' Response does not dispute that a loss of consortium claim cannot stand absent a separate predicate tort. Because the FAC fails to state any other viable claim against Fisher Scientific, the loss of consortium claim also must be dismissed. *See Nichols v. United States*, No. 5:09-CV-196-BO, 2010 WL 11622662, at *3 (E.D.N.C. Mar. 11, 2010).

**CONCLUSION**

Plaintiffs having withdrawn the majority of their claims against Fisher Scientific, and the remaining claims failing to state any viable cause of action, Mr. Brock's derivative claim for loss of consortium also fails to state a valid cause of action against Fisher Scientific. Fisher Scientific respectfully requests that this Court grant its Partially Opposed Motion to Dismiss and enter an order dismissing the FAC in its entirety as to it, and for such further relief as the Court deems just and proper.

8

Dated: April 22, 2026

Respectfully submitted,

/s/ Kyli L. Cotten
Jason H. Nash
Kyli L. Cotten
HINKHOUSE WILLIAMS WALSH LLP
180 North Stetson Avenue, Suite 3400
Chicago, IL 60601
T: (312) 784-5400
F: (312) 784-5499
jnash@hww-law.com
kcotten@hww-law.com
*Attorneys for Defendant Fisher Scientific Company L.L.C.*

/s/ William A. Robertson
Edwin L. West, III
NC State Bar No. 22376
William A. Robertson
NC State Bar No. 53589
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
1700 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, NC 27601
Tel. (919) 839-0300
Fax (919) 839-0304
ewest@brookspierce.com
wrobertson@brookspierce.com
*Local Civil Rule 83.1(d) Attorneys for Defendant Fisher Scientific Company L.L.C.*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing and serve the following upon counsel of record.

Dated: April 22, 2026                                   */s/ Kyli L. Cotten*

10