# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
#### No. 7:25-CV-1540-M-BM

LYDIA DIANE BROCK and ROY BROCK,

      Plaintiffs,

v.

BASF CORPORATION, Individually, and as
Successor In Interest to Takeda Vitamin
& Food USA, Inc. f/k/a Takeda Chemical
Products USA, Inc. f/k/a Wiltak, Inc.;
TAKEDA AMERICA HOLDINGS, INC.
f/k/a Takeda America, Inc.; TAKEDA
PHARMACEUTICALS USA, INC. f/k/a
Takeda Pharmaceuticals North America,
Inc. f/k/a Takeda Pharmaceuticals America,
Inc.; TAKEDA CHEMICAL INDUSTRIES,
LTD.; and TAKEDA EUROPE GMBH;
ALDRICH CHEMICAL CO. INC.; FISHER
SCIENTIFIC COMPANY L.L.C.; SHELL USA,
INC. f/k/a SHELL OIL COMPANY; SUNOCO
INC. f/k/a Sun Refining and Marketing
Company and f/k/a Sunoco (R&M); TENNECO
OIL COMPANY; TEXACO INC.; and
UNOCAL CORPORATION; and JOHN
DOES 1-40,

      Defendants.

---

## PLAINTIFFS' RESPONSE TO DEFENDANT SHELL USA, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND UNDER FED. R. CIV. P. 12(b)(6)

Plaintiffs respectfully submit this Response to Shell USA, Inc.'s Motion to Dismiss for

failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 91,

memorandum at Doc. 92). The motion should be denied. The First Amended Complaint ("FAC")

alleges claims for (i) negligence (Count I); (ii) breach of warranty (Count II); (iii) failure to warn

and defective design (Count III); (iv) intentional tort -- battery and fraud (Count IV) and (v) loss

of consortium (Count V). Shell USA, Inc. ("Shell") moves to dismiss all claims. In fact, Plaintiffs have plausibly stated claims for negligence, failure to warn and defective design, battery, and loss of consortium. As to the statute of limitations defense, Plaintiffs adequately plead the discovery rule. Plaintiffs' FAC was filed within the applicable statute of limitations period, when the discovery rule analysis is applied. Accordingly, Defendant's motion should be denied.

## FACTUAL BACKGROUND

Plaintiff Lydia Brock alleges occupational exposure to benzene at a chemical plant located on US Highway 421, on the border of New Hanover and Pender counties, near Wilmington, NC which manufactured Vitamin C (the "Wilmington Plant"), which caused her to contract the cancer, Acute Myeloid Leukemia ("AML"). *See* FAC, Doc. 31, ¶¶ 1, 41-42, 47-51. Ms. Brock was working on the premises of the Wilmington Plant as an employee of Fluor Daniel, which operated as an independent contractor at the Wilmington Plant. *Id.* at ¶ 41. Fluor Daniel's records state that Ms. Brock was employed from March 15, 1993, to November 16, 2001. *Id.* at ¶ 42. Plaintiffs allege that the Wilmington Plant used benzene to manufacture Vitamin C. *Id.* at ¶¶ 31-32.

The FAC alleges that Shell manufactured, refined, distributed, and/or sold benzene and benzene-containing products that were supplied to the Wilmington Plant for use in the manufacture of Vitamin C and other products. *Id*. at ¶ 14. Plaintiffs allege that Shell was a supplier of benzene to the Wilmington Plant during the relevant time period. FAC ¶¶ 14, 34. In the process of making Vitamin C, benzene was released into the air of the Wilmington Plant, which in turn is alleged to have caused Mrs. Brock's benzene exposures. *Id*. at ¶ 49.

The FAC proceeds to allege that despite having full knowledge that there were safer alternative products, Defendant continued to manufacture and sell benzene and products containing benzene. FAC ¶ 75(a). Plaintiffs allege Defendant continued to manufacture and sell

2

benzene and benzene-containing solvents despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene and benzene-containing solvents and which were equally effective. *Id.* at ¶ 83(r).

The FAC alleges that benzene, including the cumulative effects of benzene exposure, is known to cause genetic damage, blood and bone marrow diseases and cancers including AML, MDS, non-Hodgkin's lymphoma, Multiple Myeloma, Chronic Lymphocytic Leukemia, Acute Lymphocytic Leukemia and Aplastic Anemia. FAC at ¶ 83(s). The medical and scientific community recommended that safer solvents be used in place of benzene since as early as the 1920s and the federal government has declared that there is no safe level of exposure to benzene, that products containing benzene are unreasonably dangerous and that no warnings are adequate to protect against the hazards of benzene in consumer products. *Id.* at ¶ 83(t).

