IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| LYDIA DIANE BROCK AND ROY BROCK, | ) ) ) | CASE NO: 7:25-cv-01540-M-BM |
| PLAINTIFFS, | ) ) | |
| v. | ) ) | **REPLY IN SUPPORT OF DEFENDANT SHELL USA, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| BASF CORPORATION, INDIVIDUALLY, AND AS SUCCESSOR IN INTEREST TO TAKEDA VITAMIN &FOOD USA, INC. F/K/A TAKEDA CHEMICAL PRODUCTS USA, INC. F/K/A WILTAK, INC.; TAKEDA AMERICA HOLDINGS, INC. F/K/A TAKEDA AMERICA, INC.; TAKEDA PHARMACEUTICALS USA, INC. F/K/A TAKEDA PHARMACEUTICALS NORTH AMERICA, INC. F/K/A TAKEDA PHARMACEUTICALS AMERICA, INC.; TAKEDA CHEMICAL INDUSTRIES, LTD.; AND TAKEDA EUROPE GMBH; ALDRICH CHEMICAL CO. INC.; FISHER SCIENTIFIC COMPANY L.L.C.; SHELL USA, INC. F/K/A SHELL OIL COMPANY; SUNOCO, INC. F/K/A SUN REFINING AND MARKETING COMPANY AND F/K/A SUNOCO (R&M); TENNECO OIL COMPANY; TEXACO INC.; AND UNOCAL CORPORATION; AND JOHN DOES 1-40, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) ) | |

Defendant Shell USA, Inc., f/k/a Shell Oil Company ("Shell"), respectfully submits this reply memorandum in support of its motion to dismiss Plaintiffs' First Amended Complaint (ECF No. 31) (the "Complaint"), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs have withdrawn their claims against Shell based on negligence per se (Count I), breach of implied warranty (Count II), breach of express warranty (Count II), and fraud (Count IV). (ECF No. 106 at pp. 14, 20). Nevertheless, Plaintiffs argue that the Court should permit certain claims against Shell to remain: (i) a claim for negligence under a product liability theory; (ii) a products liability claim for failure to warn and design defect under North Carolina's Product Liability Act (the "PLA"); (iii) an intentional tort claim for battery; and (iv) Mr. Brock's derivative loss of consortium claim. But not one of these claims is adequately pleaded. None of Plaintiffs' remaining causes of action state a valid claim against Shell, and thus should be dismissed.

## ARGUMENT

### I. Plaintiffs' Claims are Barred by the Statute of Limitations.[1]

Plaintiffs argue that the statute of limitations only starts to run once the Plaintiff learns of the cause of her injury as well as the identity of any potential defendant (ECF No. 106 at pp. 5-11). That is not the law, and caselaw does not support that contention. *See Koehler v. Rite-Aid Pharmacy*, No. 3:12-CV-00046, 2012 WL 896144, at \*2 (W.D.N.C. Mar. 15, 2012) (Statute of limitations began when plaintiff suffered his injury, not when he later learned of a recall on the medication that allegedly caused his injury); *Williams v. Olympus Am. Inc.*, No. 1:17CV98, 2017 WL 2399332, at \*3 (M.D.N.C. June 1, 2017) ("Plaintiff's learning of additional facts about his

---

[1] Plaintiffs also argue that latent injuries are exempt from the statute of repose (ECF No. 106 at pp. 11-14). However, Shell is not asserting a defense based on the statute of repose.

injury, including the potential tortfeasor, is immaterial as to when he did, in fact, discover the physical injury.").

Courts have routinely held in occupational disease cases that a cause of action accrues when the disease is diagnosed. *Dunn v. Pac. Emps. Ins. Co.*, 332 N.C. 129, 132, 418 S.E.2d 645, 647 (1992). The Fourth Circuit stated, "we understand that North Carolina law is settled that disease is not a latent injury; instead, the legal injury and awareness of that injury occur simultaneously at diagnosis." *Stahle v. CTS Corp.*, 817 F.3d 96, 110 (4th Cir. 2016). In cases interpreting N.C. Gen. Stat § 1-52(16), courts have confirmed that a plaintiff's claims begin to accrue at the time of diagnosis. *Wilder v. Amatex Corp.*, 314 N.C. 550, 562, 336 S.E.2d 66, 73 (1985); *Guy v. E.I. DuPont de Nemours & Co.*, 792 F.2d 457, 460 (4th Cir. 1986) ("[A]n action based on the disease-related claims present here are not barred by the statute of limitations . . . so long as the action is filed within three years after plaintiff's illness is first diagnosed."); *Dickerson v. CRC Indus., Inc.*, No. 2:25-CV-4-FL, 2025 WL 1981434, at *2 (E.D.N.C. July 16, 2025) (finding that the plaintiff's personal injury claims including for myelodysplastic syndrome allegedly caused by benzene exposure including inadequate warning, inadequate design, and wrongful death accrued on the date decedent was diagnosed). In short, a "manifested, diagnosed disease is not latent." *Wilder* at 561.

