# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
### No. 7:25-CV-1540-M-BM

LYDIA DIANE BROCK and ROY BROCK,

     **Plaintiffs,**

v.

BASF CORPORATION, Individually, and as
Successor In Interest to Takeda Vitamin
& Food USA, Inc. f/k/a Takeda Chemical
Products USA, Inc. f/k/a Wiltak, Inc.;
TAKEDA AMERICA HOLDINGS, INC.
f/k/a Takeda America, Inc.; TAKEDA
PHARMACEUTICALS USA, INC. f/k/a
Takeda Pharmaceuticals North America,
Inc. f/k/a Takeda Pharmaceuticals America,
Inc.; TAKEDA CHEMICAL INDUSTRIES,
LTD.; and TAKEDA EUROPE GMBH;
ALDRICH CHEMICAL CO. INC.; FISHER
SCIENTIFIC COMPANY L.L.C.; SHELL USA,
INC. f/k/a SHELL OIL COMPANY; SUNOCO
INC. f/k/a Sun Refining and Marketing
Company and f/k/a Sunoco (R&M); TENNECO
OIL COMPANY; TEXACO INC.; and
UNOCAL CORPORATION; and JOHN
DOES 1-40,

     **Defendants.**

---

### PLAINTIFFS' RESPONSE TO DEFENDANT UNOCAL CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND UNDER FED. R. CIV. P. 12(b)(6)

Plaintiffs respectfully submit this Response to Unocal Corporation's Motion to Dismiss for

failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 104,

Memorandum at Doc. 105). The motion should be denied. The First Amended Complaint ("FAC")

alleges claims for (i) negligence (Count I); (ii) breach of warranty (Count II); (iii) failure to warn

and defective design (Count III); (iv) intentional tort -- battery and fraud (Count IV) and (v) loss

of consortium (Count V). Unocal Corporation ("Unocal") moves to dismiss all claims. In fact, Plaintiffs have plausibly stated claims for negligence, failure to warn and defective design, battery, and loss of consortium. Accordingly, Defendant's motion should be denied.

## FACTUAL BACKGROUND

Plaintiff Lydia Brock alleges occupational exposure to benzene at a chemical plant located on US Highway 421, on the border of New Hanover and Pender counties, near Wilmington, NC which manufactured Vitamin C (the "Wilmington Plant"), which caused her to contract the cancer, Acute Myeloid Leukemia ("AML"). *See* FAC, Doc. 31, ¶¶ 1, 41-42, 47-51. Ms. Brock was working on the premises of the Wilmington Plant as an employee of Fluor Daniel, which operated as an independent contractor at the Wilmington Plant. *Id.* at ¶ 41. Fluor Daniel's records state that Ms. Brock was employed from March 15, 1993, to November 16, 2001. *Id.* at ¶ 42. Plaintiffs allege that the Wilmington Plant used benzene to manufacture Vitamin C. *Id.* at ¶¶ 31-32.

The FAC alleges that Unocal manufactured, refined, distributed, and/or sold benzene and benzene-containing products that were supplied to the Wilmington Plant for use in the manufacture of Vitamin C and other products. *Id*. at ¶ 18. Plaintiffs allege that Unocal was a supplier of benzene to the Wilmington Plant during the relevant time period. FAC ¶¶ 18, 34. In the process of making Vitamin C, benzene was released into the air of the Wilmington Plant, which in turn is alleged to have caused Mrs. Brock's benzene exposures. *Id*. at ¶ 49.

The FAC proceeds to allege that despite having full knowledge that there were safer alternative products, Defendant continued to manufacture and sell benzene and products containing benzene. FAC ¶ 75(a). Plaintiffs allege Defendant continued to manufacture and sell benzene and benzene-containing solvents despite actually manufacturing and selling products that

2

did not contain benzene which were used for the same purposes as their benzene and benzene-containing solvents and which were equally effective. *Id.* at ¶ 83(r).

The FAC alleges that benzene, including the cumulative effects of benzene exposure, is known to cause genetic damage, blood and bone marrow diseases and cancers including AML, MDS, non-Hodgkin's lymphoma, Multiple Myeloma, Chronic Lymphocytic Leukemia, Acute Lymphocytic Leukemia and Aplastic Anemia. FAC at ¶ 83(s). The medical and scientific community recommended that safer solvents be used in place of benzene since as early as the 1920s and the federal government has declared that there is no safe level of exposure to benzene, that products containing benzene are unreasonably dangerous and that no warnings are adequate to protect against the hazards of benzene in consumer products. *Id.* at ¶ 83(t).

