IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-1540-M-BM

| | | |
|---|---|---|
| LYDIA DIANE BROCK and ROY BROCK, Plaintiffs, v. BASF CORPORATION, et al., Defendants. | ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the motion by defendant BASF Corporation ("defendant" or "BASF") [DE-53] ("motion to dismiss") to dismiss the amended complaint [DE-31] of plaintiffs Lydia Diane Brock ("Mrs. Brock")[1] and Roy Brock ("Mr. Brock") (collectively "plaintiffs"). The above motion was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). For the reasons stated below, the undersigned RECOMMENDS that the court GRANT IN PART and DENY IN PART defendant BASF's motion to dismiss [DE-53].

## I. BACKGROUND AND ALLEGATIONS

### A. Relevant procedural background

On October 2, 2025, plaintiffs filed a complaint in this court against BASF and other defendants. Complaint [DE-1]. On January 2, 2026, plaintiffs filed an amended complaint. [DE-31]. On February 17, 2026, BASF filed its motion to dismiss plaintiffs' complaint [DE-53], and a memorandum [DE-54] in support thereof. On March 10, 2026, plaintiffs filed a response in opposition [DE-59] to BASF's motion to dismiss, to which BASF filed a reply [DE-77].

[1] In the pleadings and briefs, "plaintiff" in the singular refers to Mrs. Brock. For clarity, in the instant memorandum and recommendation, plaintiffs are individually referred to as "Mrs. Brock" and "Mr. Brock" respectively.

## B. Plaintiffs' amended complaint

### 1. General factual allegations

In the amended complaint, plaintiffs allege, in sum, the following facts:

Mrs. Brock was employed at a chemical plant in Wilmington, North Carolina ("Wilmington Plant") on the border of New Hanover and Pender Counties. [DE-31] at ¶ 1. Mrs. Brock was employed by an independent contractor, from March 15, 1993, through November 16, 2001. *Id*. at ¶ 41-42. The Wilmington Plant used benzene to manufacture Vitamin C. *Id*. Mrs. Brock was exposed to benzene while working at the Wilmington Plant. *Id.* at ¶ 47. Mrs. Brock was diagnosed with Acute Myeloid Leukemia ("AML") on or after October 2, 2022, as a direct and proximate result of her exposure to benzene. *Id.* at ¶ 50.

Takeda Chemical Products USA, Inc. ("TVFU") originally operated the Wilmington Plant; however, on or about June 6 – 7, 2000, BASF, and Takeda entered into a Basic Agreement for the Transfer of Takeda Bulk Vitamin Business ("BASF-TA Acquisition Agreement"). *Id.* at ¶ 22. On or around on January 4, 2001, BASF purchased TVFU's stock from Takeda and took ownership of the Wilmington Plant. *Id.* at ¶¶ 20-26. Plaintiffs allege that BASF took on the liabilities of TVFU. *Id.* at ¶ 7. Plaintiffs note separately they have also sued defendants because BASF represented in prior litigation in New Jersey state court that "'Takeda' retained liability for benzene exposures at the Wilmington Plant prior to the January 4, 2001 sale of TVFU's stock by TA to BASF." *Id.* at ¶¶ 8, 9, 11.

### 2. Claims, jurisdiction, and relief sought

Plaintiffs bring five claims in the amended complaint: (i) negligence ("Count 1") (*id.* at ¶ 57-80); (ii) breach of warranty ("Count 2") (*id.* at ¶ 81-89); (iii) violation of failure to warn and defective design ("Count 3") (*id.* at ¶ 90-105); (iv) intentional tort – battery and fraud ("Count 4")

(*id.* at ¶ 106-134); and (v) loss of consortium ("Count 5") (*id.* at ¶ 135-138).

Plaintiffs assert subject matter jurisdiction under 28 U.S.C § 1332, alleging (i) there is more than $75,000 at issue, and (ii) complete diversity exists between the parties as they are residents of different states. [DE-31] at ¶ 3.

Plaintiffs seek compensatory damages in excess of $75,000.00; punitive damages; loss of consortium damages; to "recover the costs and expenses incurred in prosecuting this action, all allowable pre-judgment and post-judgment interest as provided by law, and any other allowable costs, expenses and attorneys' fees to the extent provided for by law"; and the award of such other and further relief as the court deems just and proper. [DE-31] at 38-39.

## II. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim entitling [them] to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Yet a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,

550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*; *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015) ("[I]t is not our task at the motion-to-dismiss stage to determine 'whether a lawful alternative explanation appear[s] more likely' from the facts of the complaint." (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015))), *as amended on reh'g in part* (Oct. 29, 2015).

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) (noting that the court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in the plaintiff's favor. *Edwards*, 178 F.3d at 244. Yet bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 556 U.S. at 680-81.

## III. ANALYSIS

BASF seeks the dismissal of all claims against it for failure to state a claim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Specifically, BASF argues that: Count 1, negligence, should be dismissed to the extent it relies on negligence *per se* or premises liability; Count 2, breach of warranty, should be dismissed because plaintiffs cannot establish privity and have not pleaded the existence of an express warranty; Count 3, failure to warn and defective design, should be dismissed because plaintiffs have not sufficiently pleaded claims under N.C.

General Statute §§ 99B-5 and 99B-6; Count 4, intentional tort – battery and fraud, should be dismissed because plaintiffs do not allege defendant's conduct was directed specifically at Mrs. Brock, and plaintiffs did not plead fraud with particularity; and Count 5, loss of consortium, should be dismissed as derivative. *See* [DE-54] at 2-3. Each argument is addressed below.

