IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LYDIA DIANE BROCK, et al.** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 7:25-CV-1540-M-BM** |
| | : | |
| **v.** | : | |
| | : | |
| **BASF CORPORATION, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
BASF CORPORATION'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
MEMORANDUM AND RECOMMENDATION**

Plaintiffs, Lydia Diane Brock and Roy Brock respectfully respond in opposition to Defendant BASF Corporation's objections, D.E. 121, to the Memorandum and Recommendation entered August 21, 2026 (the "M&R"), D.E. 120. The M&R correctly applies the Rule 12(b)(6) standard and recommends denial of BASF's motion as to Plaintiffs' negligence claim, failure to warn claim, and Mr. Brock's derivative loss of consortium claim.

BASF's objections should be overruled. The First Amended Complaint ("FAC") alleges that BASF and its predecessor, TVFU, controlled the Wilmington Plant, the benzene used there, and the process equipment that released benzene into the workplace air. It further alleges that BASF and TVFU failed to warn workers of benzene's presence, carcinogenic danger, and the need for protective measures. At the pleading stage, those allegations must be accepted as true and all reasonable inferences drawn for Plaintiffs. BASF's contrary arguments seek factual determinations that await discovery and, if necessary, trial.

## ARGUMENT

### 1. Standard of Review

The court must make a de novo determination only of those portions of the M&R to which BASF makes a proper, specific objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). That review remains governed by Rule 12(b)(6): the FAC's well-pleaded factual allegations are accepted as true, and reasonable inferences are drawn in Plaintiffs' favor. A complaint need only plead sufficient factual matter to state a facially plausible claim; it need not prove the claim or defeat competing factual inferences at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

The M&R applied that standard. While BASF argues that the M&R cited a pre-*Iqbal*/pre-*Twombly* case for the "no set of facts" standard for judging sufficiency of a pleading, the M&R actually applied the correct *Iqbal/Twombly* standard when analyzing the sufficiency of the Plaintiffs' complaint allegations. For example, in lieu of simply accepting a conclusory allegation that Mrs. Brock's status on the Wilmington Plant premises was that of an independent contractor, the M&R examined whether the FAC allegations plausibly alleged that BASF, rather than Fluor Daniel, retained control of the hazard, i.e., benzene releases, plant operations, and safety measures. *See* D.E. 120 at 9–10. Similarly, the M&R evaluated the facts underlying the failure to warn claim—missing signage, absence of benzene-specific warnings, failure to direct the use of respiratory protection, failure to train, and drew a causal inference that Mrs. Brock would have followed those warnings—in lieu of merely accepting a conclusory allegation that BASF failed to warn. *See* D.E. 120 at 19–21.

BASF's objections should therefore be rejected to the extent they ask the Court to infer that Fluor Daniel, rather than BASF or TVFU, possessed exclusive control over the hazardous

condition, to discredit Plaintiffs' allegations about BASF's role as a benzene supplier and operator, or to decide that Mrs. Brock would not have followed adequate warnings. Those are factual matters that cannot be resolved against Plaintiffs on the pleadings.

### 2. The M&R Correctly Recommends Denial of the Motion as to Negligence.

#### *A. The FAC alleges that BASF and TVFU controlled the hazard; it does not allege an injury solely incident to Fluor Daniel's work.*

BASF's independent-contractor argument rests on a mischaracterization of the FAC. The relevant question is not merely whether Mrs. Brock was employed by an independent contractor. The question is whether the alleged benzene exposure was incident to work controlled by that contractor, rather than a hazardous condition within the possession and control of the landowner/operator.

North Carolina recognizes that landowners owe reasonable care to lawful visitors, including independent contractors and their employees. The independent-contractor limitation applies to dangers incident to the contractor's actual work, and control remains central to the analysis. *Smith v. Schlage Lock Co.*, 986 F.3d 482, 489–92 (4th Cir. 2021); *McCorkle v. N. Point Chrysler Jeep, Inc.*, 208 N.C. App. 711, 714–16, 703 S.E.2d 750, 752–54 (2010). As the M&R recognized, the exception extends only as far as the contractor—not the landowner—controlled the hazard or danger. M&R at 8–10.