Benzene is a known human carcinogen and causes multiple forms of cancer, including the AML that Mrs. Brock was caused to contract. *Id.* at ¶ 46. Defendants knew or should have known that exposure to benzene was carcinogenic, leukemogenic, dangerous, poisonous and otherwise highly harmful to the body and health of Plaintiff Mrs. Brock and persons similarly situated. *Id.* at ¶62. As a direct and proximate result of her exposure to benzene at the Wilmington Plant, and as a direct and proximate result of Defendant's acts and omissions, Mrs. Brock was caused to contract AML. *Id*. at ¶¶ 47-50, 85.

## ARGUMENT

### A. The Legal Standard.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading stating a claim for relief "must contain… a short and plain statement of the claim showing that the pleader is entitled to relief…." The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it

3

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted).

To survive a motion to dismiss, a complaint must "state[] a plausible claim for relief…." *Iqbal, supra*, 556 U.S at 679 (citation omitted). Determining this will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling the plaintiff to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" *Id.* at 1952 (quoting *Twombly*, 550 U.S. at 570).

Satisfying this "context-specific" test does not require "detailed factual allegations." *Id.* at 1949-50 (quotations omitted). The complaint must plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Id.* at 1950. Without such "heft," *id.* at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," *id.* at

1949, fail to nudge claims across the line from conceivable to plausible. Id. at 1951 (quotations omitted). *Accord, Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255-56 (4th Cir. 2009). Facial plausibility is established once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Nemet Chevrolet, Ltd.*, 591 F.3d at 256. Further, "[a]t the motion to dismiss stage, [a plaintiff] need not support his allegations with evidence." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citations omitted).

### B. Defendant's Motion Regarding Statute of Limitations Should Be Denied.

Shell argues the case should be dismissed under the statute of limitations. Doc. 92, pp. 12-16. The argument should be rejected. North Carolina's statute of limitations for personal injury actions is three years. *See* N.C.G.S. § 1-52(16). North Carolina has a discovery rule pertaining to the accrual of an action for latent injuries. In *McCarver v. Blythe*, 555 S.E.2d 680, 682-683 (N.C. App. 2001), the court stated the following:

> …. Section 1-52(16) provides that a cause of action for personal injury or physical property damage "shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C. Gen. Stat. § 1-52(16) (1999). The primary purpose of the <u>discovery rule</u> set forth in N.C. Gen. Stat. § 1-52(16) "is that it is intended to apply to plaintiffs with <u>latent injuries</u>." *Robertson v. City of High Point*, 129 N.C.App. 88, 91, 497 S.E.2d 300, 302, *disc. review denied*, 348 N.C. 500, 510 S.E.2d 654 (1998).

(Emphasis added). *See also Moore v. Coachmen Inds., Inc.*, 499 S.E.2d 772, 777 (N.C. App. 1998) (holding that "[t]he applicable statute of limitations is dependent upon the facts in each products liability case").

### 1. The Discovery Rule Requires Knowledge of the Disease and Its Cause.

Shell relies heavily on the rigid premise that an occupational disease claim strictly accrues on the exact date of diagnosis. However, case law interpreting N.C.G.S. § 1-52(16) clarifies that

5

for latent diseases, the statute of limitations provides plaintiffs three years to file "from when they should have reasonably have discovered the existence <u>and cause</u> of their illnesses." *Jones v. United States*, 751 F. Supp.2d 835, 840 (E.D.N.C. 2010) (emphasis added).

Under the "discovery rule," a cause of action accrues when the plaintiff has "actual or constructive knowledge of his or her claim." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (applying federal law) (citing *Thorn v. Jefferson-Pilot Life Ins.*, 445 F.3d 311, 320 (4th Cir. 2006)). *See also Simon v. Gladstone*, No. 23-1431, 2025 U.S. App. LEXIS 5254, *10 (4th Cir. March 6, 2025) (discussing that once a plaintiff obtains knowledge "that he has been hurt <u>and who inflicted the injury</u> ... the plaintiff is on inquiry notice, imposing on him a duty to inquire about the details of [the offense] that are reasonably discoverable.") (emphasis added) (applying Maryland law) (citing *Nasim v. Warden, Md. House of Corr.,* 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (applying federal law) and *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979).

Because application of the discovery rule is most appropriately determined after a complete factual record is established, it is appropriate to defer the issue until summary judgment or trial pursuant to Rule 12(i). *See Peregrine v. Mid Atl. Roofing Sys.*, No. 1:22-cv-88, 2023 U.S. Dist. LEXIS 43208, *9 (M.D.N.C. March 15, 2023). Given the factually intense nature of the discovery rule inquiry, this Court should deny or defer the Defendants' motion until summary judgment or trial. A Rule 12(b) motion is not the proper vehicle for deciding this issue given that the discovery rule is pled. *See* FAC, Doc. 31 at ¶ 50.