In occupational disease cases, the statute of limitations begins to run when the disease is diagnosed, not when a plaintiff later attributes the disease to a particular defendant. Once Mrs. Brock was diagnosed on October 22, 2022, her cause of action accrued and the limitations period began to run. (ECF No. 31 at 50). Plaintiffs' Amended Complaint adding Shell was filed on January 2, 2026, which is more than three years after the limitations period began to run. (ECF No. 31).

3

Therefore, the claims Plaintiffs have not withdrawn (Count I, Count III, Count IV[2], and Count V) are time-barred.

Furthermore, Plaintiffs argue that equitable estoppel and fraudulent concealment could be pled to support delaying the running of the statute of limitations. In support, they cite allegations primarily related to their fraud claim found in Count IV (Battery & Fraud). (ECF No. 106 at pp. 9-11). However, their response also stated they were withdrawing the fraud claim. (ECF No. 106 at p. 20). Despite withdrawing a fraud claim, Plaintiffs simultaneously suggest a fraudulent concealment could have tolled the statute of limitations. Plaintiffs have not pled fraudulent concealment with particularity as is required under Fed. R. Civ. P. 9(b), nor have Plaintiffs pled with any particularity how Shell concealed anything from Plaintiff and under what basis it had a duty to disclose to her. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997) (plaintiff must allege defendant had a duty to disclose material information to him as silence is fraudulent only when there is a duty to speak). Plaintiffs therefore have not adequately pled the elements necessary to invoke fraudulent concealment as a basis for tolling the statute of limitations or delaying accrual of their claims against Shell.

Additionally, equitable estoppel only "arises when a party has been induced by another's acts to believe that certain facts exist, and that party rightfully relies on acts upon that believe to his detriment." *Ellis v. Sanofi-Aventis U.S. LLC*, No. 3:23-CV-714-MOC-SCR, 2024 WL 3682224, at *5 (W.D.N.C. Aug. 6, 2024). This claim requires not only a false representation, but also intent on the part of the defendant that the plaintiff act on that false representation. *Id*. "[T]he fraud

---

[2] Whether the discovery rule applies for Count IV (battery) is immaterial. If there is no discovery rule, then more than three years have lapsed since her last work at the facility (November 16, 2001) and the last potential contact (ECF No. 31, para 36, 42). If there is a discovery rule for battery, then the analysis above applies, and the claim would have accrued when the injury was discovered at her diagnosis. *Byrd v. Hopson*, 265 F. Supp. 2d 594, 599 (W.D.N.C. 2003), *aff'd*, 108 F. App'x 749 (4th Cir. 2004) ("The statute of limitations on a battery in North Carolina begins to run as of the date of the battery."); *Soderlund v. Kuch*, 143 N.C. App. 361, 370, 546 S.E.2d 632, 638 (2001) (holding a sexual assault victim's injuries were not latent and were barred by the three-year statute of limitations).

4

consists in the inconsistent position subsequently taken, rather than in the original conduct. It is the subsequent inconsistent position, and not the original conduct that operates to the injury of the other party." *Friedland v. Gales*, 131 N.C. App. 802, 808, 509 S.E.2d 793, 797 (1998). The burden is on Plaintiffs to properly plead equitable estoppel, and it cannot be used "to bypass a statutory limitation defense without satisfying its doctrinal elements." *Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 88, 712 S.E.2d 221, 230 (2011).

Plaintiffs have not alleged any subsequent conduct of Shell that Plaintiffs relied upon as required for equitable estoppel. Thus, Plaintiffs have failed to sufficiently plead either equitable estoppel or fraudulent concealment, and therefore have not alleged any basis to toll or delay accrual of the statute of limitations. Because more than three years have lapsed since the diagnosis of Plaintiff's injury, and because Plaintiffs have not adequately pled any doctrine that would invoke the discovery rule, Shell should be dismissed.

## II. Plaintiffs' Remaining Allegations in Count I Fail to State a Claim for Negligence Against Shell.

Count I of the Complaint purports to assert a negligence claim against all Defendants. (ECF No. 31 at ¶¶ 57-80). In the Amended Complaint, Plaintiffs add several "Supplier Defendants" (including Shell), but the negligence allegations are substantively unchanged from the original Complaint in which Plaintiffs asserted premises claims against the premises Defendants. These allegations do not plausibly state a product liability claim and cannot be repackaged to impose liability on Shell.