Benzene is a known human carcinogen and causes multiple forms of cancer, including the AML that Mrs. Brock was caused to contract. *Id.* at ¶ 46. Defendants knew or should have known that exposure to benzene was carcinogenic, leukemogenic, dangerous, poisonous and otherwise highly harmful to the body and health of Plaintiff Mrs. Brock and persons similarly situated. *Id.* at ¶62. As a direct and proximate result of her exposure to benzene at the Wilmington Plant, and as a direct and proximate result of Defendant's acts and omissions, Mrs. Brock was caused to contract AML. *Id*. at ¶¶ 47-50, 85.

**ARGUMENT**

**A. The Legal Standard.**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading stating a claim for relief "must contain… a short and plain statement of the claim showing that the pleader is entitled to relief…." The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcraft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted).

To survive a motion to dismiss, a complaint must "state[] a plausible claim for relief…." *Iqbal, supra*, 556 U.S at 679 (citation omitted). Determining this will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling the plaintiff to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" *Id.* at 1952 (quoting *Twombly*, 550 U.S. at 570).

Satisfying this "context-specific" test does not require "detailed factual allegations." *Id.* at 1949-50 (quotations omitted). The complaint must plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Id.* at 1950. Without such "heft," *id.* at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," *id.* at 1949, fail to nudge claims across the line from conceivable to plausible. *Id*. at 1951 (quotations

4

omitted). *Accord, Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255-56 (4th Cir. 2009). Facial plausibility is established once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Nemet Chevrolet, Ltd.*, 591 F.3d at 256. Further, "[a]t the motion to dismiss stage, [a plaintiff] need not support his allegations with evidence." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citations omitted).

### B. PLAINTIFFS ADEQUATELY STATE A CLAIM AGAINST UNOCAL

Plaintiffs allege that each of the supplier Defendants that manufactured benzene and supplied benzene to the Wilmington Plant engaged in the same conduct that underlies the Plaintiffs' causes of action against these Defendants. Unocal places form over substance and, without supporting authority, argues that the Plaintiffs are not permitted to assert the same allegations against multiple supplier Defendants. *See, e.g.* Unocal's Memorandum of Law at p. 5, Doc. 105 ("Here, each of Plaintiff's counts improperly relies on group pleadings. For instance, all of the negligence allegations discuss 'Defendants' as one group.")

No rule of civil procedure or controlling case law prohibits a plaintiff from asserting the same allegations in support of a cause of action against multiple defendants in the same count, particularly where the same facts underlying the causes of action apply to each defendant, i.e., where each defendant acted in the same manner in causing the plaintiff's injuries. Defendant cites to three cases for its "group pleading" argument. Each case is distinguished. None of the cases stands for the proposition that when the same facts support a cause of action as to each defendant, those facts cannot be asserted against all defendants in a single count.

The first case cited by Defendant is *Barrett v. Bd. of Educ. of Johnson Cnty., N.C.*, 590 F. App'x 208 (4th Cir. Nov. 6, 2014). In *Barrett* the plaintiff asserted a civil rights lawsuit under §

1983, and sued multiple members of the board of education along with the board of education itself. Since the board could not be liable under a theory of *respondeat superior* liability, the plaintiff was required to allege facts to demonstrate that the board had a policy, custom, or practice that led to the alleged violations of the minor plaintiff's rights. *Barrett, supra*, 590 App'x at 210. The court found, however, that the plaintiff merely asserted "a belief or an opinion without any supporting factual allegations" that the board violated the minor plaintiff's civil rights. *Id.* As to the individual defendants, the plaintiff failed to allege which of those defendants excluded the minor plaintiff from the board's programs or abused her, and which defendant was responsible for which violation of her rights. *Id.* at 210-11. The court held this rendered the claims at issue less plausible because there was reason to believe that some of the individual defendants had no reason to have known or interacted with the minor plaintiff at the time of the alleged violations. *Id.*

Thus, the *Barrett* court's ruling was confined to the facts unique to that case and cannot be read as a general rule that in every case the same facts cannot form the basis for a cause of action against multiple defendants. The *Barrett* case is also distinguished because it involved allegations of specific person-to-person conduct over a period of time, some of which was alleged to be exclusion from programs and other conduct was alleged to constitute abuse. How one individual defendant excluded or abused the minor plaintiff on one day could vary greatly from how another defendant excluded or abused the plaintiff on a different day. Some defendants had no reason to have even known or interacted with the plaintiff.