**A. Count 1 – Negligence**

**1. Premises Liability**

**a. Parties' arguments**

Defendant argues "[t]his [c]ourt should dismiss [p]laintiffs' negligence claim to the extent it is based on a theory of premises liability because, as an employee of an independent contractor, [plaintiff] was owed no such duty by [defendant]." [DE-54] at 15. Defendant asserts "[u]nder North Carolina law, 'an owner or occupier of land who hires an independent contractor is not required to take reasonable precautions against dangers which may be incident to the work undertaken by the independent contractor,' unless the activity is inherently dangerous." *Id.* at 16 (quoting *Cook v. Morrison*, 413 S.E.2d 992, 925-26 (N.C. Ct. App. 1992)). Defendant argues plaintiffs have not sufficiently pleaded that Mrs. Brock's work activity was inherently dangerous. *Id.*

Plaintiffs respond that the protection from liability for injuries afforded independent contractors and employees does not apply to BASF because BASF never "relinquished control over the use of the benzene, the processing equipment that the benzene was emitted from, or the operations of the Wilmington Plant itself to [Mrs. Brock's] employer." [DE-59] at 6. Plaintiffs argue in the alternative "even if the dangerous condition is controlled or created by the independent contractor, the landowner may still be found liable if the landowner retained control over the contractor's work, negligently hired the contractor, or the work was considered ultrahazardous or

inherently dangerous." *Id.* (citing *Woodson v. Rowland*, 329 N.C. 330, 350 (1991)).

In reply, defendant restates its position that "an independent contractor must have engaged in an inherently dangerous activity for premises liability to attach; this is a threshold question that precedes any analysis of the landowner's control." [DE-77] at 6 (emphasis removed) (citing *Simmons v. N.C. DOT*, 496 S.E.2d 790, 790-93 (N.C. Ct. App. 1998)). Defendant argues "absent any allegations connecting Mrs. Brock's specific work duties with the hazard causing the alleged damages, [p]laintiffs cannot satisfy their burden." *Id.* at 7 (citing *McCorkle v. N. Point Chrysler Jeep, Inc.*, 703 S.E.2d 750, 753-54 (N.C. Ct. App. 2010)).

**b. Plaintiffs' relevant allegations**

Plaintiffs allege "BASF, and its predecessor TVFU, permitted and caused benzene to be released into the air of the Wilmington Plant which in turn caused Mrs. Brock to be exposed to the benzene." [DE-31] at ¶ 40. Plaintiffs allege Mrs. Brock "was exposed to benzene, and to the vapors, aerosols, mists and fogs from benzene, by means of inhalation and dermal absorption." *Id.* at ¶ 49. "[Mrs. Brock], and similarly situated persons did not and could not know of the nature and extent of the danger to their bodies and health, including the risk for cancer and leukemia, caused by exposure to benzene, benzene-containing solvents and/or vapors therefrom." *Id.* at ¶ 63.

Plaintiffs also allege "[d]efendants knew, should and/or reasonably could have known that exposure to benzene causes blood and bone marrow poisoning and damage, damage to DNA, chromosome damage, cancer, leukemia and other blood and bone marrow disease and damage, and is otherwise extremely dangerous to human health." *Id.* at ¶ 61. Plaintiffs assert "[BASF] continued to provide annual benzene training to BASF employees at the Wilmington Plant through at least August 2001." *Id.* at ¶ 30. Plaintiffs allege "[d]efendants . . . knew, should and/or

reasonably could have known that [Mrs. Brock], her employer and other persons similarly situated, would come into direct and indirect contact with, handle, inhale, ingest, dermally absorb and otherwise be exposed to benzene." *Id.* at ¶ 64.

**c. Applicable law**

"Under North Carolina law, landowners owe a duty of reasonable care to all lawful visitors," including invited independent contractors and their employees. *Smith v. Schlage Lock Co., LLC*, 986 F.3d 482, 489 (4th Cir. 2021) (first citing *Nelson v. Freeland*, 507 S.E.2d 882, 892 (N.C. 1998); then citing *McCorkle v. N. Point Chrysler Jeep, Inc.*, 703 S.E.2d 750, 752 (N.C. Ct. App. 2010)); *see also Simmons v. N.C. DOT*, 496 S.E.2d 790, 793 (N.C. Ct. App. 1998) ("[S]ince plaintiff was on the premises by invitation and was injured while rendering a direct and substantial benefit to the defendant, he was an invitee. . . . As such, the applicable duty of care . . . was to exercise ordinary care. . . ." (internal quotations omitted)).

"[I]f the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury." *Sexton v. United States*, 797 F. Supp. 1292, 1302 (E.D.N.C. 1991) (quoting *Deaton v. Board of Trustees of Elon College*, 226 N.C. 433, 438 (1946)).

The "general rules on the tort liability of owners and occupiers of land to invitees . . . do not apply to the actual work undertaken by independent contractors and their employees." *Smith v. Schlage Lock Co., LLC*, 986 F.3d 482, 490 (4th Cir. 2021) (quoting *Cook v. Morrison*, 413 S.E.2d 922, 926 (N.C. Ct. App. 1992)). "North Carolina appellate courts have found that where an independent contractor is 'free to perform its job according to its own independent skill, knowledge, training, and experience,' liability under a retained control theory will not attach to the

general contractor or landowner." *Commee v. Nucor Corp.*, 173 F. Appx. 209, 212 (4th Cir. 2006) (quoting *Hooper v. Pizzagalli Constr. Co.*, 436 S.E.2d 145, 149 (N.C. Ct. App. 1993)).