The FAC alleges that BASF and TVFU—not Fluor Daniel—purchased benzene for use at the Wilmington Plant; determined the processes and procedures for its use; were responsible for maintaining and operating the process equipment; and permitted and caused benzene to be released into the work environment. FAC ¶¶ 31–40. It also alleges that BASF and TVFU were responsible for safety measures intended to prevent exposure, including engineering controls, air monitoring, protective equipment, and warnings. FAC ¶¶ 66–80. Those allegations plausibly place the source

of the claimed injury—the released benzene and the allegedly inadequate controls—within BASF's and TVFU's control.

In *Smith v. Schlage Lock Co., LLC*, 986 F.3d 482 (4th Cir. 2021) (discussed in the M&R at pages 7–8), the Fourth Circuit affirmed summary judgment after a developed record established that an independent plumbing contractor directed the decedent's work and that the alleged asbestos exposure arose from construction activities the contractor controlled. 986 F.3d at 490–92. Here, by contrast, the Court is reviewing a complaint that alleges an operating chemical plant's owner/operator controlled the chemical, process equipment, and safety practices alleged to have produced the exposure. The M&R correctly concluded that Plaintiffs have plausibly alleged that the injury was not merely incident to the contractor's work. M&R at 8–10.

BASF cannot turn this fact-sensitive inquiry into a pleading-stage rule requiring Plaintiffs to plead Mrs. Brock's precise job duties before discovery. Nor can BASF prevail by assuming facts contrary to the FAC—namely, that Fluor Daniel had exclusive possession and control of the equipment, benzene, and safety practices at issue. The FAC alleges the opposite.

### *B. BASF's separate negligence per se arguments do not warrant dismissal of the negligence claim.*

The M&R did not need to resolve BASF's challenges to Plaintiffs' negligence *per se* theories because it correctly found the negligence claim independently plausible on a premises-liability theory. D.E. 120 at 10. That conclusion is independently sufficient to deny BASF's request to dismiss Count I in its entirety. The M&R cited case law from within the Fourth Circuit to support its conclusion. *Id*. at 10–11 (citing *Tucker v. Palaio*, No. 3:25-cv-488, 2026 U.S. Dist. LEXIS 135914, at *77 n.31 (E.D. Va. June 17, 2026) (finding that "because the Court has found that Plaintiff adequately alleged a violation of the VCPA on his fraudulent omission theory, Count I survives and the Court need not engage with the merits of Plaintiff's other theories of VCPA

liability.") and *In re American Honda Motor Co., Dealerships Realtors Litig.*, 941 F. Supp. 528, 554 (D. Md. 1996) (finding that court need not reach issue because "Plaintiffs have adequately alleged other bases of liability")). BASF's objections concerning negligence *per se* consequently furnish no basis to disturb the recommended disposition of the negligence claim.

Even if the M&R reached the merits of the negligence *per se* allegations the motion should have been denied. BASF's motion argued a bright line rule that negligence *per se* cannot rest on the violation of a statute or regulation that confers strict liability, relying principally on *Rudd v. Electrolux Corp.*, 982 F. Supp. 355, 366 (M.D.N.C. 1997). However, *Rudd* merely stated that "North Carolina courts proceed with great caution before permitting a strict liability statute to operate as negligence per se." *Rudd*, *supra*, 982 F. Supp. at 366. There is no need to proceed with great caution when considering if a strict liability statute provided for negligence *per se* if strict liability statutes could never be a basis for negligence *per se*. Second, the court's analysis focused on whether the statute at issue required a specific course of conduct, as opposed to simply forbidding activity resulting in pollution. *Id*. The same Court identified North Carolina's 2N underground storage tank regulations that did provide for a course of conduct as "regulations [that] would be more appropriate for defining a duty in a negligence per se case," but they post-dated the conduct at issue in the case. *Id.* at 366.

Courts in other jurisdictions have based negligence *per se* on the violation of "strict liability" statutes. *See, e.g., deJesus v. Seaboard C. L. R. Co.*, 281 So. 2d 198, 201 (Fl. 1973) ("The 'strict liability' statutes to which we have been referring are the type designed to protect a particular class of persons from their inability to protect themselves, such as one prohibiting the sale of firearms to minors… A violation of this type of statute is, of course, negligence per se."); *Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. 4th DCA 2014) (discussing "violation of a strict liability

statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se").