Specifically, Plaintiffs allege that Mrs. Brock was diagnosed with AML on October 2, 2022. Doc. 31 at ¶ 50. Plaintiffs did not learn of the connection between Mrs. Brock's benzene exposure and her diagnosis with AML until a later date. *Id*. at ¶ 50. Thus, the Plaintiffs plead the

discovery rule. Plaintiffs' FAC explicitly pleads that Mrs. Brock "did not learn of a connection between her AML and exposure to benzene until a later date." *Id.* Because a Rule 12(b)(6) motion requires the court to accept the plaintiff's well-pleaded facts as true, the Court must, as a matter of law, accept that the statute of limitations did not begin to run on October 2, 2022, but rather on the later date when she reasonably discovered that her occupational benzene exposure caused her cancer. *See id.*

Indeed, such is what occurred as discovery in this matter will confirm and as has been alleged. To ascertain the identity of the entities that may have caused her illness of AML, the Plaintiffs conducted diligent research, including speaking with witnesses and reviewing publicly available documents and serving discovery requests on co-Defendants BASF and Takeda in the New Jersey lawsuit, but did not know the identity of all of the manufacturers and suppliers of benzene used at the Wilmington Plant. *Id.* at ¶ 19. Indeed, co-Defendant BASF represented to the New Jersey Court at the September 26, 2025 oral argument on its Motion to Dismiss for *forum non-conveniens* that BASF did not know who the suppliers of benzene to the Wilmington Plant were. *Id.* at ¶ 45. The transactions and contracts between BASF, Takeda and the benzene suppliers are information exclusively within BASF and Takeda's possession. *Id.* at ¶ 36. Certainly, Plaintiffs cannot be held to a higher standard for ascertaining the identity of benzene suppliers than the entities that actually bought the benzene from those very same benzene suppliers. Plaintiffs did not learn of Shell's identity until BASF produced documents in discovery in 2025. *Id.* at ¶ 12. Plaintiffs filed their complaint in the Superior Court of New Jersey, Middlesex County on August 17, 2023. *Id.* at ¶ 2. Though the FAC does not plead when BASF produced the discovery, that document production identifying Shell logically occurred after the lawsuit was first filed on August

7

17, 2023 and within three years of the filing of the FAC on January 2, 2026 because discovery did not happen until after August 27, 2023.[1]

An affirmative defense permits 12(b)(6) dismissal if the face of the complaint includes all necessary facts for the defense to prevail. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *accord*, *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850-851 (4th Cir. 2016). The statute of limitations is an affirmative defense. *Goodman, supra,* 494 F.3d at 464. A Rule 12(b)(6) motion "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's complaint is time-barred." *Id.* Only in the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" may a defendant raise, and the court consider, a statute of limitations defense at the motion to dismiss stage. *Id.* The statute of limitations defense is "more properly reserved for consideration on a motion for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forts,* 4 F.3d 244, 250 (4th Cir. 1993).

A plaintiff generally is not required to plead facts in anticipation of an affirmative defense. *See*, *Goodman, supra*, 494 F.3d at 466. Thus, Plaintiffs should not be required to plead more detailed facts establishing when they were placed on notice of the cause of the AML, such that the statute of limitations began to run. This is not an unusual case where the "claim is filed *clearly* beyond the applicable limitations period" given that the Plaintiffs plead the discovery rule. *Id.* Defendant cannot demonstrate that Plaintiffs' "potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Goodman, supra*, at 465-66. The FAC does not

---

[1] It is relevant to note that the similarly-situated co-Defendant benzene supplier/distributor, Fisher, did not in its motion to dismiss even raise a statute of limitations defense as a basis for that motion. *See* Docs. 63 (Fisher's motion), 64 (Fisher's brief).

contain all necessary facts for the moving Defendant to prevail on the statute of limitations defense because the FAC pleads the discovery rule. *See* Doc. 31 at ¶ 50.

Equitable estoppel and fraudulent concealment provide separate grounds for extending the statute of limitations. Fraudulent concealment "prevents a defendant from concealing a fraud, … or committing a fraud in a manner it concealed itself until the defendant could plead the statute of limitations to protect it." *Edmondson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019). "To toll the limitations period based on fraudulent concealment, a plaintiff must demonstrate that (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence" *Id*. at 548.