Plaintiffs have withdrawn their negligence per se claim against Shell. (ECF No. 106 at p. 14). Nonetheless, Plaintiffs contend that a claim for negligence should stand insofar as they allege theories of negligence failure to warn and defective design. (ECF No. 106 at p. 14). But Plaintiffs cannot assert an independent negligence claim based on products liability. "[C]auses of action for

5

failure to warn and defective design claims under [the PLA] subsume independent negligence claims based on similar theories of liability." *Asby v. Medtronic, Inc.*, 673 F. Supp. 3d 787, 795 (E.D.N.C. 2023); see also N.C. Gen. Stat. § 99B-1.1 ("[t]here shall be no strict liability in tort in product liability actions."). Accordingly, Plaintiffs' stand-alone negligence claim must be dismissed.

Even if it were determined that Plaintiffs' negligence claims were not subsumed by the PLA, that claim still fails. As noted by Plaintiffs, a plaintiff must prove (1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff's damage. *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 530 S.E.2d 321, 326 (2000) (ECF No. 106 at p. 14). Plaintiffs have relied on nothing more than conclusory and boilerplate allegations to support their negligence claim, rather than well-pleaded facts connecting Shell to Mrs. Brock's alleged exposure. Specifically, Plaintiffs rely on generalized assertions that Defendants (generally, not specific to Shell) "knew or should have known" of benzene's dangers and failed to warn (ECF No. 31 at ¶¶ 61-62, 64-65; 75(o), (p), (u)-(z)). Such allegations, without facts tying Shell to Mrs. Brock's alleged injury, are insufficient to state a negligence claim.

## III. Plaintiffs' Failed to State a Claim Based on Failure to Warn and Design Defect Under North Carolina's Product Liability Act.

Plaintiffs' product liability claim fails to meet the requirements of Fed. R. Civ. P. 8 because its allegations merely track the text of N.C. Gen. Stat. § 99B-5 (inadequate warning or instruction) and N.C. Gen. Stat. § 99B-6 (inadequate design or formulation). Plaintiffs argue in essence that this satisfies the federal pleading requirements and that they are not obligated to set forth facts of certain essential elements of failure to warn or inadequate design at this stage (ECF No. 106 at pp. 16-19). But the Complaint lacks any facts specific to Shell, and its boilerplate legal statements do

6

not nudge the claim against Shell into the realm of plausible because they merely recite the statutory elements of a North Carolina products liability claim in conclusory fashion without identifying any Shell-specific product, warning, design defect, conduct, timeframe, or factual basis from which the Court could reasonably infer that Shell itself engaged in actionable wrongdoing.

Plaintiffs concede that proximate cause under a failure to warn theory requires reliance by the plaintiff on the warning, as Plaintiffs argue that such reliance is adequately pled. (ECF No. 106 at p. 17). To the contrary, dismissal under Fed. R. Civ. P. 12(b)(6) is proper where the complaint fails "to plausibly allege how any such warnings were inadequate" or that the individual receiving the warnings "actually read or relied on the warnings that defendants gave." *Asby v. Medtronic, Inc.*, 673 F. Supp. 3d at 797. No such allegation is contained in or incorporated into Count III. This allegation is pled in support of Plaintiffs' battery and fraud claims, the latter of which now is withdrawn. There are no allegations of what Shell's warnings stated, how they were inadequate, or that Mrs. Brock actually relied on the warnings.

Inadequate design is also insufficiently alleged because Count III does not state any facts concerning how Shell's product was inadequately designed or what feasible alternatives existed. The Response argues that "[a]t the pleading stage in a products liability case, a plaintiff need not identify every alternative design with engineering detail." (ECF No. 106 at p. 16). While a complaint may not require engineering precision, Plaintiffs' argument is contrary to the law in this jurisdiction. This Court has held that "[a]lleging negligent design requires alleging what was wrong with the design." *Asby*, 673 F. Supp. 3d at 793 ("Not only does the complaint fail to identify how the design is inadequate, but the complaint also fails to cite alternative feasible designs which were safer."); *see also Aqua N. Carolina, Inc. v. Corteva, Inc.*, No 7:23-CV-16-D, 2024 WL 3367514, at *4 (E.D.N.C. July 9, 2024) (dismissing plaintiff's inadequate design claims because the

7

complaint did not plausibly allege any facts concerning the design or formulation of the purportedly toxic chemical). Without factual allegations about how Shell's design or formulation of its alleged products was inadequate, or what alternatives were feasible, Count III fails to plead products liability based on inadequate design.