In this case, the products at issue are benzene and benzene-containing solvents, each of which were sold by multiple defendants over a prolonged period of time. The single products are alleged to have the same defects and require the same warnings and same actions on behalf of the Defendants to make it safe for the Plaintiff to work around. All of the supplier Defendants are

6

alleged to have sold their benzene and benzene-containing solvents to the Wilmington Plant. Plaintiffs give separate and distinct attention to Takeda by alleging that it is named solely as the premises owner and only to the extent that the court finds that BASF did not acquire Takeda's liabilities. BASF is sued both as a seller of benzene and as a premises owner. Yet, again, Plaintiffs provide separate and distinct allegations that delineate BASF's role as the premises owner and how it acted negligently in that regard. As to moving Defendant and the other benzene suppliers, Plaintiffs are clear in that they are sued in the capacity of benzene/benzene-containing solvent manufacturers and distributors and not as premises owners. Thus, where there is a meaningful distinction between the Defendants, Plaintiffs properly allege what that distinction is, all of which makes their claims more than plausible.

The second case Defendants cites is *Boykin Anchor Co. v. AT&T Corp.*, 2011 U.S. Dist. LEXIS 40783, 2011 WL 1456388 (E.D.N.C. April 14, 2011). In this case the plaintiff brought a claim for false or deceptive statements made by an AT&T Services, Inc. ("AT&T Services") employee, Larry Wong, against Mr. Wong, AT&T Services, AT&T Corp., AT&T Inc., AT&T Teleholdings and an unrelated entity Ameritech Services, Inc. *Boykin Anchor Co., supra,* 2011 U.S.Dist. LEXIS at *1. The court reached only AT&T Corp's Rule 12(b)(6) motion because it dismissed AT&T Inc., AT&T Teleholdings and Ameritech Service for lack of personal jurisdiction. *Id*. at *8. Though the plaintiff alleged that Mr. Wong made the false or deceptive statements, and that he was employed by AT&T Services, the complaint "cryptically alleged" that all of the "AT&T" entities generally "act[ed] in concert" without stating any facts of what any of the AT&T entities or Ameritech allegedly did that constituted tortious conduct. *Id*. at *11. The only acts or omissions alleged in the complaint were those of Mr. Wong. *Id*. at *10. The plaintiff admitted as much but attempted to justify the pleadings strategy by arguing that because the AT&T

corporate structure was complex it could not assert allegations of individual AT&T entities' conduct until it obtained discovery. *Id*. at \*11. The court found that since each of the AT&Ts were separate entities not liable for each others' conduct, the plaintiff could not assert allegations against them as if they were a single "corporate family". *Id*.

The complaint allegations in *Boykin* are easily distinguished from those in this case. Plaintiffs here do not seek to hold moving Defendant liable for the acts of other Defendants. Plaintiffs here do not allege that they cannot assert complaint allegations against moving Defendant because they do not know which of the defendants committed the acts that caused Mrs. Brock's cancer. Plaintiffs do not allege that it was a singular benzene exposure that caused the AML. Rather, the Plaintiffs here allege that each of the Defendants are liable for their own benzene products and that all of the Defendants' benzene products were substantial contributing factors and cumulatively came together to cause Plaintiff's AML. Unlike *Boykin*, Plaintiffs here do not allege that a single individual made false or misleading representations and attempt to hold other defendants liable for "acting in concert" with that individual. Rather, Plaintiffs' allegations are made as to each specific Defendant. It is simply a fact that each benzene supplier Defendant was negligent in the same way, and that all of their benzene products were defective for the same reasons. While it is possible that discovery may reveal nuances between the Defendants – such as one Defendant's benzene being accompanied by slightly different warnings than other Defendants' benzene – that does not render the claims against any individual Defendant implausible.

*Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724 (W.D. Md. Sept. 29, 2008) is the third case that the Defendant relies upon. There the plaintiffs filed a class action lawsuit against four categories of defendants relating to an alleged scam to defraud homeowners under the guise of mortgage rescue plans: (1) individuals and the corporations they acted through to perpetrate the

scheme, (2) individuals who acted as straw buyers, (3) settlement agents and their employees, and (4) two title insurance companies. *Proctor, supra*, 579 F.Supp. at 726-27. Different causes of action were pled as to different categories of defendants. For example, the title companies were sued for *respondeat superior* liability and for failure to supervise their agents. The title company defendants argued that the complaint did not sufficiently allege an agency relationship that encompassed the actions of the underlying settlement agent defendants, i.e. the plaintiff did not establish that the settlement agents were agents of the title companies. *Id*. at 731. The allegations of an agency relationship were founded on written agreements between the principles and agents and closing protection letters that were appended to the complaint, the contents of which prevailed over the complaint allegations. *Id*. at 735. The court ultimately found that the contracts alleged to be the basis for an express agency relationship actually precluded the agency relationship, and that the complaint allegations were simply not sufficient to establish an implied agency relationship. *Id*. at 737-40. The ratification of the agents' action theory also failed because the plaintiffs did not allege that the title insurers had knowledge of the agents acts so as to approve of them. *Id*. at 741.