An exception applies when a landowner "hires an independent contractor 'to perform an inherently dangerous activity' because, in such a case, the employer cannot delegate away 'the duty to provide for the safety of others.'" *Smith v. Schlage Lock Co., LLC*, 986 F.3d 482, 491 (4th Cir. 2021) (quoting *Woodson v. Rowland*, 407 S.E.2d 222, 235 (N.C. 1991)). "Whether an activity is inherently or intrinsically dangerous is a question of law." *Simmons v. N.C. DOT*, 496 S.E.2d 790, 793 (N.C. Ct. App. 1998) (citing *Deitz v. Jackson*, 291 S.E.2d 282, 286 (N.C. Ct. App. 1982)).

**d. Discussion**

Defendant characterizes plaintiffs' argument as "assum[ing] that because Mrs. Brock was employed at the Wilmington Plant and alleges benzene exposure, her work *must have been* inherently dangerous." [DE-77] at 7. Defendant quotes *Simmons v. North Carolina Department of Transportation* in arguing that "because the plaintiff 'was injured while performing such work, [the landowner] did not owe a duty to plaintiff unless the work plaintiff was engaged in can properly be characterized as inherently or intrinsically dangerous.'" *Id.* (quoting 496 S.E.2d 790, 793 (N.C. Ct. App. 1998)) (alteration in original) (emphasis removed).

Defendant's broader reasoning in both its memorandum [DE-54] and reply [DE-77] appears to rest on the premise that Mrs. Brock's injury relates to the actual work she performed as an independent contractor. Defendant's argument follows that plaintiffs can therefore only succeed on their theory if Mrs. Brock's work involved an inherently dangerous activity.

The court must first determine, however, accepting plaintiffs' allegations in the amended complaint as true, whether Mrs. Brock's injuries were "*incident to the work* undertaken by" her as an independent contractor. *Cook v. Morrison*, 413 S.E.2d 922, 926 (N.C. Ct. App. 1992) (citing

*Brown v. Tex. Co.*, 76 S.E.2d 45, 46-47 (N.C. 1953)) (emphasis added). In examining when "the incident to the work undertaken exception" applies, the North Carolina Court of Appeals has noted, "[t]he oft-stated reason for the exception is that if a landowner relinquishes control and possession of property to a contractor, the duty of care, and the concomitant liability for breach of that duty, are also relinquished and should shift to the independent contractor who is exercising control and possession." *McCorkle v. N. Point Chrysler Jeep, Inc.*, 703 S.E.2d 750, 753 (N.C. Ct. App. 2010). The Court of Appeals held that "the reasoning for the exception, and thus the exception itself, extends only as far as the independent contractor, and not the landowner, is in control of the hazard or danger." *Id.*

An example of where this exception applies is a construction site, where the contractor is in control of the jobsite and the landowner's involvement or control is minimal. *See e.g. id.* at 754 (where "Defendant contracted with Landmark so that possession and control of the construction site were vested solely with Landmark"); *Cook v. Morrison*, 413 S.E.2d 922, 923-24 (N.C. Ct. App. 1992) (where defendant hired an independent contractor to build a sewer system); *Commee v. Nucor Corp.*, 173 F. Appx. 209, 210-11 (4th Cir. 2006) (where defendant hired an independent contractor to build a steel mill); *Smith v. 3M Co.*, No. 1:16-cv-379, 2019 U.S. Dist. LEXIS 38410, at *8-9 (M.D.N.C. Mar. 11, 2019) (where "[p]laintiff point[ed] to no evidence from which a reasonable jury could find that, after employing DM Weatherly to construct its fertilizer plant, [defendant] or its employees retained control of the jobsite or the manner in which the facility was constructed").

"When considering a Rule 12(b)(6) motion to dismiss, 'we must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party.'" *Britt v. DeJoy*, 2022 U.S. App. LEXIS 26204, at *4 (4th Cir. Sept. 14, 2022) (quoting

*Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018)).

Plaintiffs assert that BASF operated the Wilmington Plant ([DE-31] at ¶ 20), and was responsible for releasing benzene into the air at the Wilmington Plant. *Id.* at ¶¶ 39, 40. Plaintiffs allege Mrs. Brock was exposed to benzene while at the Wilmington Plant. *Id.* at ¶ 40, 49. Plaintiffs provide that Mrs. Brock "did not and could not know of the nature and extent of the danger to [her body] and health, including the risk for cancer and leukemia, caused by exposure to benzene, benzene-containing solvents and/or vapors therefrom."[2] *Id.* at ¶ 63. BASF, plaintiffs contend, knew or should have known (i) about the adverse health risks of benzene exposure (*id.* at ¶¶ 61, 62), and (ii) that Mrs. Brock would be exposed to benzene at the Wilmington Plant (*id.* at ¶ 64).

Plaintiffs have sufficiently pleaded that BASF retained control of the Wilmington Plant, as well as the hazard. Plaintiffs have sufficiently alleged Mrs. Brock was not aware of the danger of benzene exposure, but that defendant was aware. Therefore, under North Carolina law, plaintiffs have alleged that Mrs. Brock's injury was not incident to her work as an independent contractor, and defendant cannot be shielded from liability on that theory. The undersigned therefore RECOMMENDS defendant's motion to dismiss be denied as to the negligence claim.

**2. *Per Se* Liability**

Defendant argues plaintiffs' "attempt to plead a negligence *per se* claim" is "untenable for multiple reasons, and [] [p]laintiffs fail to state a negligence *per se* claim." [DE-54] at 13. Because plaintiffs' negligence claim survives on their premises liability theory, the court need not address whether plaintiffs have stated a claim under their *per se* theory of liability. *See Tucker v. Palaio*,

[2] It is unclear from plaintiffs' allegation whether Mrs. Brock knew she was exposed to benzene at the Wilmington Plant and simply did not know of the health risks, or if she did not know of her exposure to benzene or its health risks. The undersigned construes the allegation in the light most favorable to plaintiffs and construes the allegation as saying Mrs. Brock did not know of her exposure to benzene or of its health risks.