The NESHAP regulations Plaintiffs allege BASF violated specify a course of conduct upon which a negligence *per se* claim can rest. Benzene storage tanks must have fixed roof and closed vent systems that route all organic vapors vented from the tank to a control device. *See* 40 CFR § 61.343(a)(1). The owner or operator of the plant shall properly design, install, operate and maintain the closed-vent system and control device in accordance with requirements that prevent detectable emissions. *See* 40 CFR § 61.349(a)(1). Gauging and sampling devices must be gas-tight when not in use. *Id*. Control systems must meet performance requirements for enclosed combustion devices, vapor recovery systems and flares. *Id*. at § 61.349(a)(2). Monitoring procedures are specified. *Id*. at § 61.354. Records of control equipment mut be maintained, records must document certain information, such as annual volume of benzene in waste streams, and must be kept for specified periods of time. *Id*. at § 61.356(b). Thus, the NESHAP regulations are akin to the North Carolina 2N regulations in that they set forth a course of conduct for a defendant to comply with.

Similarly, North Carolina environmental regulations, at 15A NCAC 02D.1104, proscribe a course of conduct that BASF and TVFU's actions can be measured against. They prohibit the release of benzene in quantities that may cause or contribute beyond the premises to any significant ambient air concentrations that may adversely affect human health. Facilities are required to monitor their emissions of toxic air pollutants that include benzene, report those emissions to the State, and comply with monitoring, record keeping and reporting requirements. *See* 15A NCAC 02D.1105. Certain control technologies, including process changes, substitution of materials, enclosed systems, design, equipment, work practice and operational standards are required to achieve compliance with the regulations. *See* 15A NCSC 02D.1109 112(J), and .1112 112(G).

### 3. The M&R Correctly Recommends Denial of the Motion as to Failure to Warn.

#### *A. The FAC plausibly alleges that BASF was a seller of benzene.*

A failure to warn claim under N.C.G.S. § 99B-5 may be asserted against a manufacturer or seller. The FAC does more than state a legal label. It alleges that BASF supplied benzene to the Wilmington Plant both before and after it acquired the plant. D.E. 31 at ¶ 48. The FAC also alleges that BASF was a manufacturer and/or seller of benzene during the relevant time. D.E. 31 at ¶ 56. As the M&R held, the specific allegation that BASF supplied benzene to the plant plausibly supports the reasonable inference that BASF was a retailer, wholesaler, or distributor—that is, a "seller" under N.C.G.S. § 99B-1(4). D.E. 120 at 15–16.

BASF's suggestion that other entities may also have supplied benzene does not contradict Plaintiffs' allegation that BASF supplied benzene. A chemical plant may receive the same chemical from more than one supplier during the pertinent period. Nor may the Court resolve BASF's alternative explanation for the BASF-marked material safety data sheet at this stage. The M&R correctly recognized that BASF's contention about possible reasons for the document's appearance is a factual dispute, not a ground to disregard the FAC's allegations. D.E. 120 at 12 n.3, 15–16.

BASF incorrectly claims that the M&R allowed BASF's status as a plant operator to form the basis of the product liability claim. D.E. 121 at p. 1. On the contrary, the M&R directly cites Plaintiffs' allegations that "BASF was a manufacturer and seller of benzene during times pertinent to this case" and that "BASF specifically supplied benzene to the Wilmington Plant." D.E. 120 at 12, 15–16. It acknowledged BASF's claim that there are non-seller reasons for a company's website or server address to appear on a MSDS, but properly identified this to be a factual dispute not properly resolved under Ruler 12(b)(6). *Id*. at 12.

### *B. The FAC identifies the missing warnings and plausibly alleges causation.*

The North Carolina failure to warn statute requires an unreasonable failure to provide an adequate warning, proximate cause, and a substantial risk of harm absent an adequate warning. N.C.G.S. § 99B-5(a); *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324–25 (4th Cir. 2017). The FAC satisfies those pleading requirements.