The doctrine of equitable estoppel may "preclude a defendant's pleading of the statute of limitations" where a plaintiff can establish the following elements as related to the party estopped:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts.

*Wilkerson v. Christian*, No. 1:06CV00871, 2008 U.S. Dist. LEXIS 12744, *19 (M.D.N.C. Feb. 19, 2008) (quoting *Hawkins v. M. & J. Fin. Corp.*, 238 N.C. 174, 177-78, 77 S.E.2d 669, 672 (1953)).

In addition, as related to the party claiming the estoppel, a plaintiff must show:

> (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Wilkerson*, 2008 U.S. Dist. LEXIS 12744, *19 (quoting *Hawkins*, 238 N.C. at 177-78).

9

For equitable estoppel to apply, "a plaintiff must plead supporting facts with particularity and demonstrate that defendant's representations delayed her from filing suit." *Worrell v. A Woman's View, P.A.*, No. 518-CV-00178-MOCDSC, 2019 U.S. Dist. LEXIS 17480, 2019 WL 427336, at \*3 (W.D.N.C. Feb. 4, 2019) (citing *Duke Univ. v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 384 S.E.2d 36, 42 (N.C. Ct. App. 1989)).

Here, Shell knew that the Plaintiff did not know of or appreciate that exposure to benzene was capable of causing cancer. FAC, Doc. 31 at ¶ 116. Shell intended and knew that its failure to disclose the cancer hazard would act as an inducement to Plaintiff to expose herself. *Id*. at ¶¶ 118-122. Shell intended that the Plaintiff would rely upon its concealment of the cancer hazard. *Id*. at ¶ 123. Shell concealed the benzene cancer hazard. *Id*. at ¶ 125. Plaintiff relied upon Shell's concealment of the benzene cancer hazard. *Id*. at ¶ 125(s). Shell should not be permitted to now benefit from the failure to disclose the benzene hazard by charging the Plaintiff with knowledge of the facts that it concealed, i.e., that her AML was caused by its benzene.

In the event that the Court finds that the Plaintiffs have not sufficiently pled detailed facts as to when the Plaintiffs learned of the connection between Mrs. Brock's benzene exposure and the diagnosis of her AML, or to support the application of fraudulent concealment or equitable estoppel, Plaintiffs request leave to file an amended complaint that pleads additional facts in support of the discovery rule. *See Rose v. Unplugged Sport Bar*, 2026 U.S. Dist. LEXIS 65385, \*14-15 (D. Md. March 27, 2026) (judicial economy and the pleadings requirements of Rule 8(a) and Rule 12(b)(6) warranted granting the leave to amend the complaint to set forth facts sufficient to permit application of the discovery rule where the original complaint allegations were not sufficient). "The grant or denial of an opportunity to amend is within the discretion of the District Court" *Pittson Co. v. U.S.*, 199 F.3d 694, 705 (4th Cir. 1999) (internal citations omitted) "The

10

court should freely grant leave [to amend] when justice so requires." Fed.R.Civ.P., Rule 15(a)(2). The Fourth Circuit has repeatedly reiterated its policy to "liberally allow amendment." *Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (internal citations omitted) "And our policy furthers a wider federal policy of–when possible–resolving cases on the merits, instead of on technicalities." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) The Fourth Circuit has also instructed that amendment should not be allowed "only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvarian,* 535 F.3d 295, 298 (4th Cir. 2008) (internal citations omitted).

### 2.   Latent Diseases Are Exempt from North Carolina's Statutes of Repose.

North Carolina's Product Liability Statute of Repose, N.C.G.S. § 1-52(16), is inapplicable to Mrs. Brock's latent disease claim as held by the Fourth Circuit. Further, North Carolina's Supreme Court has not directly addressed the issue and North Carolina's Legislature has not expanded the language of N.C.G.S. § 1-52(16) to encompass latent diseases, such as AML.

The Fourth Circuit explicitly refutes Defendant's position. *See Stahle v. CTE Corp.*, 817 F.3d 96 (4th Cir. 2016). The *Stahle* decision concerned a leukemia diagnosis from exposures to toxic solvents. The North Carolina Supreme Court has not directly ruled in a manner that would support Defendant's position. *Id*. Finally, North Carolina's legislature has not included latent diseases in the language of N.C.G.S. § 1-52(16). *Id*.

In 1986, in *Hyer v. Pittsburgh Corning Corp.*, the Fourth Circuit concluded that "the [North Carolina] Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." 790 F.2d 30, 34 (4th Cir. 1986).

11

The Eastern District of North Carolina has observed:

The Court finds that § 1-52(16)'s statute of repose has an exception for latent diseases. The Court bases this decision on the statute's legislative history, case law, and state public policy. In addition, the Court finds this interpretation is necessary to avoid the finding that the statute violates the North Carolina Constitution's guarantee of open courts.