### IV. Plaintiffs' Battery Claim Fails Because they do not Sufficiently Allege Intent.

Mrs. Brock's alleged occupational exposure to chemicals does not constitute a claim for battery under North Carolina law. Plaintiffs concede that a cause of action for battery under North Carolina law requires allegations that a "defendant ***intentionally*** cause[d] bodily contact with the plaintiff. (emphasis added) (ECF No. 106 at p. 19). Absent actual intent, a plaintiff may assert a claim for battery based on the defendant's constructive intent, which "exists where conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified." *Priselac v. Chemours Co.*, No. 7:20-CV-190-D, 2022 WL 909406, at *8 (E.D.N.C. Mar. 28, 2022). The relevant consideration to establish constructive intent is "whether the defendant directed the conduct specifically at the plaintiff." *Id*. A plaintiff accordingly fails to plausibly state a battery claim when the complaint contains "no facts indicating defendants directed their conduct toward her." *Id*. at *9. Additionally, a complaint asserting battery "containing only collective allegations against all Defendants, without identifying how each individual Defendant personally interacted with the plaintiff or was responsible for the alleged harm, fails to state a claim entitling a plaintiff to relief." *Jordan v. City of Charlotte*, No. 3:23-CV-000152-RJC-SCR, 2023 WL 12087284, at *4 (W.D.N.C. Dec. 28, 2023) (internal citation omitted) (quotation omitted).

North Carolina accordingly recognizes the intentional tort of battery where a specific defendant directed conduct at a specific plaintiff. The nature of this case does not reflect those

circumstances. Plaintiffs argue that there is no *per se* bar against a battery claim in the factual context of toxic chemical exposures. (ECF No. 106 at p. 20). Neither of the two cases decided in other jurisdictions which Plaintiffs rely upon support that a claim for battery has been pled here. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005) was a multi-district litigation action where the court considered motions to dismiss filed by various gasoline producers alleged to have caused contamination to groundwater across multiple states. No claims for battery were discussed or at issue in this opinion. *Baker v. Monsanto Co.*, 962 F. Supp. 1143 (S.D. Ind. 1997)[3] was a chemical exposure case in which summary judgment was granted in favor of the manufacturer because the plaintiff failed to show that the defendant manufacturer acted with intent to expose the specific plaintiff. The *Baker* court was not tasked with evaluating the pleading requirements for battery.

Here, Plaintiffs have not made factual allegations specific to Shell's intentional conduct directed at Mrs. Brock. Simply including the word "intentionally" before a general allegation does not satisfy the requirement. Plaintiffs have failed to plead a claim for battery, and the operative allegations cannot be given the attenuated alleged connection between Shell and Mrs. Brock.

**V.      Plaintiffs' Loss of Consortium Claim Must be Dismissed Because it is not Supported by a Valid Tort Action.**

Plaintiffs' Response does not dispute that a loss of consortium claim cannot stand absent a separate predicate tort. Because the Complaint fails to state any other viable claim against Shell, the loss of consortium claim also must be dismissed. See *Sargent v. Edwards*, 257 N.C. App. 540, 808 S.E.2d 927 (2018); *Nichols v. United States*, No. 5:09-CV-196-BO, 2010 WL 11622662, at *3 (E.D.N.C. Mar. 11, 2010).

---

[3] Cited in Plaintiffs' Response as *Baker v. Monsanto Co.*, 962 S.W.2d 354 (S.D. Ind. 1997).

**CONCLUSION**

Plaintiffs have withdrawn several of their claims against Shell, and the remaining claims fail to state any viable cause of action against Shell. Accordingly, Shell respectfully requests that this Court grant its Motion to Dismiss and enter an order dismissing the First Amended Complaint in its entirety as to it, and for such further relief as the Court deems just and proper.

**Local Rule 7.2(f)(3) Certification**

I hereby certify that this memorandum complies with the applicable word limit. According to the word count generated by the word processing software, this memorandum contains 2,767 words.

*/S/ Kaitlin R. Myers*

Eric T. Hawkins
NC Bar No. 48578
Kaitlin R. Myers
NC Bar No. 53591
Gordon Rees Scully Mansukhani
150 Fayetteville Street, Suite 1120
Raleigh, NC 27601
Phone: 919-787-4555
Fax: 919-741-5840
Email: ehawkins@grsm.com
Email: krmyers@grsm.com
Local Civil Rule 83.1(d) Attorney for Shell USA, Inc. f/k/a Shell Oil Company

Monique M. Weiner
Connor J. Reinoso
KUCHLER POLK WEINER, LLC
1615 Poydras Street, Suite 1300
New Orleans, Louisiana 70112
Phone: (504) 592-0691
E-Mail: mweiner@kuchlerpolk.com
LA Bar. No. 23233
Attorney for Shell USA, Inc. f/k/a Shell Oil Company
*Special Appearances Pending*

10