As to the defendants Farahpour, Chaudhry and Bellesteros, the plaintiffs' amended complaint alleged that all three acted in concert in committing the wrongful conduct at issue. *Id*. at 744. The original complaint, however, alleged that only Chaudhry committed all facets of the wrongful conduct. *Id*. The court found that the wrongful conduct was committed by only one person, and that the plaintiffs' amended complaint allegations were speculative, essentially alleging that one of Farahpour, Chaudhry or Bellesteros committed the acts, without being able to identify which defendant it was that committed the acts. *Id*. It is this section of the opinion that Defendant cites for the proposition that "Plaintiffs cannot remedy [a lack of factual allegations

9

sufficient to establish liability] by simply listing everyone that *could have been* involved for every specific action that allegedly occurred on behalf of [employer-defendant]." See, Doc. 101 at p. 5.

This case is distinguished from *Proctor*. In *Proctor* the wrongful conduct could only have been committed by one of three defendants and the plaintiff could only speculate as to which of the three defendants committed the acts. The Plaintiffs here allege that the conduct was committed by all of the defendants. The cumulative effects of the Defendants' conduct came together to cause the AML. Stated a different way, the conduct in *Proctor* could only have been committed by one of the three defendants. Here, the Plaintiffs alleges that multiple defendants sold benzene to the Wilmington plant over an approximately 8-year period of time and that Plaintiff's exposures to all of their products came together to cause her AML. Unlike *Proctor*, one Defendant selling benzene to the plant does not rule out other Defendants selling benzene to the plant.

For this case to be analogous to *Proctor* and *Boykin*, the Plaintiffs would have to allege that there was one exclusive seller of benzene to the Wilmington Plant over the 8 years that Mrs. Brock worked there, but that the Plaintiffs do not know which of the benzene supplier Defendants it was that sold the benzene to the plant, and therefore all seven suppliers are sued. That obviously is not the case.

The purpose of Rule 8(a)(2) is to place Unocal on notice of what the claims asserted against it are and the grounds for those claims. Unocal's claim that it "cannot tell which allegations are lodged against it" is unavailing. The Plaintiffs' complaint provides ample notice to Unocal of both the claims the Plaintiffs assert against it, and also the grounds for those claims. Presumably, Unocal would have the Plaintiffs cut and paste the same allegations into seven different negligence counts, seven different breach of warranty counts, seven different failure to warn and defective design counts and seven different battery and fraud counts, i.e. one count per manufacturer/supplier

10

Defendant, per cause of action. That is antithetical to a "short and plain statement" of the claim. That will not provide Unocal with any different notice of the claims against it. That will not change the grounds asserted for the claims against Unocal. The only thing that this will accomplish is creating an unnecessarily lengthy complaint.

Unocal's argument exposes the weakness in its position. Unocal claims that it does not know which Defendant the Plaintiffs' allegations of a failure to comply with "OSHA process safety management regulations", "implement standard industrial hygiene and occupational health and safety procedures" and "eliminate the use of benzene" are lodged against. See, Doc. 105 at p. 6. Unocal then goes on to answer its own question by arguing that these are allegations relating to the ownership and operation of the Wilmington Plant and that BASF and Takeda, not Unocal, owned and operated the plant. How does Unocal know this? Because the Plaintiffs make allegations specific to BASF and Takeda that clearly place Unocal, and the other Defendants, on notice that BASF and Takeda owned and operated the plant and that BASF and Takeda are responsible for negligence stemming from the ownership and operation of the plant. Unocal would apparently have the Plaintiffs break those allegations out to a separate negligence count as to Takeda and BASF. Yet, that is form over substance, as it does not change the fact that there are sufficient allegations as to Unocal for its liability as a benzene supplier, and the complaint adequately distinguishes between the allegations lodged against the benzene suppliers and the allegations lodged against the plant owners/operators, BASF and Takeda. *See, e.g.*, FAC ¶ 28-40, 70-72. Refusing to read the complaint as a whole like an ostrich with its head in the sand is not a basis for Defendant to claim that it is ignorant as to the averments set forth against it. It need not be plausible that Unocal had duties related to the ownership or operation of the Wilmington Plant

11

where Unocal admits that the Plaintiffs' complaint specifically alleges that only BASF and Takeda had those duties.