No. 3:25-cv-488, 2026 U.S. Dist. LEXIS 135914, at *77 n.31 (E.D. Va. June 17, 2026) ("However, because the Court has found that [p]laintiff adequately alleged a violation of the VCPA on his fraudulent omission theory, Count I survives and the Court need not engage with the merits of Plaintiff's other theories of VCPA liability."); *In re American Honda Motor Co., Dealerships Realtors Litig.*, 941 F. Supp. 528, 554 (D. Md. 1996) ("I need not, however, reach the issue presently. . . . [p]laintiffs have adequately alleged other bases of liability. . . .).

**B. Count 2 – Breach of Warranty Claim**

Defendant argues for dismissal of plaintiffs' breach of warranty claim. [DE-54] at 17-18. In response, plaintiffs state that they "hereby withdraw their claims for breach of warranty . . . as against [d]efendant BASF only." [DE-59] at 21. Accordingly, the undersigned RECOMMENDS that BASF's motion to dismiss, unopposed as to plaintiffs' breach of warranty claim, be granted, and the breach of warranty claim against BASF be dismissed.

**C. Count 3 – Defective Design Claim and Failure to Warn**

**1. Parties' arguments**

Defendant raises several arguments in support of dismissing plaintiffs' failure to warn and defective design claims. First, defendant argues "[t]he [c]omplaint fails to plead facts showing [defendant] was a manufacturer or seller of the benzene that allegedly harmed [Mrs. Brock]." [DE-54] at 19. Defendant contends "[t]he [c]omplaint's conclusory allegation that [defendant] was a 'manufacturer and/or seller of benzene' is contradicted by its own specific factual allegations." *Id.* at 20 (quoting [DE-31] at ¶ 56). Second, defendant argues "the [c]omplaint fails to plead how the 'design' of benzene was inadequate or propose a safer alternative." *Id.* at 20. Defendant maintains "[t]he [c]omplaint fails to plausibly allege an inadequate design because it does not plead how benzene could be formulated differently without fundamentally altering its properties." *Id.* at 21.

Finally, defendant argues plaintiffs fail to allege reliance on their failure to warn claim because "[t]he [c]omplaint does not plead what warnings should have been given, how any warning given were inadequate, or what different actions Mrs. Brock would have taken if different warnings were provided." *Id.* at 21-22.

In response, plaintiffs argue they "allege[d] that BASF was a manufacturer and seller of benzene during the times pertinent to this case." [DE-59] at 15 (citing [DE-31] at ¶ 56). Plaintiffs highlight allegations in the amended complaint that BASF specifically supplied benzene to the Wilmington Plant. *Id*. (citing [DE-31] at ¶¶ 48, 56). Plaintiffs also cite allegations asserting that the design of benzene is inadequate and propose a feasible alternative. *See id.* (citing [DE-31] at ¶¶ 75(a), 99, 100, 101). Plaintiffs contend that defendant's argument that N.C. Gen. Stat. § 99B-6(c) "carves out an exception for products with inherent characteristics that are recognized by the community and cannot be eliminated without compromising the product's usefulness" is a defense that plaintiffs are not required to "affirmatively plead . . . and refute . . . in order to state a claim under Rule 12." *Id.* at 17. Finally, to establish "a failure to warn proximately caused Mrs. Brock's injury," plaintiffs rely on allegations that defendant failed to post warning signs indicating benzene was present, failed to train and warn workers, and failed to warn workers to wear protective equipment. *Id.* at 18.

In reply, defendant again argues that it is neither a manufacturer nor a seller. [DE-77] at 10. Defendant also disputes that plaintiffs' reference to a material safety data sheet ("MSDS") suggests defendant was a manufacturer or seller because "[t]here are many non-supplier reasons a company's website or server address might appear on an MSDS."[3] *Id.* Defendant also argues

[3] Defendant's argument effectively asks the court to resolve a factual dispute, which is not a question for the court at the motion to dismiss stage. *See Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion

plaintiffs do not advance a feasible alternative design because "benzene cannot be redesigned without losing the very chemical properties that define it." *Id.* at 11. Finally, defendant argues "[p]laintiffs' failure to allege warning-based causation as to BASF therefore requires dismissal." *Id.* at 12.

**2. Applicable law**

**i. Manufacturer or seller**

Under North Carolina law, a manufacturer is "a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer, including a seller owned in whole or significant part by the manufacturer or a seller owning the manufacturer in whole or significant part." N.C. Gen. Stat. § 99B-1(2). A seller "includes a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale or for use or consumption." N.C. Gen. Stat. § 99B-1(4).

**ii. Design defect**

In North Carolina, a claim based on inadequate design or formulation requires a plaintiff to prove a defendant either "unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product" or "the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design." N.C. Gen. Stat. § 99B-6(a)(1)-(2).

to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts . . . .").

Success under § 99B-6(a)(1) "requires evidence the proposed alternative design or formulation was 'a safer, practical, feasible, and otherwise reasonable' design or formulation; that the alternative design or formulation 'could then have been reasonably adopted'; the alternative design or formulation 'would have prevented or substantially reduced the risk of harm' complained of; and the alternative design or formulation would not have 'substantially impaired the usefulness, practicality, or desirability of the product.'" *DeWitt v. Eveready Battery Co.*, 550 S.E.2d 511, 519 (N.C. Ct. App. 2001) (quoting N.C. Gen. Stat. § 99B-6(a)(1)).

**iii. Failure to warn**

"In North Carolina, a failure to warn claim requires the plaintiff to prove that the defendant unreasonably failed to provide an adequate warning, such failure was the proximate cause of the plaintiff's damages, and the product 'posed a substantial risk of harm' without an adequate warning either at the time of or after leaving the manufacturer's control." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017) (quoting N.C. Gen. Stat. § 99B-5(a)).