Specifically, Plaintiffs allege that BASF and TVFU failed to post signs warning of benzene's presence, its cancer hazard, and the need for respiratory protection; failed to warn and train workers about benzene hazards and prevention; and failed to warn Mrs. Brock and her employer about benzene's location, the full scope of its risks, and the work practices and protective equipment necessary to minimize or prevent exposure. D.E. 31 at ¶ 75(o), (p), (u). Plaintiffs also allege that BASF and TVFU knew workers would encounter benzene, knew or should have known of its carcinogenic and leukemogenic risks, and failed to implement warnings and protective measures that would prevent exposure. *Id*. ¶¶ 61–65, 75. Plaintiffs allege that the failure to warn was a proximate cause of Mrs. Brock's harm. *Id*. at ¶ 92. Defendant's failure to warn created an atmosphere that led Plaintiff to believe that benzene was safe to work around and be exposed to. *Id*. at 99. BASF's failure to warn induced Plaintiff to expose herself to benzene by leading her to believe that the premises were safe. *Id*. at ¶ 75(bb)-(cc). Plaintiffs directly allege that Mrs. Brock relied on BASF for warnings and information about benzene's health hazards and cancer hazard. *Id*. ¶ 125(s). She did not know of the benzene cancer hazard presented by her work at the Wilmington Plant. *Id*. at ¶ 63. The M&R identifies the sufficiency of the reliance allegations and used "judicial experience and common sense" to examine the plausibility of the allegations in context of the totality of the FAC allegations. D.E. 120 at p. 20 ("Considering the extreme risks of benzene exposure and the protective measures which could have been taken, there is a permissible,

common-sense inference that Mrs. Brock would have heeded warnings to wear 'personal protective equipment' and 'respiratory protection'". *Id*. at 20-21.

The M&R correctly concluded that those allegations identify both the warnings allegedly missing, the alleged inadequacy of BASF's warnings and the Plaintiff's reliance. D.E. 120 at 19–20. At the Rule 12 stage, Plaintiffs are not required to plead evidence proving precisely what Mrs. Brock would later testify she would have done. They must plead facts rendering causation plausible, which they have done.

*Carlson* does not compel a different result. It affirmed summary judgment after the plaintiff failed to identify record evidence that either she or her physician had read and relied on the particular product warnings. 856 F.3d at 324–26. This case is at the pleading stage and involves allegations that BASF, as operator and alleged seller, failed to give workers basic workplace warnings about benzene's presence, cancer hazard, and protective measures. The M&R properly declined to convert *Carlson*'s evidentiary holding into a heightened pleading standard.

### 4. The Loss of Consortium Claim Survives Because the Negligence and Failure to Warn Claims Survive.

BASF correctly observes that Mr. Brock's loss of consortium claim is derivative. But that point assists BASF only if all of Mrs. Brock's underlying claims fail. Because the M&R correctly recommends denial of the motion as to negligence and failure to warn, the derivative consortium claim also survives. D.E. 120 at 26. BASF's objection as to Count V should therefore be overruled.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court overrule BASF's objections, adopt the M&R's recommended disposition as to the claims addressed in those objections, and deny BASF's motion to dismiss as to: (1) Count I, negligence; (2) Count III, failure to warn; and (3) Count V, loss of consortium.

Respectfully submitted this 9th day of September, 2026.

/s/ Andrew DuPont
Andrew J. DuPont, Esq. (Pro Hac Vice)
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 893-0100
adupont@lockslaw.com
*Attorneys for Plaintiffs*

/s/ John Hughes
William M. Graham, Esq.
NCSB 17972
Mark Doby, Esq.
NCSB 39637
John Hughes, Esq.
NCSB 22126
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
bgraham@wallacegraham.com
mdoby@wallacegraham.com
jhughes@wallacegraham.com
*Local Civil Rule 83.1(d) Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court using the Court's CM/ECF system, which caused the foregoing to be served on all counsel of record.

September 9, 2026.

/s/ Andrew DuPont
Andrew J. DuPont, Esq. (Pro Hac Vice)
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 893-0100
adupont@lockslaw.com
*Attorneys for Plaintiffs*

/s/ John Hughes
William M. Graham, Esq.
NCSB 17972
Mark Doby, Esq.
NCSB 39637
John Hughes, Esq.
NCSB 22126
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
bgraham@wallacegraham.com
mdoby@wallacegraham.com
jhughes@wallacegraham.com
*Local Civil Rule 83.1(d) Attorney for Plaintiffs*