….

The legislative history of § 1-52(16) shows there is a latent disease exception to its statute of repose.

….

Local courts have consistently held that North Carolina's statute of reposes do not apply to latent diseases. This was first held in *Wilder v. Amatex Corp*, where the North Carolina Supreme Court interpreted § 1-15(b).

….

*Wilder* first pointed out that the statute's text could not possibly encompass latent diseases. This was because the North Carolina Legislature historically viewed the "injury" in latent diseases cases to occur not at the time of the Defendant's conduct, but at the time of diagnosis or manifestation; only at this point did the legally relevant time period began to run.

….

Thus, in accordance with the legislative history, case law, and North Carolina public policy, the Court finds that the North Carolina Legislative did not intend the statute of repose clause in § 1-52(16) to refer to latent diseases. Instead, latent diseases are only governed by the statute of limitations in § 1-52(16), giving plaintiffs three years to file <u>from when they should have reasonably have discovered the existence and cause of their illnesses</u>.

*Jones v. United States*, 751 F.Supp.2d 835, 836-840 (E.D.N.C. 2010) (emphasis added).[2]

Recently, the Fourth Circuit reiterated that North Carolina's statute of repose does not

apply to latent disease claims. *See Stahle*. Critically, in March 2016, the Fourth Circuit stated:

---

[2] A Lexis search of *Jones* reflects as adverse authority *Bryant v. United States*, 768 F.3d 1378 (11th Cir. 2014). The Court in *Stahle, supra,* criticized and declined to follow *Bryant*, which as a case outside of the Fourth Circuit is not herein binding. Accordingly, the Court's observations in *Jones* remain sound. *See Stahle*, 817 F.3d 96, 104.

> The Supreme Court of North Carolina has not yet directly resolved whether Section 1-52(16) applies to disease claims. As a federal court sitting in diversity faced with an unresolved question of state law, we must predict how the question would be decided by that state's highest court. Because we understand that under North Carolina law a disease is not a "latent injury," we conclude that the Supreme Court of North Carolina would not find Section 1-52(16) applicable to Stahle's claim. Accordingly, we reverse and remand the case to the district court for further proceedings.

*Stahle*, 817 F.3d at 98-99. Additionally, Mrs. Brock's disease is not subject to the statute of repose as the Fourth Circuit has found that cases fall within the "disease exception" if (1) the plaintiff's injury is a disease, (2) it is difficult to establish the exact time of injury (when the disease process started) and (3) it is difficult to establish that the disease was caused by the product. *See also Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531, 535 (4th Cir. 1996). Given Mrs. Brock's years of exposure to Shell's benzene and benzene-containing products, the disease exception bars the application of North Carolina's statute of repose. *Id*.

Given the sound reasoning of the *Stahle* opinion, on August 15, 2016, the Middle District of Georgia stated: "In *Stahle*, the Fourth Circuit found that the plaintiff's leukemia, which was allegedly caused by exposure to toxic solvents in his water, fell within the disease exception." *Stahle*, 817 F.3d at 98-99." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig*., No. 4:08-MD-2004, 2016 U.S. Dist. LEXIS 107401, at *8 (M.D. Ga. Aug. 15, 2016).

Similarly, in *Dickerson v. CRC Industries, Inc.*, No. 2:25-CV-4-FL, 2025 U.S. Dist. LEXIS 135761 (E.D.N.C. July 16, 2025), the court held that "where the Fourth Circuit has determined that §§ 1-50(6) and 1-52(16) do not apply to 'claims arising out of disease,' … and where plaintiff's claims arise out of a disease, the statutes do not apply to plaintiff's claims." *Id*. at *8 (citing *Stahle*, 817 F.3d at 100).

Thus, state and federal courts, including the Fourth Circuit in *Stahle* and *Hyer*, as well as the North Carolina Supreme Court in *Wilder v. Amatex Corp.*, 314 N.C. 550, 336 S.E. 2d 66 (1985),

have consistently held that North Carolina's statutes of repose do not apply to claims arising out of latent diseases.

**C.      Plaintiffs Withdraw Their Claim for Negligence *Per Se* as to Shell Only.**

Plaintiffs respectfully withdraw their claim for negligence *per se* as to Shell only. *See* Defendant's Brief at pages 16-19.