The fact of the matter is that the Plaintiffs allege that each of the manufacturer/supplier Defendant engaged in the same acts and conduct underlying each of the Plaintiffs' causes of action against them. This should not be surprising. The FAC concerns the same products, benzene and benzene-containing solvents, sold to the same workplace during the same years by multiple entities. The basis for the Defendants' liability is straightforward. Benzene causes AML and other forms of blood cancer and blood disease. Unocal and other Defendants did not warn the Plaintiff of these hazards. Certain protective measures are required to protect against benzene exposure, i.e., appropriate respirators, protective gloves and clothing, process enclosures, local exhaust ventilation, air monitoring, biological monitoring. Unocal and other Defendants did not warn the Plaintiff to take these protective measures. Given benzene's highly toxic nature and the grave health hazards of benzene exposure, entities selling benzene to customers should take measures to confirm that the user appreciates the hazards and takes proper measures to safely use benzene. Unocal and other Defendants failed to assure themselves that Takeda and BASF took these protective measures prior to selling them the benzene. Of course, there are ample specific facts pled to establish that benzene causes AML, what warnings were required for the benzene, what warnings were not provided by each of the Defendants for the benzene, and how each Defendant breached their duty in selling benzene to the Wilmington Plant.

Unocal's motion presumes, without support, that each Defendant must have acted in a different manner in failing to warn the Plaintiff, defectively designing their benzene and benzene-containing solvents, selling benzene with implied warranties, and exposing the Plaintiff to benzene. While discovery may reveal nuances as to the Defendants' conduct, at the procedural

12

posture of a motion to dismiss, the Court must accept the Plaintiffs' allegations as true. Unocal's argument flips the standard on its head, asking the Court to assume that it must have acted in manner differently than the Plaintiffs allege it did.

The Court should not be distracted by these arguments. The proper question is whether the allegations pled against Unocal support each cause of action. They do. Is it not implausible that each of the seven benzene supplier Defendants are liable because their benzene possessed the same defects or their conduct each breached their duty of care.

Finally, Unocal argues in a footnote that the document produced by BASF identifying Unocal as a benzene supplier does not prove that Unocal supplied benzene to the Wilmington Plant, because Unocal argues that the document was a benzene material safety data sheet ("MSDS"), which is publicly available, does not indicate where the benzene was shipped to, and predates the Plaintiff's employment at the plaint. This argument is unavailing. First, it relies on Unocal's allegations about a document that is extraneous to the complaint and therefore cannot be relied upon in ruling upon a motion to dismiss. Second, even if the court could properly consider Unocal's arguments about a document that is not appended to the complaint, which it cannot, Unocal's argument asks this court to make a series of inferences in Unocal's favor that the court could not make even if their were a summary judgment motion and extraneous evidence could be considered.

### C. Plaintiffs Have Plausibly Stated a Claim for Negligence.

Defendant's contentions against Plaintiffs' negligence claim should be rejected insofar as it alleges theories of negligent failure to warn and defective design. (*See* Def. Br. pp. 21-24). Under North Carolina law, a negligence claim must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between

13

the breach of duty and actual injury or loss sustained by the plaintiff. *Fussell v. North Carolina Farm Bureau,* 198 N.C. App. 560, 562, 680 S.E.2d 229 (2009). When a plaintiff asserts a product liability claim based on negligence, "the plaintiff must prove duty, breach, causation, and damages." *Sparks v. Oxy-Health, LLC,* 134 F. Supp. 3d 961, 986 (E.D.N.C. 2015) (citing *Bryant v. Adams*, 116 N.C. App. 448, 448 S.E.2d 832 (1994)). Those elements are satisfied as to a design or manufacturing defect if the plaintiff demonstrates "(1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc*., 138 N.C. App. 70, 530 S.E.2d 321, 326 (2000); *see also City of High Point, N. Carolina v. Suez Treatment Sols. Inc.,* 485 F. Supp. 3d 608, 630 (M.D.N.C. 2020). North Carolina courts have consistently recognized a common law rule that "imposes on every person engaged in the prosecution of any undertaking [a duty] to use due care, or to so govern his actions as not to endanger the person or property of others." *McCants v. Nat'l Collegiate Athletic Ass'n,* 201 F. Supp. 3d 732, 738-39 (M.D.N.C. 2016) (quoting *Pinnix v. Toomey,* 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955)).

Here, Plaintiffs allege that Defendant Unocal manufactured, refined, distributed, and/or sold benzene and benzene-containing products that were supplied to the Wilmington Plant. FAC ¶ 18. In doing so, Defendant owed Plaintiff Mrs. Brock and other foreseeable users and persons exposed to those products a duty to exercise reasonable care in the design, manufacture, testing, inspection, marketing and sale of those products, including a duty to warn of known or reasonably knowledgeable dangers associated with benzene exposure. The FAC alleges that Unocal "knew, or in the exercise of reasonable care, could and/or should have known that persons such as Plaintiff was required to work around and in close proximity to, inhale, dermally absorb, ingest and was

14

otherwise directly and indirectly be exposed to benzene, benzene-containing solvents and/or vapors therefrom on the Wilmington Plant." *Id.* at ¶ 59. The FAC alleges that Defendant knew or should have known of benzene's dangerous properties. *Id.* at ¶¶ 60-62. Defendant, however, breached its duty by using benzene when alternative chemicals were available, by failing to warn of benzene's dangerous propensities, and by otherwise deviating from its duty of care. *Id.* at ¶ 75.