**3. Discussion**

The language in plaintiffs' amended complaint is strikingly similar to a complaint that was before the count in the Middle District of North Carolina, *Finch v. BASF Catalysts LLC*. *See* 1:16-cv-1077, 2017 U.S. Dist. LEXIS 236533 (M.D.N.C. Oct. 27, 2017). In that case, the plaintiff was executrix of the estate of an employee at a tire plant who claimed the decedent was exposed to asbestos during his employment. *See generally* Second Amended Complaint, *Finch, et al. v. BASF Catalysts LLC, et al.*, 1:16-cv-1077 (M.D.N.C. Aug. 15, 2017). The plaintiff claimed there was a failure to warn and inadequate warning or instruction under North Carolina statute. *See id.* at ¶¶ 31, 33-35, 40-47. The plaintiff in *Finch* alleged "[u]nder N.C. Gen. Stat. § 99B-5, the relevant [d]efendants are liable for negligent failure to warn and inadequate warning or instruction, in that

they were each a manufacturer or seller of a product." *Id.* at ¶ 31. The plaintiff alleged "[w]hile non-asbestos alternative designs and formulations of the relevant products and equipment were available prior to when some or all of the [d]ecedent's injurious exposure occurred, the relevant [d]efendants negligently failed to adopt a non-asbestos design and formulation." *Id.* at ¶ 33. The plaintiff alleged "[d]efendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specification of asbestos-containing products and/or equipment requiring or calling for the use of asbestos and/or asbestos-containing products." *Id.* at ¶ 41.

The court in *Finch* found "[w]hile perhaps not all of these matters need to be specifically alleged to state a claim, surely a defendant is entitled to know something beyond the conclusory and vague allegations here." 2017 U.S. Dist. LEXIS 236533, at *8. The court, in particular, noted "the plaintiff makes all allegations against '[d]efendants' as a group" and "the complaint acknowledges that certain allegations only apply to 'the relevant Defendants' or 'the relevant asbestos-containing products,' but [plaintiff] does not define these subgroups of defendants or products." *Id.* at *7-8.

Similarly, here, plaintiffs allege "the relevant [d]efendants are manufacturers and/or sellers under N.C.G.S. § 99B-1 and were, at all times material hereto, in the business of manufacturing, refining, designing, producing, processing, compounding, converting, packaging, selling, distributing, marketing, re-labeling, supplying and/or otherwise placing into the stream of commerce benzene and benzene-containing solvents and products." [DE-31] at ¶ 91. Plaintiffs allege "[t]he benzene-containing solvents were defective when they left the [d]efendants' possession, custody and control." *Id.* at ¶ 95. Plaintiffs allege "[d]efendants failed . . . to develop alternative products, including products which did not contain benzene." *Id.* at ¶ 99.

### i. BASF as a manufacturer or seller

As in *Finch*, plaintiffs direct almost all allegations against defendants as a group. Plaintiffs offer conclusory allegations (i) asserting defendants are "manufacturers" or "sellers" and (ii) broadly referring to "benzene-containing solvents and products." *Id.* at ¶ 91. "[B]ut [plaintiffs] do[] not define these subgroups of defendants or products." *Finch*, 2017 U.S. Dist. LEXIS 236533, at *8. Plaintiffs' also make a conclusory allegation that "BASF during the pertinent times was a manufacturer and/or seller of benzene." [DE-31] at 14. Plaintiffs do, however, make a specific allegation with regard to BASF as a seller, that "[u]pon information and belief, BASF supplied benzene to the Wilmington Plant prior to and after acquiring the Wilmington Plant." [DE-31] at ¶ 48. Plaintiffs' allegation that BASF supplied benzene to the plant "prior to . . . acquiring [it]" suggests that BASF was a "retailer, wholesaler, or distributor" within the meaning of the statutory definition under N.C. Gen. Stat. § 99B-1(4). Plaintiffs have therefore alleged enough to plausibly claim BASF was a seller of benzene.

Because plaintiffs' design defect claim fails on other grounds, as discussed below, the court need not determine whether plaintiffs also sufficiently allege that BASF was a manufacturer. *See* N.C. Gen. Stat. § 99B-6 (applying only to manufacturers). A claim for failure to warn can be brought against either a manufacturer or a seller. *See* N.C. Gen. Stat. § 99B-5.

### ii. Design defect

Plaintiffs reject the argument that they have failed to propose a safe alternative to benzene or allege how benzene's design was defective. [DE-59] at 16. Plaintiffs quote their allegation that "[a]t the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced

the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product." *Id.* at 16-17 (quoting [DE-31] at ¶ 100).

Plaintiffs characterize this allegation as "track[ing] the relevant statute." [DE-59] at 17. This does not just track the relevant statute; it is a word-for-word recitation of North Carolina General Statute § 99B-6(a)(1). *See* N.C. Gen. Stat. § 99-B-6(a)(1) ("At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.").

"Pleadings that restate the elements of a claim in broad, conclusory language are inadequate." *Harden v. PPG Indus.*, No. 25-cv-7402, 2026 U.S. Dist. LEXIS 137696, at *10 (N.D. Ill. June 22, 2026); *Fairly v. N.C. DOT*, No. 5:12-cv-760, 2013 U.S. Dist. LEXIS 86941, at *3 (E.D.N.C. June 19, 2013) ("In order to state a facially plausible claim, a plaintiff must do more than simply plead facts that are consisted with defendant's liability or merely restate the elements of a cause of action."). This is especially true when "[p]laintiff simply restates, almost word-for-word, the language of the statute in its complaint." *Carr Enter. Inc. v. Acadia Ins. Co.*, No. 6:21-cv-129, 2022 U.S. Dist. LEXIS 60814, at *15 (E.D. Tex. Mar. 30, 2022).