**D.      Plaintiffs Have Plausibly Stated a Claim for Negligence.**

Defendant's contentions against Plaintiffs' negligence claim should be rejected insofar as it alleges theories of negligent failure to warn and defective design. (*See* Def. Br. pp. 21-24). Under North Carolina law, a negligence claim must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and actual injury or loss sustained by the plaintiff. *Fussell v. North Carolina Farm Bureau,* 198 N.C. App. 560, 562, 680 S.E.2d 229 (2009). When a plaintiff asserts a product liability claim based on negligence, "the plaintiff must prove duty, breach, causation, and damages." *Sparks v. Oxy-Health, LLC,* 134 F. Supp. 3d 961, 986 (E.D.N.C. 2015) (citing *Bryant v. Adams*, 116 N.C. App. 448, 448 S.E.2d 832 (1994)). Those elements are satisfied as to a design or manufacturing defect if the plaintiff demonstrates "(1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc*., 138 N.C. App. 70, 530 S.E.2d 321, 326 (2000); *see also City of High Point, N. Carolina v. Suez Treatment Sols. Inc.,* 485 F. Supp. 3d 608, 630 (M.D.N.C. 2020). North Carolina courts have consistently recognized a common law rule that "imposes on every person engaged in the prosecution of any undertaking [a duty] to use due care, or to so govern his actions as not to endanger the person or property of others." *McCants v. Nat'l Collegiate Athletic Ass'n,* 201 F.

Supp. 3d 732, 738-39 (M.D.N.C. 2016) (quoting *Pinnix v. Toomey,* 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955)).

Here, Plaintiffs allege that Defendant Shell manufactured, refined, distributed, and/or sold benzene and benzene-containing products that were supplied to the Wilmington Plant. FAC ¶ 12. In doing so, Defendant owed Plaintiff Mrs. Brock and other foreseeable users and persons exposed to those products a duty to exercise reasonable care in the design, manufacture, testing, inspection, marketing and sale of those products, including a duty to warn of known or reasonably knowledgeable dangers associated with benzene exposure. The FAC alleges that Shell "knew, or in the exercise of reasonable care, could and/or should have known that persons such as Plaintiff was required to work around and in close proximity to, inhale, dermally absorb, ingest and was otherwise directly and indirectly be exposed to benzene, benzene-containing solvents and/or vapors therefrom on the Wilmington Plant." *Id.* at ¶ 59. The FAC alleges that Defendant knew or should have known of benzene's dangerous properties. *Id.* at ¶¶ 60-62. Defendant, however, breached its duty by using benzene when alternative chemicals were available, by failing to warn of benzene's dangerous propensities, and by otherwise deviating from its duty of care. *Id.* at ¶ 75.

The FAC alleges that as the direct and proximate result of Shell's acts and omissions, Plaintiff Mrs. Brock contracted and suffers from AML, and multiple side effects, conditions, illness and symptoms caused by AML and the medical treatments necessitated thereby which caused her pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation and increased susceptibility to infection. FAC ¶¶ 76-79. These factual allegations adequately ground a negligence claim.

**E.     Plaintiff Has Stated a Product Liability Claim Based on Failure to Warn Under Section 99B-5 of the N.C. Products Liability Act.**

Section 99B-5(a) provides that a manufacturer or seller is not liable on a failure to warn claim unless the manufacturer or seller acted unreasonably in failing to provide the warning or instruction; the failure to provide an adequate warning or instruction was a proximate cause of the harm; and one of the two additional conditions:  a) at the time the product left the manufacturers or sellers control, the product without an adequate warning created an unreasonably dangerous condition that the manufacturer or seller knew, or should have known, posed a substantial risk of harm to a reasonably foreseeable claimant; or b) after the product left their control, the manufacturer or seller became aware, or should have become aware that the product posed a substantial risk of harm and failed to take reasonable steps to give adequate warning or take other reasonable action. N.C.G.S. § 99B-5(a). *See also Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017) (describing that failure to warn claim requires the plaintiff to prove that the defendant unreasonably failed to provide an adequate warning, proximate cause, and that the product posed a substantial risk of harm without an adequate warning either at the time of or after leaving the manufacturer's control).

Here, the FAC plausibly alleges that Defendant failed to provide adequate warnings regarding the dangers of benzene exposure, failed to provide sufficient instructions for safe use and handling, and placed into the stream of commerce a product whose risks outweighed its utility or could have been reduced through a safer alternative design, formulation, packaging, or warning system. *See* FAC ¶93.  At the pleading stage in a products liability case, a plaintiff need not identify every alternative design with engineering detail. It is enough that, as here, the complaint alleges the product was unreasonably dangerous and defective when it left Defendant's control, and that the defect was a cause of Plaintiffs' injuries.  *See Patterson v. 3M Co*., 2022 U.S. Dist. LEXIS

16

231462, \*13-14 (M.D.N.C. Sept. 8, 2022) (denying motion to dismiss, finding that plaintiff adequately alleged a failure to warn claim).