The FAC alleges that as the direct and proximate result of Unocal's acts and omissions, Plaintiff Mrs. Brock contracted and suffers from AML, and multiple side effects, conditions, illness and symptoms caused by AML and the medical treatments necessitated thereby which caused her pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation and increased susceptibility to infection. FAC ¶¶ 76-79. These factual allegations adequately ground a negligence claim.

### D. Plaintiff Has Stated a Product Liability Claim Based on Failure to Warn Under Section 99B-5 of the N.C. Products Liability Act.

Section 99B-5(a) provides that a manufacturer or seller is not liable on a failure to warn claim unless the manufacturer or seller acted unreasonably in failing to provide the warning or instruction; the failure to provide an adequate warning or instruction was a proximate cause of the harm; and one of the two additional conditions: a) at the time the product left the manufacturers or sellers control, the product without an adequate warning created an unreasonably dangerous condition that the manufacturer or seller knew, or should have known, posed a substantial risk of harm to a reasonably foreseeable claimant; or b) after the product left their control, the manufacturer or seller became aware, or should have become aware that the product posed a substantial risk of harm and failed to take reasonable steps to give adequate warning or take other reasonable action. N.C.G.S. § 99B-5(a). *See also Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017) (describing that failure to warn claim requires the plaintiff to prove that the

15

defendant unreasonably failed to provide an adequate warning, proximate cause, and that the product posed a substantial risk of harm without an adequate warning either at the time of or after leaving the manufacturer's control).

Unocal argues that the failure to warn claim fails because Plaintiffs do not allege that Unocal knew or should have known of the dangers not included in the warnings. *See,* Doc. 105 at p. 8. Not so. Plaintiff alleges that Unocal "knew, should and/or reasonably could have known that exposure to benzene causes blood and bone marrow poisoning and damage, damage to DNA, chromosome damage, cancer, leukemia and other blood and bone marrow disease and damage, and is otherwise extremely dangerous to human health." *See*, Doc. 31 at ¶ 61. Unocal also "knew, should and/or reasonably could have known that exposure to benzene is carcinogenic, leukemogenic, inherently defective, ultra-hazardous, dangerous, deleterious, poisonous and otherwise highly harmful to the body and health of Plaintiff and persons similarly situated." *Id*. at ¶ 62. Plaintiffs allege that these warnings were not on the benzene label or MSDS. *Id*. at ¶¶ 75(u), 75(w), 75(z). The failure to warn is derived from warnings that are NOT on the label, so allegations or warnings that were on the label are not necessary or a basis for arguing that the failure to warn claim is deficient. *See*, Doc. 101 at p. 7 (arguing that "Plaintiffs did not even identify what the alleged deficient warning label stated").

Unocal argues that the Plaintiffs do not allege that Defendant's failure to warn played any role in causing Mrs. Brock's benzene exposures and injury. Unocal is incorrect. Plaintiffs allege that "**Defendants knew that their failure to warn**… **the Plaintiff**, her employer and coworkers of there benzene exposures and benzene's capability of causing cancer, leukemia and other blood and bone marrow disorders, including MDS and AML, would act as, and **did in fact act as, an inducement for the Plaintiff to continually expose herself to benzene without necessary and**

16

**proper personal protective equipment**, practices and procedures in order to reduce or eliminate benzene exposure and leukemia risk." Doc. 31 at ¶ 118 (emphasis added). Stating that the lack of warning induced the Plaintiff to be exposed is another way of stating that the failure to warn caused the exposures. Thus, the Plaintiffs allege that the failure to warn led the Plaintiff to be exposed to benzene.

Here, the FAC plausibly alleges that Defendant failed to provide adequate warnings regarding the dangers of benzene exposure, failed to provide sufficient instructions for safe use and handling, and placed into the stream of commerce a product whose risks outweighed its utility or could have been reduced through a safer alternative design, formulation, packaging, or warning system. *See* FAC ¶ 93. At the pleading stage in a products liability case, a plaintiff need not identify every alternative design with engineering detail. It is enough that, as here, the complaint alleges the product was unreasonably dangerous and defective when it left Defendant's control, and that the defect was a cause of Plaintiffs' injuries. *See Patterson v. 3M Co.*, 2022 U.S. Dist. LEXIS 231462, *13-14 (M.D.N.C. Sept. 8, 2022) (denying motion to dismiss, finding that plaintiff adequately alleged a failure to warn claim).