Plaintiffs also point to allegations "[d]efendants . . .failed to develop alternative products, including products which did not contain benzene" ([DE-59] at 16 (quoting [DE-31] at ¶ 99)) and defendants "[u]sed benzene when safer alternative chemicals and manufacturing processes were available" ([DE-59] at 17 (quoting [DE-31] at ¶ 75(a))). These allegations are also conclusory. They broadly reference "safer alternative chemicals" and, as an alternative design, suggest simply removing benzene. These allegations suffer from the same issues noted above of not attributing

specific conduct to a specific defendant. The only relevant conduct specifically attributed to defendant BASF is "BASF supplied benzene to the Wilmington Plant prior to and after acquiring the Wilmington Plant." [DE-31] at ¶ 48. This allegation only asserts defendant supplied benzene, opposed to a product containing benzene, which makes plaintiffs' suggestion to "develop alternative products, including products which did not contain benzene" a suggestion to manufacture benzene that does not contain benzene.

Plaintiffs also argue that they have sufficiently pleaded a claim under N.C. Gen. Stat. § 99B-6(a)(2) by alleging "[a]t the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design." [DE-59] at 17 (quoting [DE-31] at ¶ 100). This is a word-for-word recitation of the statute and is therefore insufficient. *See* N.C. Gen. Stat. § 99B-6(a)(2) ("At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.").

Accordingly, plaintiffs have failed to sufficiently plead a claim of design defect against BASF under § 99B-6. Plaintiffs have neither plausibly alleged a feasible alternative design nor that the design was so unreasonable that a reasonable person would not use the product. *See Presnell v. Snap-On Securecorp., Inc.*, No. 1:20-cv-234, 2021 U.S. Dist. LEXIS 61600, at *6 (M.D.N.C. Mar. 31, 2021) (dismissing claim where plaintiff "does not allege an alternative design that would have been preferable"); *Beaver v. Pfizer, Inc.*, No. 1:23-cv-281, 2024 U.S. Dist. LEXIS 11097, at *9 (W.D.N.C. Jan. 22, 2024) (dismissing claim where "[p]laintiff has not made any allegations regarding the existence of a reasonable alternative design for Celebrex, nor has she alleged that the drug is so unreasonably designed that a reasonable person would not use it, as is

required to state a claim for negligent design under [North Carolina law]"). The undersigned therefore RECOMMENDS, as to plaintiffs' claim of design defect, that the motion to dismiss be granted and the claim be dismissed against BASF.

#### iii. Failure to warn

Defendant's argument for dismissal for lack of proximate causation fails. Defendant argues "[t]he [c]omplaint does not plead what warning should have been given, how any warnings given were inadequate, or what different actions Mrs. Brock would have taken if different warnings were provided." [DE-54] at 22.

Plaintiffs' complaint provides, in detail, warnings that should have been given, but were not. Among the details, plaintiffs allege:

> BASF, and its predecessor TVFU, knew, should and/or could have known that the failure to warn and/or adequately warn of the risks, dangers and harm created by exposure to the benzene, and the failure to implement the reasonably safe and sufficient precautions, practices, personal protective equipment, wearing apparel, appliances and engineering controls on the premises, would act as an inducement to [Mrs. Brock] and other end users similarly situated to come into direct and indirect contact with, handle, inhale, dermally absorb and otherwise be exposed to benzene and/or vapors therefrom, without proper and adequate protection;

[DE-31] at ¶ 75(bb).

Plaintiffs allege that defendants "[f]ailed to post signs warning of the presence of benzene, that there was a cancer hazard and that respiratory protection was required." *Id.* at ¶ 75(o). Plaintiffs allege defendants did not "adequately warn [Mrs. Brock] and her employer as to the location of benzene on the site, the full scope of benzene's hazards and the full scope of work practices and protective equipment to prevent benzene exposure." *Id.* at ¶ 75(u). Plaintiffs make these allegations against "defendants" generally. However, drawing all reasonable inferences in plaintiffs' favor, the undersigned concludes that as the operator of the Wilmington Plant, BASF

was a defendant in a position to post warning signs or disclose the location of benzene within the plant. Plaintiffs have adequately alleged what warnings BASF should have given.

Plaintiffs' allegations also make clear how defendants warnings were inadequate. Making all reasonable inferences in plaintiffs' favor, as required at the motion to dismiss stage, it is unclear how, if defendant did not even warn about the *presence* of benzene as plaintiffs allege (*Id.* at ¶ 75(o)), defendant would have given adequate warnings concerning the presence and danger of benzene. *See Mitchell v. Trans-West, Inc.*, No. 1:24-cv-677, 2025 U.S. Dist. LEXIS 193534, at *7 (M.D.N.C. Sept. 30, 2025) ("Here, Mitchell alleges that neither the flange cap, the pump component, the hydrovac, nor Truck #5304 contained any warnings or instructions whatsoever about the risks associated with an overpressure and/or pressure differential of the kind that caused his injuries and that, had such a warning been given, it would have been heeded.").

Finally, plaintiffs adequately allege reliance. Plaintiffs allege that defendants "[d]id not post signs, warnings or other statements . . . that warn, instruct, train and advise the Plaintiff . . . of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk." [DE-31] at ¶ 125(m). Because of the omissions, Mrs. Brock "contracted and suffers from AML, and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which cause her pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection." *Id.* at ¶ 101. "Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Considering the extreme risks of benzene exposure and the protective measures which could have been taken, there is a permissible, common-sense inference that Mrs. Brock would have heeded warnings to wear

"personal protective equipment" and "respiratory protection." This is sufficient to plausibly allege reliance. *See Mitchell v. Trans-West, Inc.*, No. 1:24-cv-677, 2025 U.S. Dist. LEXIS 193534, at *6-7 (M.D.N.C. Sept. 30, 2025) ("To be sure, the complaint specifically alleges that had any such warnings been present, Mitchell would not have been injured. This supports the permissible inference that renders his failure to warn claim plausible.").