The factual allegations put Defendant on notice that Plaintiffs are asserting warning-based and design-defect theories under North Carolina products liability law. Shell manufactured, refined, distributed, and/or sold benzene and benzene-containing products that were supplied to the Wilmington Plant for use in the manufacture of Vitamin C and other products. FAC ¶14. BASF confirmed that Shell was a supplier of benzene to the Wilmington Plant during the relevant time period. *Id.* at ¶14. In the process of making Vitamin C, benzene was released into the air of the Wilmington Plant, which in turn caused Mrs. Brock's benzene exposures. The FAC alleges that Defendant knew or should have known that their benzene and benzene-containing solvents were inherently defective, dangerous, deleterious, poisonous, carcinogenic, unfit for use, not properly merchantable and not safe, as marked, for their foreseeable purpose, in that they contained benzene and caused lymphohematopoietic diseases, including AML. Plaintiffs allege that the products were defectively designed and lacked warnings, instructions and training, and that Defendant failed to warn, train and advise, or adequately train and advise, the Plaintiff Mrs. Brock and her employers as to how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene and benzene-containing solvents. Plaintiffs further allege that Defendant's benzene and benzene-containing solvents contained directions for use that increased the risk for exposure to benzene and increased the amount of benzene exposure. FAC ¶ 83(p).

Plaintiffs have also adequately alleged proximate cause and reliance. Plaintiffs have alleged: "Plaintiff relied upon the Defendants for information and warnings regarding the health hazards and cancer risk of the benzene and benzene-containing solvents and Wilmington Plant and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers'

17

expectations of safety." FAC ¶ 125(s). These allegations are sufficient to support the Plaintiffs' failure to warn claim against Shell.

**F.** **Plaintiff Has Properly Pled a Design Defect Claim Under Section 99B-6 of the N.C. Products Liability Act.**

Defendant Shell further contends that the FAC does not adequately plead a claim for defective design under N.C.G.S. § 99B-6, because the FAC fails to plead how the "design" of benzene was inadequate or propose a safer alternative. (Doc. 92, p. 23). However, Count III is certainly adequately pled. FAC ¶ 100 alleges that under N.C.G.S. § 99B-6, Defendant acted unreasonably in designing or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought, and in addition a) "At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product;" or b) "At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design." FAC ¶ 100. Further, Plaintiffs allege that as a direct and proximate result of Defendant's negligent design, and related acts and omissions, Plaintiff Mrs. Brock contracted and suffers from AML. FAC ¶ 101. Plaintiffs further allege that "Defendants breached their duty and were negligent and grossly negligent because … they: … [u]sed benzene when safer alternative chemicals and manufacturing processes were available…." FAC ¶ 75(a).

These allegations track the relevant statute and are sufficient for the defective design claim. The FAC expressly alleges as part of Count I that Defendants, including Shell, "[f]ailed to post signs warning of the presence of benzene, that there was a cancer hazard and that respiratory

protection was required;" "Failed to warn and train workers about the hazards of benzene exposure and how to prevent exposures, and failed to assure that workers were properly trained and warned;" *see* FAC ¶ 75(o), (p), and Plaintiffs also alleged as to reliance, that "Plaintiff … relied upon the Defendants for information and warnings regarding the health hazards and cancer risk of the benzene and benzene-containing solvents and Wilmington Plant and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety." FAC ¶ 125(s). These allegations are sufficient to support the Plaintiffs' negligent failure to warn and negligent design claim against Shell and Defendant's contention that Plaintiffs' FAC fails to plausibly allege that the defective design (or the failure to warn) proximately caused Mrs. Brock's injury should be rejected.

### G. Plaintiffs Have Properly Pleaded Facts to Support a Battery Claim.

Shell seeks to dismiss the battery claim. Doc. 92, p. 25. Under North Carolina law, a cause of action for common law battery requires allegations that "(1) the defendant intentionally cause[d] bodily contact with the plaintiff; (2) the bodily contact caused physical pain or injury; and (3) the bodily contact occurred without the plaintiff's consent." *Simmons v. Wiles*, 271 N.C. App. 665, 668, 845 S.E.2d 112, 116 (2020) (citing *Andrews v. Peters,* 75 N.C. App. 252, 256, 330 S.E.2d 638, 640-41 (1985)). Here, the FAC alleges that "Defendants committed the intentional tort of battery by causing the Plaintiff's exposure to benzene knowing that those exposures would cause harm to the Plaintiff." FAC ¶ 107. "Defendants' acts and omissions demonstrated a conscious indifference to their consequences, namely causing the Plaintiff to contract AML and other injuries identified herein." *Id.* at ¶ 127. "Defendants intended to cause harmful conduct to the Plaintiff through causing benzene exposure, and did so with the knowledge, belief and intent that such exposure could cause the Plaintiff to contract leukemia." *Id.* at ¶ 128. "Defendants' intentional

19

conduct in causing the Plaintiff to be exposed to benzene, did in fact cause physical harm to the Plaintiff…." *Id.* at ¶ 129. These allegations are adequate to satisfy the requirement of a short plain statement of relief on a common law civil claim for battery.