The factual allegations put Defendant on notice that Plaintiffs are asserting warning-based and design-defect theories under North Carolina products liability law. Unocal manufactured, refined, distributed, and/or sold benzene and benzene-containing products that were supplied to the Wilmington Plant for use in the manufacture of Vitamin C and other products. FAC ¶ 18. BASF confirmed that Unocal was a supplier of benzene to the Wilmington Plant during the relevant time period. *Id.* at ¶ 18. In the process of making Vitamin C, benzene was released into the air of the Wilmington Plant, which in turn caused Mrs. Brock's benzene exposures. The FAC alleges that Defendant knew or should have known that their benzene and benzene-containing

17

solvents were inherently defective, dangerous, deleterious, poisonous, carcinogenic, unfit for use, not properly merchantable and not safe, as marked, for their foreseeable purpose, in that they contained benzene and caused lymphohematopoietic diseases, including AML. Plaintiffs allege that the products were defectively designed and lacked warnings, instructions and training, and that Defendant failed to warn, train and advise, or adequately train and advise, the Plaintiff Mrs. Brock and her employers as to how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene and benzene-containing solvents. Plaintiffs further allege that Defendant's benzene and benzene-containing solvents contained directions for use that increased the risk for exposure to benzene and increased the amount of benzene exposure. FAC ¶ 83(p).

Plaintiffs have also adequately alleged proximate cause and reliance. Plaintiffs have alleged: "Plaintiff relied upon the Defendants for information and warnings regarding the health hazards and cancer risk of the benzene and benzene-containing solvents and Wilmington Plant and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety." FAC ¶ 125(s). These allegations are sufficient to support the Plaintiffs' failure to warn claim against Unocal.

E. **Plaintiff Has Properly Pled a Design Defect Claim Under Section 99B-6 of the N.C. Products Liability Act.**

Defendant Unocal further contends that the FAC does not adequately plead a claim for defective design under N.C.G.S. § 99B-6, because the FAC fails to plead how the "design" of benzene was inadequate or propose a safer alternative. (Doc. 105, p. 8). However, Count III is certainly adequately pled. FAC ¶ 100 alleges that under N.C.G.S. § 99B-6, Defendant acted unreasonably in designing or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought, and in addition a) "At the time the product left the control

18

of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product;" or b) "At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design." FAC ¶ 100. Further, Plaintiffs allege that as a direct and proximate result of Defendant's negligent design, and related acts and omissions, Plaintiff Mrs. Brock contracted and suffers from AML. FAC ¶ 101. Plaintiffs further allege that "Defendants breached their duty and were negligent and grossly negligent because … they: … [u]sed benzene when safer alternative chemicals and manufacturing processes were available…." FAC ¶ 75(a).

These allegations track the relevant statute and are sufficient for the defective design claim. The FAC expressly alleges as part of Count I that Defendants, including Unocal, "[f]ailed to post signs warning of the presence of benzene, that there was a cancer hazard and that respiratory protection was required;" "Failed to warn and train workers about the hazards of benzene exposure and how to prevent exposures, and failed to assure that workers were properly trained and warned;" *see* FAC ¶ 75(o), (p), and Plaintiffs also alleged as to reliance, that "Plaintiff … relied upon the Defendants for information and warnings regarding the health hazards and cancer risk of the benzene and benzene-containing solvents and Wilmington Plant and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety." FAC ¶ 125(s). These allegations are sufficient to support the Plaintiffs' negligent failure to warn and negligent design claim against Unocal and Defendant's contention that Plaintiffs' FAC fails to

plausibly allege that the defective design (or the failure to warn) proximately caused Mrs. Brock's injury should be rejected.

### F. Plaintiffs Have Properly Pleaded Facts to Support a Battery Claim.

Unocal does not attack the Plaintiffs' battery claim specifically. Unocal generally claims that the Plaintiffs have not stated any plausible claim for relief in the context of its "group pleading" argument. Doc. 105, p. 4-5. Out of an abundance of caution, Plaintiffs brief the sufficiency of their battery claim in the even the court reads Unocal's argument broader than it is actually made. Under North Carolina law, a cause of action for common law battery requires allegations that "(1) the defendant intentionally cause[d] bodily contact with the plaintiff; (2) the bodily contact caused physical pain or injury; and (3) the bodily contact occurred without the plaintiff's consent." *Simmons v. Wiles*, 271 N.C. App. 665, 668, 845 S.E.2d 112, 116 (2020) (citing *Andrews v. Peters,* 75 N.C. App. 252, 256, 330 S.E.2d 638, 640-41 (1985)). Here, the FAC alleges that "Defendants committed the intentional tort of battery by causing the Plaintiff's exposure to benzene knowing that those exposures would cause harm to the Plaintiff." FAC ¶ 107. "Defendants' acts and omissions demonstrated a conscious indifference to their consequences, namely causing the Plaintiff to contract AML and other injuries identified herein." *Id.* at ¶ 127. "Defendants intended to cause harmful conduct to the Plaintiff through causing benzene exposure, and did so with the knowledge, belief and intent that such exposure could cause the Plaintiff to contract leukemia." *Id.* at ¶ 128. "Defendants' intentional conduct in causing the Plaintiff to be exposed to benzene, did in fact cause physical harm to the Plaintiff…." *Id.* at ¶ 129. These allegations are adequate to satisfy the requirement of a short plain statement of relief on a common law civil claim for battery.