Accordingly, it is RECOMMENDED, as to plaintiffs' claim of failure to warn, that the motion to dismiss be denied.

**D. Count 4 – Intentional Tort Claims**

**1. Battery claim**

**a. Conflicting causes of action**

Defendant argues "[n]egligence and intentional torts are 'mutually exclusive theories of liability.'" [DE-54] at 23 (quoting *Lynn v. Burnette*, 531 S.E.2d 275, 279 (N.C. Ct. App. 2000)). Defendant asserts "[a] harm cannot result from both negligence and an intentional tort, as [p]laintiffs allege." *Id.* In response, plaintiffs argue "[a] plaintiff may plead inconsistent theories such as intentional tort and negligence in the alternative at the pleading stage" under Federal Rule of Civil Procedure 8(d). [DE-59] at 18. In reply, defendant argues "[plaintiffs] incorrectly contend that negligence and battery are *not* mutually exclusive theories of liability" and repeats its argument "North Carolina courts have explicitly held that negligence and intentional torts are mutually exclusive theories of liability because negligence excludes the idea of intentional wrong." [DE-77] at 12 (quotations omitted).

The undersigned credits plaintiffs' argument. "Pleading conflicting causes of action early in litigation is an acceptable action under the civil rules." *Sterman v. Brown Univ.*, 513 F. Supp. 3d 243, 253 (D.R.I. 2021) (citing *Limone v. United States*, 579 F.3d 79, 93 (1st Cir. 2009)); *see*

*also Gee v. JW PEI, Inc.*, No. 8:25-cv-243, 2025 U.S. Dist. LEXIS 263766, at * 21 (C.D. Cal. Oct. 17, 2025) ("Nonetheless, at the pleading stage, a plaintiff may plead alternative and conflicting causes of action.") (citing Fed. R. Civ. P. 8(d)(3)).

Further, federal pleading standards govern here, and defendant's citations to North Carolina law are inapposite. *See Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021) ("A plaintiff asserting a state-law defamation claim in federal court need only satisfy Rule 8; a state's heightened pleading requirement does not apply."); *Block v. S.F. Unified Sch. Dist.*, No. 25-cv-1606, 2025 U.S. Dist. LEXIS 266816, at *42 (N.D. Cal. Dec. 29, 2025) ("[S]tate law does not govern the pleading standard in federal court."); *Oliver v. In-N-Out Burgers*, No. 12-cv-767, 2012 U.S. Dist. LEXIS 156425, at *6 (S.D. Cal. Oct. 19, 2012) ("First, state pleading standards do not apply in federal court.").

**b. Parties' arguments on the merits**

Defendant argues "[p]laintiffs' allegations fall short of establishing either intentional contact or conduct so reckless as to be deemed intentional" and "a defendant's mere knowledge that individuals may be exposed to harmful conditions does not constitute the specific intent necessary for the intentional tort of battery." [DE-54] at 23. Defendant cites *Priselac v. Chemours Co.* and *Lohrenz v. Bragg Communities* in support of its argument. *Id.* at 23-24 (first citing *Priselac v. Chemours Co.*, No. 7:20-cv-190, 2022 U.S. Dist. LEXIS 54845, at *24-25 (E.D.N.C. Mar. 28, 2022); then citing *Lohrenz v. Bragg Cmtys., LLC*, No. 5:22-cv-44, 2023 U.S. Dist. LEXIS 70083, at *21-22 (E.D.N.C. Mar. 31, 2023), *report and recommendation adopted by*, 2023 U.S. Dist. LEXIS 68058 (E.D.N.C. Apr. 19, 2023). Defendant further argues "the [c]omplaint's description of the alleged battery relies exclusively on boilerplate allegations sounding in simple negligence, not an intentional tort." *Id.* at 24. Finally, defendant argues "[p]laintiffs' failure to

specify which of the 11 named [d]efendants engaged in this conduct renders their claim implausible." *Id.* (emphasis removed).

In response, plaintiffs point to allegations in their amended complaint that they argue satisfy the pleading requirements for battery. [DE-59] at 19. Plaintiffs argue "courts have found there is no per se bar against a battery claim in the factual context of toxic or chemical exposures." *Id.* at 20 (first citing *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 379 F. Supp. 2d 348, 434-35 (S.D.N.Y. 2005); then citing *Baker v. Monsanto Co.*, 962 F. Supp. 1143 (S.D. Ind. 1997)). Plaintiffs also attempt to distinguish *Priselac* from the facts of this case, arguing in *Priselac* defendants did not know they were directing their conduct at the plaintiff, while here, "[Mrs. Brock] was known to BASF and worked inside of the BASF-controlled premises." *Id.* at 20-21 (citing *Priselac v. Chemours Co.*, No. 7:20-cv-190, 2022 U.S. Dist. LEXIS 54845, at *26-27 (E.D.N.C. Mar. 28, 2022)).

Defendant replies "the [c]omplaint is devoid of any factual allegations plausibly showing BASF had the intent to bring about harmful bodily contact" and "[m]erely reciting the elements of the tort is insufficient." [DE-77] at 12. Defendant also contends the amended complaint contains "impermissible group pleadings that fail to identify which [d]efendant allegedly undertook the intentional conduct." *Id.* at 13.