Additionally, courts have found there is no *per se* bar against a battery claim in the factual context of toxic or chemical exposures. *See In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 379 Supp. 2d 348, 434-35 (S.D.N.Y. 2005) (court explained that intentional contamination of property or persons with toxic chemicals can support a battery claim, where the defendant knew the contact would occur); *Baker v. Monsanto Co.*, 962 S.W.2d 354 (S.D. Ind. 1997) (court allowed a battery claim based on intentional exposure to hazardous chemicals, finding that intentional contact with toxic substances can satisfy the elements of battery).

Here, Plaintiff Mrs. Brock worked at the Wilmington Plant. The Plaintiff plausibly alleges that she worked around benzene supplied by Defendants and was exposed to and in contact with the benzene. The motion should be dismissed as to the battery claim.

### H. Plaintiffs Withdraw Their Claim for Common-Law Fraud as Against Shell only

Plaintiffs respectfully withdraw their common law fraud claim as to Defendant Shell. *See* Defendant's Brief, Doc. 92 at pages 28 to 30.

### I. Plaintiffs hereby withdraw their claim for breach of warranty as against Shell only.

Plaintiffs respectfully withdraw their breach of warranty claim (Doc. 31, Count II) as to Defendant Shell. *See* Defendant's Brief, Doc. 92 at pages 19-21.

### J. Plaintiffs State a Claim for Loss of Consortium.

Plaintiff Roy Brock asserts a claim for loss of consortium arising from the alleged injuries suffered by his spouse, Mrs. Brock. FAC ¶¶ 135-38. A loss of consortium claim is derivative and

20

depends upon there being a viable underlying tort claim by the injured spouse. Here, because Mrs. Brock states valid claims for relief against Defendant, her spouse's derivative claim for loss of consortium is also properly pled. In *Nicholson v. Hugh Chatham Mem. Hosp., Inc.*, 300 N.C. 295, 266 S.E.2d 818 (1980), the North Carolina Supreme Court recognized a spouse's right to recover for loss of consortium when the other spouse is injured by a tortfeasor. Because Mrs. Brock states viable underlying claims, Mr. Brock's derivative loss of consortium claim is also properly pled. *See also Nixon v. Majors,* 2007 U.S. Dist. LEXIS 95698, \*17 (W.D.N.C. Dec. 28, 2007) ("The undersigned will recommend that Ms. Nixon's claims not be dismissed, and, accordingly, must respectfully recommend that the Defendants' Motions to Dismiss Mr. Nixon's loss of consortium claim also be denied.").

## CONCLUSION

Plaintiffs have adequately alleged causes of action against Shell for negligence per se, negligence, failure to warn and defective design, battery and loss of consortium, and Defendant's motion to dismiss should therefore be denied as to those claims.

21

Respectfully submitted this 28th day of April, 2026.

/s/ Andrew DuPont
Andrew J. DuPont, Esq. (Pro Hac Vice)
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 893-0100
adupont@lockslaw.com
*Attorneys for Plaintiffs*

/s/ John Hughes
William M. Graham, Esq.
NCSB 17972
Mark Doby, Esq.
NCSB 39637
John Hughes, Esq.
NCSB 22126
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
bgraham@wallacegraham.com
mdoby@wallacegraham.com
jhughes@wallacegraham.com
*Local Civil Rule 83.1(d) Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court using the Court's CM/ECF system, which caused the foregoing to be served on all counsel of record.

April 28, 2026.

/s/ Andrew DuPont
Andrew J. DuPont, Esq. (Pro Hac Vice)
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone:  (215) 893-0100
adupont@lockslaw.com
*Attorneys for Plaintiffs*

/s/ John Hughes
William M. Graham, Esq.
NCSB 17972
Mark Doby, Esq.
NCSB 39637
John Hughes, Esq.
NCSB 22126
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
bgraham@wallacegraham.com
mdoby@wallacegraham.com
jhughes@wallacegraham.com
*Local Civil Rule 83.1(d) Attorney for Plaintiffs*