Additionally, courts have found there is no *per se* bar against a battery claim in the factual context of toxic or chemical exposures. *See In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 379 Supp. 2d 348, 434-35 (S.D.N.Y. 2005) (court explained that intentional contamination of property or persons with toxic chemicals can support a battery claim, where the defendant knew the contact would occur); *Baker v. Monsanto Co.*, 962 S.W.2d 354 (S.D. Ind. 1997) (court allowed a battery claim based on intentional exposure to hazardous chemicals, finding that intentional contact with toxic substances can satisfy the elements of battery).

Here, Plaintiff Mrs. Brock worked at the Wilmington Plant. The Plaintiff plausibly alleges that she worked around benzene supplied by Defendants and was exposed to and in contact with the benzene. The motion should be dismissed as to the battery claim.

### G. Plaintiffs Withdraw Their Claim for Common-Law Fraud as Against Unocal only

Plaintiffs respectfully withdraw their common law fraud claim as to Defendant Unocal. *See* Defendant's Brief, Doc. 105 at pages 8 to 10.

### H. Plaintiffs hereby withdraw their claim for breach of warranty as against Unocal only.

Plaintiffs respectfully withdraw their breach of warranty claim (Doc. 31, Count II) as to Defendant Unocal. *See* Defendant's Brief, Doc. 105 at pages 6 to 7.

### I. Plaintiffs State a Claim for Loss of Consortium.

Plaintiff Roy Brock asserts a claim for loss of consortium arising from the alleged injuries suffered by his spouse, Mrs. Brock. FAC ¶¶ 135-38. A loss of consortium claim is derivative and depends upon there being a viable underlying tort claim by the injured spouse. Here, because Mrs. Brock states valid claims for relief against Defendant, her spouse's derivative claim for loss of consortium is also properly pled. In *Nicholson v. Hugh Chatham Mem. Hosp., Inc.*, 300 N.C. 295,

21

266 S.E.2d 818 (1980), the North Carolina Supreme Court recognized a spouse's right to recover for loss of consortium when the other spouse is injured by a tortfeasor. Because Mrs. Brock states viable underlying claims, Mr. Brock's derivative loss of consortium claim is also properly pled. *See also Nixon v. Majors,* 2007 U.S. Dist. LEXIS 95698, *17 (W.D.N.C. Dec. 28, 2007) ("The undersigned will recommend that Ms. Nixon's claims not be dismissed, and, accordingly, must respectfully recommend that the Defendants' Motions to Dismiss Mr. Nixon's loss of consortium claim also be denied.").

**CONCLUSION**

Plaintiffs have adequately alleged causes of action against Unocal for negligence per se, negligence, failure to warn and defective design, battery and loss of consortium, and Defendant's motion to dismiss should therefore be denied as to those claims.

Respectfully submitted this 19th day of May, 2026.

/s/ Andrew DuPont
Andrew J. DuPont, Esq. (Pro Hac Vice)
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 893-0100
adupont@lockslaw.com
*Attorneys for Plaintiffs*

/s/ John Hughes
William M. Graham, Esq.
NCSB 17972
Mark Doby, Esq.
NCSB 39637
John Hughes, Esq.
NCSB 22126
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone

bgraham@wallacegraham.com
mdoby@wallacegraham.com
jhughes@wallacegraham.com
*Local Civil Rule 83.1(d) Attorney for Plaintiffs*

23

# CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court using the Court's CM/ECF system, which caused the foregoing to be served on all counsel of record.

May 19, 2026

/s/ Andrew DuPont
Andrew J. DuPont, Esq. (Pro Hac Vice)
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 893-0100
adupont@lockslaw.com
*Attorneys for Plaintiffs*

/s/ John Hughes
William M. Graham, Esq.
NCSB 17972
Mark Doby, Esq.
NCSB 39637
John Hughes, Esq.
NCSB 22126
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
bgraham@wallacegraham.com
mdoby@wallacegraham.com
jhughes@wallacegraham.com
*Local Civil Rule 83.1(d) Attorney for Plaintiffs*

24