**c. Plaintiffs' relevant allegations**

Plaintiffs, in their amended complaint, allege "[d]efendants committed the intentional tort of battery by causing the [p]laintiff's exposure to benzene knowing that those exposures would cause harm to the [p]laintiff." [DE-31] at ¶ 107. Plaintiffs allege "[d]efendants knew, foresaw and intended that their benzene and benzene-containing solvents . . . would be released into the atmosphere while using the benzene . . . and [p]laintiff . . . would work with, inhale, ingest,

dermally absorb, handle or directly and indirectly come into contact with . . . benzene." *Id.* at ¶ 108. Plaintiffs allege "[d]efendants withheld and concealed their knowledge of the releases of benzene on the premises, the concentrations of benzene in the air on the premises, the lack of proper engineering controls to prevent the release of benzene, [and] the failure to properly maintain the process equipment to prevent there [sic] release of benzene." *Id.* at ¶ 123.

**d. Applicable law**

"To state a battery claim, a plaintiff must plausibly allege (1) intent, (2) harmful or offensive contact, (3) causation, and (4) lack of privilege." *Bailey v. Islands Mech. Contr., Inc.*, 827 F. Supp. 3d 639, 667 (E.D.N.C. 2026) (citing *Sargent v. Edwards*, 808 S.E.2d 927, 2018 N.C. App. LEXIS 57, at *15-16 (N.C. Ct. App. 2018)). "The intent required to prove battery is intent to act, i.e., the intent to cause harmful or offensive contact, not the intent to injure." *Russ v. Great Am. Ins. Cos.*, 464 S.E.2d 723, 725 (N.C. Ct. App. 1995). "Under North Carolina law, grossly or culpably negligent conduct will satisfy the intent requirement." *Arch Specialty Ins. Co. v. Hedrick*, No. 1:13-cv-621, 2014 U.S. Dist. LEXIS 163659, at *16 (M.D.N.C. Nov. 21, 2014), *affirmed by*, 612 Fed. Appx. 681 (4th Cir. 2015). "In the context of a battery claim, one consideration that makes willful, wanton, and reckless conduct 'equivalent in spirit to actual intent to inflict injury' is whether the defendant directed the conduct specifically at the plaintiff." *Priselac v. Chemours Co.*, No. 7:20-cv-190, 2022 U.S. Dist. LEXIS 54845, at *22-23 (E.D.N.C. Mar. 28, 2022) (quoting *Abernathy v. Consolidated Freightways Corp.*, 362 S.E.2d 559, 562 (N.C. 1987)).

**e. Discussion**

While having fully considered plaintiffs' arguments to the contrary, the undersigned finds this case materially indistinguishable from *Priselac*. In *Priselac*, defendants were alleged to have released chemicals into "the Cape Fear River and surrounding air, soil, and groundwater through

their operations at the Fayetteville Works Site." No. 7:20-cv-190, 2022 U.S. Dist. LEXIS 54845, at *4 (E.D.N.C. Mar. 28, 2022). Plaintiff drank contaminated water as a result of defendants' pollution and alleged an increased risk of illness. *Id.* Despite the plaintiff's allegations "that defendants knew the Fayetteville Works Site was releasing chemicals into the Cape Fear River, knew the chemicals could be toxic, and knew that exposure to Plaintiff and the class was substantially certain to occur," the court found the defendant had not directed its conduct specifically at the plaintiff and the putative class members. *Id.* at *26-27 (internal quotations omitted).

The undersigned cannot identify a material difference, with regard to whether an action had been directed at a specific plaintiff, between a defendant contaminating a river knowing everyone who drank from that river would be consuming contaminated water and a defendant contaminating a chemical plant knowing everyone in that plant would be breathing contaminated air. "[T]he allegations show defendant['s] conduct was directed at operating [its] business and that [it] had knowledge of the substantial safety risks incidental to the manner in which [it] did so." 2022 U.S. Dist. LEXIS 54845, at *27. Accordingly, the undersigned RECOMMENDS plaintiffs' battery claim against BASF be dismissed.

**2. Common law fraud claim**

Defendant argues for dismissal of plaintiffs' common law fraud claims. *See* [DE-54] at 26-28. In response, plaintiffs state "[p]laintiffs hereby withdraw their claims for . . . common-law fraud as against Defendant BASF only." [DE-59] at 21. Accordingly, the undersigned RECOMMENDS that BASF's motion to dismiss, unopposed as to plaintiffs' common-law fraud claim, be granted, and the common-law fraud claim against BASF be dismissed.

## E. Count 5 – Loss of Consortium Claim

Defendant argues Mr. Brock's loss of consortium claim should be dismissed because it is a purely derivative claim. [DE-54] at 28. Because the undersigned recommends above that plaintiffs' negligence and failure to warn claims survive, plaintiffs' loss of consortium claim should also survive. It is therefore RECOMMENDED, as to plaintiffs' loss of consortium claim, that defendant's motion to dismiss be denied.

## IV. CONCLUSION

For the reasons stated above, it is RECOMMENDED that the court enter an order providing that BASF's motion to dismiss [DE-53] is GRANTED IN PART and DENIED IN PART, specifically:

1. BASF's motion is GRANTED with respect to the following claims, and such claims are DISMISSED:
   a. Count 2 – breach of warranty;
   b. Count 3 – as to defective design only; and
   c. Count 4 – intentional tort – battery and fraud.
2. BASF's motion is DENIED with respect to the following claims:
   a. Count 1 – negligence;
   b. Count 3 – as to failure to warn only; and
   c. Count 5 – loss of consortium.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the respective parties or, if represented, their counsel. Each party shall have until **September 1, 2026**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a *de novo* determination) of those portions of the

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. **Any response to objections shall be filed by the earlier of 14 days from the filing of the objections or September 9, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 20th day of August, 2026.

Brian S. Meyers
United States Magistrate Judge